1  **BETTS & WRIGHT, A Professional Corporation**
   Attorneys at Law
2  P.O. Box 28550
   Fresno, California 93729-8550
3  Telephone: (559) 438-8500
   Facsimile:  (559) 438-6959
4
   James B. Betts (State Bar #110222)
5  Joseph D. Rubin (State Bar #149920)

6  Attorneys for Plaintiff CYPRESS AVENUE PARTNERS LLC

7

8

9                     UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF CALIFORNIA
10                       SAN FRANCISCO DIVISION

11

12 | CYPRESS AVENUE PARTNERS LLC      )   Case No. CV 08-2374
                                     )
13 |         Plaintiff,               )
                                     )   NOTICE OF FILING EXHIBIT A TO
14 |    v.                            )   COMPLAINT
                                     )
15 | AXION POWER INTERNATIONAL, INC.; )
   JOHN GRANVILLE; JOHN PETERSON;   )
16 | and DOES 1-50, inclusive,        )
                                     )
17 |         Defendants.              )
                                     )

18

19       NOTICE is hereby given that attached hereto is Exhibit A that was

20 inadvertently omitted from the Complaint that was filed in the above-entitled action

21 on or about May 8, 2008.

22

23
   Dated:    June 12, 2008              BETTS & WRIGHT
24

25
                                        By /s/ James B. Betts
26                                           James B. Betts
                                        Attorneys for Plaintiff
27                                      CYPRESS AVENUE PARTNERS LLC

28

# EXHIBIT A

10/09/2006 12:06  7168536128  GALLAGHER  PAGE 01/05
10/06/2008 11:33 FAX 5305810795  TC TERMITE  ☒002



October 5, 2006

Thomas Granville
Axion Power International Inc.
100 Caster Avenue
Woodbridge, Ontario
L4L 5Y9 Canada

Gentlemen:

This letter sets forth an agreement as to the terms on which Axion Power International, Inc. (the "Company") would retain Cypress Avenue Partners, LLC. ("Cypress") as its financial advisor in connection with strategic planning, financings (the "Financings") that are pursued by the Company during the term of this agreement (defined below). The Financings are presently proposed to be up to $35 million. The Company is seeking a $10 million private financing to provide funding for capital projects and an additional $15 to $25 million in public financing to complete demonstration testing with prospective customers, expand production facilities, expand marketing efforts and finance the Company's general working capital requirements. The Financings may include equity or convertible debt financing (an "Equity Financing") or a non-convertible debt financing (a "Debt Financing"). Additional definitions applicable to this letter are set forth below.

With respect to the foregoing, Cypress and the Company agree as follows:

1. Cypress will provide the Company advisory services in connection with the Financings and the Strategic Alliances. In that connection Cypress will assist the Company in the preparation of information documentation as to the Financings and the Strategic Alliances, including a financing request to be submitted on a best efforts basis to Funding Sources or Intermediaries (defined below). The Company shall provide Cypress all information, financial or otherwise, requested by Cypress for producing such information documentation. Cypress will prepare a valuation analysis valuing the business of Company.
Cypress will assist and consult with the Company in its preparation of a business plan, including five years of financial projections, an industry analysis applicable to the appropriate industry, and other appropriate information documentation in connection with the Financings and the Strategic Alliances.

10/09/2006  12:06    7168536128                    GALLAGHER                        PAGE  02/05
 10/06/2006 11:34 FAX 5305810795                  TC TERMITE                        ☒003

Cypress will act as a finder on a best efforts basis for potential parties to fund the Financings ("Funding Sources") and intermediaries through which the Financings would be funded. As a finder Cypress would introduce the Company to candidates for Funding Sources and Intermediaries, and the Company would negotiate the terms of the Financings with such candidates. Cypress will notify the Company in writing as to the identity of any person that is a potential Funding Source or Intermediary to which Cypress has introduced the Company. Each such person is referred to herein as a "Registered Funding Source" or "Registered Intermediary," respectively. Cypress makes no promises to the Company as to whether or not his introductions will result in the closing of a Financing. Within 3 days of receipt of any Cypress introduced candidates, the Company will either accept or reject such candidate. Acceptance by the Company of a Cypress candidate is an acknowledgment by the Company that *such candidate was previously unknown to them and that no other financial intermediary working with the Company has identified such candidate for the Company.*

The Company will conduct all negotiations, establish all terms and conditions, and furnish all disclosure materials to the Funding Sources, which disclosure materials the Company represents to Cypress shall be materially accurate and not misleading. In connection with a Transaction, the Finder will not: (a) be involved in any negotiations with the Buyers; and (b) make any recommendations regarding the Securities.

2. The term of Cypress hereunder (the "term of this agreement") shall extend from the date the Company accepts this letter through 6 months thereafter and any period of time after such 6-month period during which a Financing is being negotiated with a Registered Funding Source or a Registered Intermediary. Cypress's appointment hereunder shall be non-exclusive and the Company expressly reserves the right to engage other finders, brokerage firms and intermediaries to assist the Company in its efforts to obtain the Financings during the term of this agreement.

3. Cypress's compensation for its services rendered hereunder shall be as set forth below. The Company shall have the right in its discretion to accept or reject any Financing presented to the Company by a Registered Funding Source or a Registered Intermediary.

(i) Upon execution of this Agreement, the Company shall issue Cypress a warrant to purchase 200,000 shares of the Company's common stock at an exercise price of $3 per share. The warrant shall include such terms and conditions, including cashless exercise rights, piggy-back and demand registration rights and full-ratchet anti-dilution protection, as are typical in transaction of the type contemplated by this Agreement

10/09/2006  12:06    7168536128                         GALLAGHER                              PAGE  03/05
10/06/2006  11:35 FAX 5305810795                        TO TERMITE                             ⌀004

(ii)    Upon the first closing of an Equity Financing or Debt Financing of at least $2 million with a Registered Funding Source or through the efforts of a Registered Intermediary introduced by Cypress, the Company shall pay Cypress a fee of $50,000, which may be offset against the contingent compensation specified in subparagraph (iii) below.

(iii)   If during the term of this agreement or within one year thereafter an Equity or Debt Financing is completed with a Registered Funding Source or through a Registered Intermediary the closing of such Financing, the Company will pay Cypress a cash fee of 5% of any equity plus 2% of any debt.

(iv)    In the event that Cypress has contracted or made arrangements with another person or entity regarding any financing candidates (a "Sub Intermediary"), then Cypress will be responsible for making any agreed upon payment to such sub-intermediary and Cypress will indemnify and hold harmless the Company from any claims from such contracted Sub-Intermediary.

(v)     If, after the end of the period specified in paragraph 2, another paid finder, broker or consultant negotiates a transaction between the Company and a Registered Funding Source or Intermediary that declined a transaction with the Company when Cyprus made the introduction, then the compensation specified in subparagraph (iii) will be divided between Cypress and such other finder, broker or consultant in such ratios as Cypress and such other party may agree. In the event that Cypress and such other party are unable to reach a mutually acceptable agreement, then Cypress agrees that the funding source or and the company shall have the right to allocate the compensation among the parties who claim an interest therein.

4.  The Company will reimburse Cypress upon submission of statements for Cypress's reasonable out-of-pocket expenses in connection with its rendering advisory services hereunder. As a condition to reimbursement of expense items totaling in excess of $250, Cypress shall obtain approval from the Company prior to incurring any such particular expense item.

5.  As used in this letter, the following terms shall have the meanings set forth below. Defined terms herein may be used in the singular or plural or other word forms as the context requires.

"Affiliate" shall mean, with respect to any person, any other person directly or indirectly controlling, controlled by, or under common control with, such person. A person shall be deemed to control another person if such person possesses, directly or indirectly, the power to direct or cause the direction of the management and policies of such other person, whether through the ownership of voting securities, by contract or otherwise.

10/09/2006  12:06   7168536128                    GALLAGHER                      PAGE  04/05
10/06/2006 11:36 FAX 5305810795           TC TERMITE                              ☒005

"Company" shall include any affiliate of the Company, its successors or assigns.

"Financing" shall include any financing or other transaction pursued by the Company during the term of this agreement, including any strategic alliance or joint venture that is comparable to a financing, irrespective of structure or amount, and shall include any stage or installment of any such financing or other transaction.

"Person" shall mean any individual, or any partnership, joint venture, firm, corporation, association, trust or other enterprise.

"Registered Funding Source" shall include any affiliate of a Registered Funding Source.

"Registered Intermediary" shall include any affiliate of a Registered Intermediary.

6. As further consideration for this engagement, Company agrees to (a) indemnify and hold harmless Cypress and his affiliates, and their respective officers, directors, employees, agents, contractors and representatives (Cypress and each such entity or person being referred to as an "Indemnified Person"), from and against any and all losses, claims, demands, damages or liabilities of any kind arising out of or in connection with the services provided by Cypress hereunder, and (b) reimburse each Indemnified Person for all reasonable costs and expenses (including reasonable fees and disbursements of counsel) incurred by such Indemnified Person in connection with investigating, preparing or defending any investigative, administrative, judicial or regulatory action or proceeding relating to or arising out of the services contemplated by this letter agreement, as such costs and expenses are incurred or paid; except in either case to the extent such losses, claims, demands, damages, liabilities, costs or expenses are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of Cypress. Company also agrees that no Indemnified Person shall have any liability to Company or any of its security holders or creditors arising out of or in connection with the services to be provided under this letter agreement, except to the extent any such liability is finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of such Indemnified Person..

7. Under no circumstances shall Cypress be liable to Company with respect to any matter contemplated by this letter agreement for indirect, incidental, consequential, special or punitive damages (even if Company has been advised of the possibility of such damages), and in no event shall Cypress' liability arising out of or relating to this Agreement exceed the aggregate amount of fees actually received by Cypress from Company in connection with the

services contemplated hereunder. Except as expressly set forth in this letter agreement, Cypress makes no representations or warranties whatsoever, either express or implied.

8. This agreement shall be governed by the laws of the State of California. Any dispute between the parties hereto arising out of this agreement shall be resolved by binding arbitration in Sacramento, California pursuant to the rules of the American Arbitration Association.

If the foregoing sets forth the basis on which the Company would engage Cypress to perform advisory services as described above, please execute this letter in the space provided below for that purpose and return a signed copy (or a copy or facsimile thereof) to the undersigned, whereupon this letter shall constitute a binding agreement between the Company and Cypress as of the date of acceptance thereof.

Very truly yours,

*[signature]*

Ricardo I. Ramirez
Cypress Avenue Partners, LLC


Accepted and agreed
to this ___9th___ day of
October 2006.

Axion Power International, Inc.

By: *[signature]*
Thomas Granville, Chief Executive Officer