**FELLHEIMER & EICHEN, LLP**
Alan S. Fellheimer
1800 John F. Kennedy Blvd., Suite 1400
Philadelphia, PA 19103
(215) 253-6630

Attorneys for Defendants
AXION POWER INTERNATIONAL, INC.,
Thomas Granville and
John L. Petersen, Esquire

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| CYPRESS AVENUE PARTNERS LLC, | ) | Case No.: 08-002374 MEJ |
| | ) | |
| Plaintiff, | ) | **NOTICE OF THE AXION DEFENDANTS'** |
| | ) | **MOTION TO DISMISS PURSUANT TO** |
| v. | ) | **FED.R.CIV.P. 12(b)(2), 12(b)(3), 12(b)(5) and** |
| | ) | **12(b)(6); AND MEMORANDUM OF POINTS** |
| AXION POWER INTERNATIONAL, | ) | **AND AUTHORITIES IN SUPPORT OF THE** |
| INC.; | ) | **AXION DEFENDANTS' MOTION TO** |
| JOHN GRANVILLE; | ) | **DISMISS PURSUANT TO FED.R.CIV.P.** |
| JOHN PETERSON; and | ) | **12(b)(2), 12(b)(3), 12(b)(5) and 12(b)(6)** |
| DOES 1-50, inclusive, | ) | |
| | ) | **Date:  August 7, 2008** |
| Defendants. | ) | **Time:  10:00 A.M.** |
| | ) | **Ctrm:  Courtroom B, 15th Floor, 450 Golden** |
| | ) | **Gate Avenue** |
| | ) | **Judge:  The Honorable Maria-Elena James** |

### NOTICE OF MOTION AND MOTION

TO:    PLAINTIFF CYPRESS AVENUE PARTNERS LLC ("Plaintiff") AND ITS
ATTORNEY OF RECORD

NOTICE IS HEREBY GIVEN that on August 7, 2008, at 10:00 a.m., or as soon

thereafter as counsel may be heard by the above-captioned Court, defendants, Axion Power

International, Inc. ("Axion"), Thomas Granville ("Granville"), and John L. Petersen ("Attorney

Petersen") (all collectively herein the "Axion Defendants") will and hereby do move to dismiss

this action pursuant to FED.R.CIV.P. 12(b)(2), 12(b)(3), 12(b)(5) and 12(b)(6), respectively, for

lack of personal jurisdiction (both general and specific jurisdiction), improper venue,

insufficiency of service of process, and failure to state a claim upon which relief can be granted,

respectively.[1] This motion is based on this Notice of Motion, the Memorandum of Points and Authorities ("Memorandum"), with exhibits and affidavits attached thereto, the pleadings and papers on file herein, and and upon such other oral and documentary evidence as may be made at the hearing of the motion or presented to the Court.

**WHEREFORE**, the Axion Defendants request that the Court grant their Motion to Dismiss Plaintiff's Complaint in the form of Order attached hereto, including, but not limited to, an award of all costs of suit, including reasonable attorney's fees and such other and further relief as the Court deems just and proper.

### MEMORANDUM OF POINTS AND AUTHORITIES

Defendants, Axion Power International, Inc. ("Axion"), Thomas Granville ("Granville") and John L. Petersen, Esquire ("Attorney Petersen") (collectively herein referred to as the "Axion Defendants" while Granville and Attorney Petersen are collectively referred to as the "Individual Defendants"), through their below-signed counsel, file this Memorandum of Points and Authorities in support of their Motion to Dismiss Pursuant to FED.R.CIV.P. 12(b)(2), 12(b)(3), 12(b)(5) and 12(b)(6)[2] ("Motion") and move this Court to dismiss the above-captioned action by plaintiff, Cypress Avenue Partners LLC ("Plaintiff" or "Cypress")[3] for lack of personal jurisdiction, improper venue, insufficiency of service of process, and failure to state a claim upon which relief can be granted, respectively. In further support thereof, the Axion Defendants state:

---

[1]      Pursuant to FED.R.CIV.P. 10(c), Axion herein incorporates by reference its attached Memorandum with supporting affidavits and exhibits as if set forth at length herein.

[2]      Per FED.R.CIV.P. 10(c), the Axion Defendants incorporate herein by reference their Notice of Motion and Motion and any and all affidavits and exhibits attached hereto.

[3]      It should be noted that although the caption and first paragraph of the Complaint identify Cypress, plaintiff's counsel repeatedly state that they represent Cypress's principal, Ricardo Ramirez, not Cypress. *See* Complaint at 1 (above caption) and at 9 (below signature block).

TABLE OF CONTENTS

I.      STATEMENT OF THE ISSUES TO BE DECIDED ..................................................... 1

II.     SUCCINCT PROCEDURAL HISTORY AND STATEMENT OF FACTS............... 1

III.    LEGAL ARGUMENT.................................................................................................. 3

    A.  The Complaint Should Be Dismissed for Lack of Personal Jurisdiction.................... 3

        1.  Burden of Proof on a FED.R.CIV.P. 12(b)(2) Motion. ................................... 3

        2.  California Lacks Personal Jurisdiction Over the Axion Defendants. ....................... 4

    B.  Dismissal for Improper Venue Is Proper as Cypress Failed to Comply with the
        Mandatory Forum Selection Clause It Drafted. ......................................................... 11

    C.  Dismissal for Insufficient Service of Process Is Proper as Plaintiff Failed to Comply
        with California's Statutory Service Requirements........................................................ 13

    D.  Dismissal of Second through Fifth Causes of Action Is Warranted Under Rule
        12(b)(6). ......................................................................................................................... 15

        1.  The Burden of Proof on a FED.R.CIV.P. 12(b)(6) Motion. ....................................... 15

        2.  The Breach of the Implied Covenant of Good Faith and Fair Dealing Claim
            Should Be Dismissed. ......................................................................................... 16

        3.  The Quantum Meruit Claim Should Be Dismissed. ................................................. 17

        4.  The Fraud Claim Should Be Dismissed Per Rules 9(b) and 12(b)(6)..................... 18

        5.  The Professional Negligence Claim Should Be Dismissed. ..................................... 21

IV.     CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*ADO Finance, AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711 (C.D. Cal. 1996) .................. 4

*American Home Assurance Co. v. TGL Container Lines, Ltd.*, 347 F.Supp.2d 749 (N.D. Cal. 2004) ..................................................................................................................................... 13

*Apollo Capital Fund, LLC v. Roth Capital Partners*, LLC, 158 Cal. App.4th 226, 70 Cal. Rptr.3d 199 (Cal. App. 2 Dist., 2007)................................................................................................... 19

*Apollo Technologies Corp. v. Centrosphere Corp.*, 805 F. Supp. 1157 (D.N.J. 1992) .................. 8

*Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320 (9th Cir. 1996) .......................................... 11

*AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586 (9th Cir. 1996).......................................... 4

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir.1990) .................................................. 15

*Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082 (9th Cir. 2000) ................... 6

*Barrier Specialty Roofing & Coatings, Inc. v. ICI Paints North America*, 2008 WL 1994947 (E.D. Cal. May 6, 2008).................................................................................................... 18

*Barrier Specialty Roofing & Coatings, Inc. v. ICI Paints North America, Inc.*, 2008 WL 1994947 (E.D. Cal. May 6, 2008).................................................................................................... 16

*Beery v. State Bar*, 43 Cal.3d 802, 239 Cal.Rptr. 121, 739 P.2d 1289 (1987); ........................... 25

*Bell Atl. Corp. v. Twombley*, --- U.S. ----, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007)......... 15

*Bell v. Agents for International Monetary Fund*, 1995 WL 783672 (E.D. Cal. 1995)................. 13

*Bell v. Hood*, 327 U.S. 678 (1946)........................................................................................... 16

*Berg v. Blue Cross and Blue Shield of Utica-Watertown, Inc.*, 1993 WL 467859 (N.D. Cal. Nov. 2, 1993) .......................................................................................................................... 10

*Berman v. Dean Witter & Co., Inc.*, 44 Cal. App.3d 999, 119 Cal.Rptr. 130 (1975).................. 12

*Bisq'ettes Ceramic Tile, Inc. v. Skinner*, 2000 WL 33375409 (N.D. Cal. 2000)......................... 13

*Brand v. Menlove Dodge*, 796 F.2d 1070 (9th Cir. 1986) ................................................ 6

*Bremen Zapata Of-Shore Co.*, 407 U.S. 1 (1972)..................................................................... 13

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)................................................................ 5

*Camelback Ski Corp. v. Behming*, 539 A. 2d 1107 (Md. 1987), *cert. denied*, 488 U.S. 849 (1988) ........................................................................................................................................ 9

*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir.1984)........................................... 15

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal.App.3d 1371, 272 Cal.Rptr. 387 (1990) .. 17

*Carnival Cruise Lines v. Shute,* 499 U.S. 585 (1991)................................................................ 11

*Celestial Mechanix, Inc. v. Susquehanna Radio Corp.*, 2005 WL 4715213 (C.D. Cal. Apr. 28, 2005) ............................................................................................................................... 17

*City Solutions, Inc. v. Clear Channel Communications, Inc.*, 365 F.3d 835 (9th Cir. 2004) ........ 18

*Conley v. Gibson*, 355 U.S. 41 (1957) .................................................................................... 16

*Covenant Bank for Savings v. Cohen*, 806 F. Supp. 52 (D.N.J. 1992) ............................................ 9

*Davis v. Metro Prod., Inc.*, 885 F.2d 515 (9th Cir. 1989) ................................................ 11

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1983)............................. 4

*Del E. Webb Corp. v. Structural Materials Co.*, 123 Cal.App.3d 593, 176 Cal.Rptr. 824 (1981)23

*Dill v. Berquist Construction Co., Inc.* 24 Cal.App.4th 1426 (1994) ........................................... 13

*Docksider, Ltd. v. Sea Technology, Ltd.*, 875 F.2d 762 (9th Cir. 1989) ....................................... 12

*Efund Capital Partners v. Pless,* 150 Cal.App.4th 1311, 59 Cal.Rptr.3d 340 (Cal. App., ............ 12

*Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal.App.4th 1359, 88 Cal.Rptr.2d 802 (1999)........ 23

*Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 677, 254 Cal.Rptr. 211, 765 P.2d 373 (1988); .. 23

*Fox v. Pollack*, 181 Cal.App.2d 954 (1986) ............................................................................ 22

*Galen Investment Advisors, Inc. v. Alcatel*, 2002 WL 3131990 (N.D. Cal. Oct. 10 2002) .......... 10

*Gates Learjet Corp. v. Jensen*, 743 F.2d 1325 (9th Cir. 1984)...................................................... 6

*Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F.Supp.2d 1086 (C.D. Cal. 1999) .......... 18

*Gordon v. Impulse Mktg. Group, Inc.,* 375 F.Supp.2d 1040 (E.D.Wash.2005) ........................... 15

*Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204 (9th Cir. 1980)................................................. 4

*Gulf Ins. Co. v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone,* 79 Cal.App.4th 114, 93 Cal.Rptr.2d 534 (Cal.App. 2 Dist., 2000) ...................................................................... 22

*Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d 1392 (9th Cir. 1986) ...............4 and 5

*Hanson v. Denckla*, 357 U.S. 235 (1958) ..................................................................................... 9

*Helicopteros Nacionales de Colombia*, 466 U.S. 408 (1984)......................................................... 5

*Hile v. Buth-Na-Bodhaige, Inc.*, 2007 WL 4410774 (N.D. Cal. Dec. 14, 2007)......................... 11

*Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474 (9th Cir. 1986) ...................... 8

*Hsu v. Oz Optics Ltd.*, 211 F.R.D. 615 (N.D. Cal. 2002) .......................................................... 19

*IMO Industries, Inc. v. Kiekert* AG, 155 F.3d 254 (3d Cir. 1998)............................................... 10

*In re Foxhollow Technologies, Inc. v. Securities Litigation*, 2008 WL 2220600  (N.D. Cal. May 27, 2008) ................................................................................................................................ 16

*Inter-Mark USA, Inc. v. Intuit, Inc.*, 2008 WL 552482  (N.D. Cal. Feb. 27, 2008)..................... 16

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ......................................................... 5

*Janzini v. Nissan Motor Co, Ltd.*, 148 F.3d 181 (2d Cir. 1998) ................................................... 4

*Kane, Kane & Kritzer, Inc. v. Altagen,*  107 Cal.App.3d 36, 165 Cal.Rptr. 534 (1980) ............. 24

*Koresko v. Realnetworks, Inc.*, 291 F.Supp.2d 1157, (E.D. Cal. 2003)....................................... 13

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir.2001)............................................................. 15

*Lincoln General Ins. Co. v. Access Claims Administrators, Inc.*, 2007 WL 2492436 (E.D. Cal. Aug. 20, 2007) ..................................................................................................................... 22

*Love v. The Mail on Sunday*, 2006 WL 4046180 (C.D. Cal. Aug. 2006).................................... 17

*M/S Bremen v. Zapata Of-Shore Co.,* 407 U.S. 1 (1972) ............................................................ 12

*MacConnell v. Schwamm*, 2000 WL 1409758 (S.D. Cal. 2000) ................................................... 5

*MacConnell v. Schwamm*, 2000 WL 1409758 (S.D. Cal. 2000) ................................................... 4

*Manetti-Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509 (9th Cir.1988) ............................... 12

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802 (9th Cir. 1988) ...................................................... 8

*Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646 (9th Cir.1988) ................................................... 15

*Modius, Inc. v. Psinaptic, Inc.*, 2006 WL 1156390 (N.D. Cal. May 2, 2006).............................. 11

*Murphy v. Schneider National, Inc.*, 362 F.3d 1133 (9th Cir. 2003)........................................... 11

*N. Star Int'l v. Ariz. Corp. Comm'n,* 720 F.2d 578 (9th Cir.1983)............................................... 15

*Newport Components, Inc. v. NEC Home Electronics (U.S.A.), Inc.*, 671 F. Supp. 1525 (C.D. Cal. 1987)................................................................................................................................. 4

*Norlock v. City of Garland*, 768 F.2d 654 (5th Cir. 1985) ......................................................... 13

*North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687 (3d Cir. 1990), *cert. denied,* 498 U.S. 497 (1990)................................................................................................................ 10

*Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.2d 267 (9th Cir. 1995).................................... 8

*Paccar Int'l., Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058 (9th Cir. 1985)........... 8

*Parks Sch. of Bus. v. Symington*, 51 F.3d 1480 (9th Cir.1995)................................................... 15

*Patriot Scientific Corp. v. Korodi*, 504 F.Supp.2d 952 (S.D. Cal. 2007) .........................17 and 20

*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal.4th 1135 (1999) ..................................................................................................................................... 22

*Precision Pay Phones v. Qwest Communications Corp.*, 210 F.Supp.2d 1106 (N.D. Cal. 2002) 18

*Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745 (4th Cir. 1971), *cert. denied,* 404 U.S. 948 (1971) .... 5

*Reynolds v. Int'l Amateur Athletic Fed.*, 23 F.3d 1110 (6th Cir. 1994) ........................................ 10

*Richardson v. Lloyd's of London*, 135 F.3d 1289 (9th Cir. 1998) ................................................. 11

*Richardson v. Reliance Nat'l Indem. Co.,* 2000 WL 284211 (N.D. Cal. 2000) .......................... 20

*Roth v. Garcia Marquez*, 942 F.2d 617 (9th Cir. 1991)................................................................ 10

*Schuman v. Ikon Office Solutions, Inc.*, 232 Fed.Appx. 659, 2007 WL 1314522 (9th Cir. 2007) 18

*Serafini v. Superior Court*, 68 Cal.App.4th 70, 80 Cal.Rptr.2d 159 (Cal.App., 3d Dist. 1998).... 11

*Shamsian v. Atlantic Richfield Co.*, 107 Cal.App.4th 967, 132 Cal.Rptr.2d 635 (Cal. App. 2 Dist., 2003) ........................................................................................................................................ 20

*Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990) ......................................................................... 11

*Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir. 1990) ........................................................ 8

*Spradlin v. Lear Siegler Management Services Co., Inc.,* 926 F.2d 865 (9th Cir. 1991) ............. 13

*Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc.*, 69 Cal.App.4th 1399, 82 Cal.Rptr.2d 326 (1999) ................................................................................................................. 25

*World-Wide Volkswagon v. Woodson*, 444 U.S. 286 (1980) ........................................................... 9

**Statutes**

Cal. Civ. Code, §1621 .................................................................................................................... 23

Cal. Code. Civ. Proc. §410.10 ........................................................................................................ 4

Cal. Code Civ. Proc. §415.20 ....................................................................................................... 14

Cal. Code Civ. Proc. §415.40 ....................................................................................................... 13

Cal. Code Civ. Proc. §416.10 ....................................................................................................... 13

**Rules**

FED.R.CIV.P. 4(e)(1) ....................................................................................................................... 4

FED.R.CIV.P. 4(h)(1) ....................................................................................................................... 4

FED.R.CIV.P. 8(a) .......................................................................................................................... 15

FED. R. CIV. P. 9(b) ....................................................................................................................... 18

FED.R.CIV.P. 12(b)(2) ........................................................................................................1, 3, and 4

FED.R.CIV.P. 12(b)(3) ...........................................................................................................1 and 11

FED.R.CIV.P. 12(b)(5) ..............................................................................................1, 13, and 14

FED.R.CIV.P. 12(b)(6) ...........................................................................................................1 and 15

FED.R.EVID. 902(5) ......................................................................................................................... 7

**Treatises**

1 Mallen & Smith, Legal Malpractice (4th ed. 1996) at 568-572, § 8.3...................................... 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    STATEMENT OF THE ISSUES TO BE DECIDED

Whether dismissal of the Complaint is warranted under FED.R.CIV.P. 12(b)(2), 12(b)(3), 12(b)(5) and 12(b)(6) for lack of personal jurisdiction, improper venue, insufficiency of service of process, and failure to state a claim upon which relief can be granted, respectively?

Suggested Answer: Yes, dismissal of the Complaint is warranted.

## II.    SUCCINCT PROCEDURAL HISTORY AND STATEMENT OF FACTS

Cypress filed its Complaint (Exhibit A) in the above-captioned action on May 8, 2008 alleging as follows:[4]

As against "Axion Power, Inc.", not Axion Power International, Inc., Cypress asserts:

1.    First Cause of Action – Breach of Contract related to the alleged breach for failure to make payment pursuant to a written financial consulting services agreement (Complaint at 4);

2.    Second Cause of Action – Breach of Implied Covenant of Good Faith and Fair Dealing related to the alleged breach for failure to make payment pursuant to the same written financial consulting services agreement (Complaint at 5); and

3.    Third Cause of Action — "Common Count – Quantum Meruit; Value of Services Provided" for alleged failure to make payment of the value of financial consulting services rendered (Complaint at 6).

As against John Granville (identified in the caption and first paragraph of the Complaint) and Axion Power, Inc., not Axion or Thomas Granville, Cypress asserts:

4.    Fourth Cause of Action - Fraud" related to the alleged promissory fraud which induced Cypress into the written financial consulting services agreement (Complaint at 6-7).

As against John Peterson, not John L. Petersen, Esquire, Cypress asserts:

5.    Fifth Cause of Action – Professional Negligence for alleged legal malpractice in the representation of Cypress in the underlying disputed transaction (Complaint at 7-8).

---

[4]    Notwithstanding Cypress's failure to identify the Axion Defendants as defendants in this action, the Axion Defendants nonetheless file this Motion to Dismiss the Complaint as if the Complaint allegations are directed to the Axion Defendants without waiver or prejudice to objections to personal jurisdiction, insufficient service of process, failure to state a claim upon which relief can be granted and the inherent confusion and lack of clarity Cypress's pleading has created.

Axion received a copy of the Complaint and the Summons to Axion on or about June 9, 2008 (*see* Affidavit of Edward R. Buiel, Ph.D. ("Buiel Aff.") attached as Exhibit B). The Buiel Aff. describes the following circumstances of the alleged service of process:

17. On June 9, 2008, a white male, dressed in a track suit, with brown hair and appeared to be in his mid-forties (the "Visitor") walked in the front door of the Axion New Castle office facility an asked to speak with "John Granville or John Peterson."

18. I introduced myself and informed the Visitor that I did not know a John Granville, but that I knew a John Petersen who lived in Switzerland.

19. The Visitor tried to hand me a set of papers in bundles clipped together and I refused as I was not John Granville nor John Petersen.

20. I told the Visitor that I didn't know a John Granville and that John Petersen lived and worked in Switzerland.

21. I told the Visitor that I would not receive papers for someone who lived in Switzerland and someone I did not know.

22. The Visitor then told me that he could "just drop the papers on the floor," which he did and left.

23. Attached hereto are copies of the papers that the Visitor left on the floor.

Buiel Aff. At 3-4, ¶¶17-22.

As the attached affidavits of Axion's Chief Executive Officer ("CEO"), Thomas Granville (Exhibit C) and its outside Special Corporate Counsel, John L. Petersen, Esquire (Exhibit D) confirm neither Individual Defendant was ever personally served process via hand delivery. The Buiel Aff. confirms, the person attempting to serve process was seeking to do so on a John Granville and a John Peterson—not the Individual Defendants. In fact, the confused manner in which the Complaint is written makes understanding who is the plaintiff and who are the defendants practically impossible. Moreover, Attorney Petersen's Affidavit confirms that he maintains his office and residence in Switzerland, not in California, and therefore cannot be served at Axion's lone New Castle, Pennsylvania location.

Importantly, no Axion Defendant ever received copies of the Complaint and Summons via mail. *See* Exhibits B, C and D. The Axion Defendants do not have any regular and established place of business in the State of California (*see* Exhibits B-D). The Axion Defendants do not have any agents, employees or representatives in California nor are any of

them licensed to do business in California (*Id.*). Axion is not licensed to do business in California as a foreign corporation nor has it ever applied for a charter or license to do business in California (Exhibits B and C). The Axion Defendants do not own, use or possess any personal or real property in California, nor do any of them maintain bank accounts in California. (Exhibits B-D). Finally, Axion has no distributors or direct sales in California (Exhibit B and C).

Although Axion is identified in the caption and summons, it is not otherwise identified in the Complaint. *See* Exhibit A. The only entity identified is "Axion Power, Inc.", which is not the name of an entity relating to Axion or with which it is familiar. *See* Exhibit C. Axion is in the battery business (Exhibits B and C) having its sole office and principal place of business in New Castle, Pennsylvania and does not conduct business in California. *Id.* Cypress claims that Axion Power, Inc.—not Axion Power International, Inc.—failed to pay for certain financial consulting services rendered by Cypress.

Defendant "John Granville" is alleged to be a Pennsylvania resident (Complaint at 1, ¶1). Thomas Granville has not been served with a copy of the summons and complaint. *See* Exhibits B and C.

John Peterson—not Attorney Petersen—is alleged to be a "licensed attorney practicing in Switzerland" (Complaint at 1, ¶1). Attorney Petersen has not been served with a copy of the summons and complaint. *See* Exhibit B and D.

Thus, the Axion Defendants move this Court to dismiss the Complaint for lack of personal jurisdiction, improper venue, insufficiency of service of process, and failure to state a claim upon which relief can be granted, respectively, for the reasons stated herein.

## III.   LEGAL ARGUMENT

### A.   The Complaint Should Be Dismissed for Lack of Personal Jurisdiction.

1.   **Burden of Proof on a FED.R.CIV.P. 12(b)(2) Motion.**

On a FED.R.CIV.P. 12(b)(2), the plaintiff must prove that personal jurisdiction is proper. *Newport Components, Inc. v. NEC Home Electronics (U.S.A.), Inc.*, 671 F. Supp. 1525, 1539 (C.D. Cal. 1987) and *ADO Finance, AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711, 714 (C.D. Cal. 1996) (permitting consideration of declarations and discovery). The plaintiff must "'come forward with facts, by affidavit or otherwise'" to support personal jurisdiction. *Newport*, 671 F. Supp. at 1530.[5] The facts asserted in affidavits and pleadings may not be conclusory, but rather, must assert particular facts to establish the necessary ties between the defendant and the forum state. *MacConnell v. Schwamm*, 2000 WL 1409758 *2 (S.D. Cal. 2000).[6]

2.    **California Lacks Personal Jurisdiction Over the Axion Defendants.**

Plaintiff bears the burden of showing that each Axion Defendant is subject to personal jurisdiction in California, *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996), and must show by a preponderance of the evidence that jurisdiction over the nonresident defendant is proper, *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1983). Although California's personal jurisdiction statute, Cal. Code. Civ. Proc. §410.10 permits the exercise of personal jurisdiction to the full extent permitted by the constitution, Cypress must nonetheless show that each Axion Defendant had sufficient contacts with California to establish either general or specific jurisdiction and that the exercise of jurisdiction comports with due process. *Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d 1392, 1396 (9th Cir. 1986). *See also* FED.R.CIV.P. 4(h)(1) and 4(e)(1).

Whether personal jurisdiction can be exercised over an out-of-state defendant requires a two-part inquiry in a diversity case. First, this Court must determine whether the long-arm statute of California permits California courts to exercise jurisdiction over the defendant. *See* FED.R.CIV.P. 4(e)(1) and *Haisten,* 784 F.2d at 1396. Second, this Court must inquire as to

---

5    *Citing Scott v. Breeland*, 792 F.2d 925, 927 (case citation quoted omitted).
6    *Citing Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1208 n. 5 (9th Cir. 1980) and *Janzini v. Nissan Motor Co, Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998).

whether the assertion of personal jurisdiction would be consistent with the dictates of the Due Process clause. *See Haisten,* 784 F.2d at 1396.

General jurisdiction exists only where the defendant has engaged in continuous and systematic contacts with the forum state unrelated to the specific subject matter of the lawsuit. *Helicopteros Nacionales de Colombia*, 466 U.S. 408, 414 (1984). It may only be exercised consistent with constitutional due process requirements and only over defendants with "extensive, continuous and systematic" general business contacts with the forum state. *Id.* at 416. The defendant's activities in the forum state must so "substantial" and "continuous and systematic" that even if the cause of action is unrelated to those activities personal jurisdiction exists. *See MacConnell v. Schwamm*, 2000 WL 1409758 (S.D. Cal. 2000). These contacts "must be *fairly extensive* before the burden of defending a suit there may be imposed upon [the defendant] without offending traditional notions of fair play and substantial justice." *Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir. 1971), *cert. denied*, 404 U.S. 948 (1971) (emphasis added). This standard is "fairly high" and "requires that the defendant's contacts be of the sort that approximate physical presence." *Bancroft & Masters*, 223 F.3d at 1086.[7]

If, as here, a defendant is not present in the forum state, due process prohibits a court from exercising personal jurisdiction unless the defendant "entertains certain minimum contacts with the [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). The defendant's activities must create a "substantial connection" between the defendant and the forum state, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), and must be purposefully directed toward residents of the forum state. *Id.* at 476. In the context of contracts, it is the quality and nature of the relationship created by the contract that is important. *Haisten*, 784 F.2d at 1399. (*citing Burger King, supra*.).

In this case, those "certain minimum contacts" required by *International Shoe* do not exist and the maintenance a suit against the Axion Defendants in this forum would offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316.

a.    **There is no general jurisdiction under California's Long-Arm statute.**

The Ninth Circuit recently described "general jurisdiction" this way:

A defendant whose contacts with a state are "substantial" or "continuous and systematic" can be haled into court in that state in any action, even if the action is unrelated to those contacts. This is known as general jurisdiction. **The standard for establishing general jurisdiction is "fairly high,"** and requires that the defendant's contacts be **of the sort that approximate physical presence**. Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there.

*Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (determining that no general jurisdiction existed where foreign defendant corporation possessed "two television networks and a handful of California vendors") (emphasis added). In *Bancroft*, general jurisdiction was not deemed to exist where the defendant was:

. . . not registered or licensed to do business in California. It pays no taxes in California, maintains no bank accounts in California, and targets no print, television, or radio advertising toward California. . . . [Its] occasional, unsolicited sales of tournament tickets and merchandise to California residents are insufficient to create general jurisdiction.

*Id.* Doing business *in* California is construed differently and less significant than doing business *with* California which is irrelevant to general jurisdiction. *Id.*, 223 F.3d at 1086.[8] Put simply, engaging in commerce with residents of the forum state is not alone the kind of activity that approximates physical presence within the state's borders. *Bancroft & Masters*, 223 F.3d at 1086 (*citing Helicopteros*, 466 U.S. at 418).

The Axion Defendants do not advertise, engage in business, or have any offices or bank accounts in California. *See* Exhibits B-D. It would violate the Axion Defendants' substantive and procedural Due Process rights for this Court to exercise general jurisdiction over them because

---

7       *Citing Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986) and *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984).

their contacts with California are not sufficiently extensive, continuous and systematic to warrant such jurisdiction. The Axion Defendants maintain their principal places of business and office outside of California (*see* Exhibits B-D). No Axion Defendant owns, uses or possesses any personal or real property or has any agent, employee or representative in California (*id*.). Axion is not, as a foreign corporation, licensed to do business in California (Exhibits B and C), nor has it ever applied for a charter or license for such purpose (*id*.). The agreement in dispute was executed by Axion in New York (*see* Exhibits B-D).

As public documents published by the States of Nevada[9] and California confirm,[10] Cypress, albeit under a slightly altered name, appears to be a Nevada limited liability company that only a week before filing this suit registered to do business in California using a Nevada address (thus, at the time of the events at issue, Cypress was apparently not licensed to do business in California). *See* Exhibits E and F. Cypress should not be permitted to manufacture personal jurisdiction in this way. Thus, the Axion Defendants have not had "continuous and systematic" contacts with California, nor have they purposefully availed themselves of the privileges of doing business in California.

               b.     **There is no specific jurisdiction under California's Long-Arm statute.**

In conclusory fashion, Cypress states that it provided services "in substantial part in San Francisco, California" (Complaint at 4, ¶14). Even if, *arguendo*, that this is true, the mere fact that a plaintiff performs a contract in California cannot serve as a basis for jurisdiction over a

---

8     *Citing Helicopteros*, 466 U.S. at 418.

9     Note: the Nevada Secretary of State identifies "Cypress Ave Partners, LLC" as having a managing member, "Richardo Ramirez," as distinguished from Cypress Avenue Partners, LLC and Ricardo Ramirez as identified by the California Secretary of State (which does not mention any "Ramirez") and in the Complaint. Thus, it appears that the California registration is for a non-existent Nevada limited liability company and that Cypress cannot be recognized as a registered California entity.

10     These documents are admissible per FED.R.EVID. 902(5).

defendant because it is that defendant's activities which are important. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 816 (9th Cir. 1988).

The three cumulative elements of specific jurisdiction are:

(1)    the nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

(2)    the claim must be one which arises out of or the result from the defendants forum-related activities.

(3)    exercise of jurisdiction must be reasonable.

*Newport,* 671 F. Supp. at 1532.[11] The first two elements "are closely related because they focus on the relationship of the defendant and the claim to the forum state." *Paccar Int'l., Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1062 (9th Cir. 1985). To purposely avail itself of California law, a defendant must commit an affirmative act which either allowed or promoted the transaction of business within the forum state. *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990).

The exercise "specific" personal jurisdiction over the Axion Defendants would be improper because it may not arise out of "random, fortuitous or attenuated" contacts over which it has no control. *Burger King*, 471 U.S. at 476. It exists where "the cause of action arises from defendant's forum related activities." *Apollo Technologies Corp. v. Centrosphere Corp.*, 805 F. Supp. 1157, 1182 (D.N.J. 1992).[12] To successfully assert specific jurisdiction, a plaintiff must demonstrate that the defendant purposefully availed itself of the privilege of conducting activities within the forum state such that the defendant should reasonably anticipate being haled into court there in the event of a dispute regarding the forum related activities. *World-Wide Volkswagon v.*

11    *Citing Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1477 (9th Cir. 1986) (*quoting Haisten,* 784 F.2d at 1397). *See also Bancroft & Masters,* 223 F.3d at 1086 and *Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.2d 267, 270 (9th Cir. 1995).

*Woodson*, 444 U.S. 286, 297 (1980). It is the purposeful act of the non-resident defendant—not some unilateral activity of another who merely claims a relationship to the non-resident defendant—which connects a defendant to the forum for jurisdictional purposes. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Specific jurisdiction cannot be established merely by a showing that the out of state party entered into a contract or committed some tort impacting upon a resident of the forum state. The law is clear that damages to such a resident are not the sort of impact within the state that is comprehended within the standard of foreseeability to justify the exercise of personal jurisdiction. Rather, the law requires conduct aimed at the forum itself—<u>not</u> conduct merely affecting a resident of the forum. *Covenant Bank for Savings v. Cohen*, 806 F. Supp. 52, 55-56 (D.N.J. 1992).

Here, Cypress's claims arise from the alleged breach of a contract presented to and signed in New York by Axion between a Nevada limited liability company [Cypress] and a then Canadian based Delaware corporation with offices in Pennsylvania [Axion]. *See* Exhibits A-D. The Axion Defendants have no contacts with California which directly or indirectly relate to Axion's alleged breach of the agreement on which Plaintiff bases it claims. The Axion Defendants have not visited California or otherwise committed any act in California related to disputed agreement that could lead to *in personam* jurisdiction. Specific jurisdiction is also lacking because the Axion Defendants have taken no action "purposefully directed" at California that would provide them with fair warning of the instant suit. *See Camelback Ski Corp. v. Behming*, 539 A. 2d 1107 (Md. 1987), *cert. denied*, 488 U.S. 849 (1988).

Seven factors must be considered to determine whether the exercise of jurisdiction comports with fair play and substantial justice, *i.e.*, the: (1) extent of the defendant's purposeful interjection into the forum state's affairs; (2) burden on the defendant of defending in the forum; (3) extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest

---

12    *Quoting North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 690 (3d Cir.

in adjudicating the dispute; (5) most efficient judicial resolution of the controversy; (6) importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) existence of an alternative forum. *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991).

Any exercise of jurisdiction over the Axion Defendants would be unreasonable as the totality of the circumstances make clear that no Axion Defendant purposefully interjected themselves into California's affairs. Moreover, the Axion Defendants would have to conduct cross-country and international litigation and discovery in defending this action in California against a Nevada LLC [Cypress]. As there is no conflict with California's sovereignty and Cypress authored and agreed to submit all disputes to binding arbitration (*see* Argument III.B., *infra.*) it is clear that Cypress chose an alternative forum which it believed was in its own best interests to efficiently resolve and adjudicate any controversy. As such, the Complaint should be dismissed as the exercise of jurisdiction over the Axion Defendants would be unreasonable and would not comport with traditional notions of fair play and substantial justice.

To exercise jurisdiction under California's long-arm statute as to either of the Individual Defendants would likewise offend due process. Other than to impliedly infer that the Individual Defendants were in contact with Cypress, Cypress fails to allege facts regarding the place, quality and nature of any contacts that it alleges any Individual Defendant had with Cypress California. *See* Exhibit A, generally. Phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts. *Galen Investment Advisors, Inc. v. Alcatel*, 2002 WL 3131990 (N.D. Cal. Oct. 10 2002) and *Berg v. Blue Cross and Blue Shield of Utica-Watertown, Inc.*, 1993 WL 467859 (N.D. Cal. Nov. 2, 1993).[13] Furthermore, the Individual Defendants' corporate-related activities are an insufficient basis for the court to exercise jurisdiction over them in their individual capacities. Granville is also protected by the "fiduciary corporate shield"

---

1990), *cert. denied*, 498 U.S. 497 (1990).

[13]    *See also IMO Industries, Inc. v. Kiekert* AG, 155 F.3d 254, 260 (3d Cir. 1998) (*quoting Reynolds v. Int'l Amateur Athletic Fed.*, 23 F.3d 1110, 1119 (6th Cir. 1994)).

doctrine which provides that an employee or officer of a corporation will not be held liable for their employer's activities simply by virtue of their association. *Davis v. Metro Prod., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989).[14] *But cf. Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990) (partners of law firm did not purposefully avail themselves and were not subject to personal jurisdiction in California for acts committed for law partnership). By logical extension, so to should the doctrine should be extended to protect Attorney Petersen who is clearly accused of committing wrongful acts while acting as an Axion agent or representative. The Complaint is devoid of facts to constitute an exception to the corporate shield doctrine.

> **B.    Dismissal for Improper Venue Is Proper as Cypress Failed to Comply with the Mandatory Forum Selection Clause It Drafted.**

On a FED.R.CIV.P. 12(b)(3) venue challenge, the plaintiff is burdened with establishing that venue is proper. *Modius, Inc. v. Psinaptic, Inc.*, 2006 WL 1156390 *5 (N.D. Cal. May 2, 2006) (citation omitted). Contrary to Rule 12(b)(6) analysis, the pleadings need not be accepted as true and the court may consider facts outside of the pleadings. *Id.*[15] All reasonable inferences and factual conflicts must be resolved in favor of the non-moving party. *Modius*, 2006 WL 1156390 at *5 (citation omitted) and *Hile v. Buth-Na-Bodhaige, Inc.*, 2007 WL 4410774 (N.D. Cal. Dec. 14, 2007) (citation omitted). Questions of credibility or disputed fact may be resolved at an evidentiary hearing. *Modius*, 2006 WL 1156390 *5.[16]

In relevant part, the disputed agreement states:

> Any dispute between the parties hereto arising out of this agreement shall be resolved by binding arbitration in Sacramento, California pursuant to the rules of the American Arbitration Association.

---

[14]    *See also Serafini v. Superior Court*, 68 Cal.App.4th 70, 80 Cal.Rptr.2d 159 (Cal.App., 3d Dist. 1998) (alleged misconduct of an out-of-state corporate officer must be materially connected to tort action whereby the defendants' misconduct must breach a primary right possessed by the plaintiff).

[15]    *Citing Richardson v. Lloyd's of London*, 135 F.3d 1289, 1292 (9th Cir. 1998) and *Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir. 1996) (*citing Carnival Cruise Lines v. Shute*, 499 U.S. 585 (1991))).

[16]    *Citing Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1139-40 (9th Cir. 2003).

*See* Exhibit A at Complaint Exhibit A at 5. Similar arbitration clauses have been construed "to broadly encompass tort claims having their roots in the contractual relationship between the parties." *Efund Capital Partners v. Pless,* 150 Cal.App.4th 1311, 59 Cal.Rptr.3d 340 (Cal. App., 2nd Dist., 2007).[17] As a sister court in this district noted:

> "Forum selection clauses are *prima facie* valid, and are enforceable absent a strong showing by the party opposing the clause 'that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'" *Manetti-Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 514 (9th Cir.1988) (emphasis and brackets in original) (*citing M/S Bremen v. Zapata Of-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). "[B]ecause enforcement of a forum clause necessarily entails interpretation of the clause before it can be enforced, ... federal law applies to interpretation of forum selection clauses." *Id.* at 513.

*Hile*, 2007 WL 4410774 *1. Under the prevailing forum selection clause rule "where venue is specified with mandatory language the clause will be enforced." *Id*. at *2.[18] Where a forum selection provision is neither unduly burdensome nor unreasonable to a plaintiff that is a resident of California, enforcing the provision to require suit in another forum is not *per se* unreasonable. *Koresko*, 291 F.Supp.2d at 1163.

Where, as here, Cypress drafted a forum selection clause which it refuses to abide by, it should be bound by that clause and obligated to institute its action in the agreed upon forum— especially since Cypress's residency is doubtful. Vague allegations of promissory fraud relating to the entirety of the agreement in dispute are insufficient to invalidate the mandatory forum selection clause at issue. *Modius*, 2006 WL 1156390 *6 (granting dismissal for improper venue

---

[17]    *Citing Berman v. Dean Witter & Co., Inc.*, 44 Cal. App.3d 999, 1002-1003, 119 Cal.Rptr. 130 (1975) (reversing trial court denial of motion to compel arbitration as to directors and officers of corporate party to agreement where provision read "Any dispute or other disagreement arising from or out of this Consulting Agreement shall be submitted to arbitration under the rules of the American Arbitration Association and the decision of the arbitrator(s) shall be enforceable in any court having jurisdiction thereof. Arbitration shall occur only in Los Angeles, CA.").

[18]    *Citing Docksider, Ltd. v. Sea Technology, Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989)). *See also American Home Assurance Co. v. TGL Container Lines, Ltd.*, 347 F.Supp.2d 749, 755

where plaintiff alleged facts to confirm that had it known of the misrepresentations of the other contracting party, it would not have entered into the disputed agreement or to the venue provision but such evidence deemed insufficient to meet the fraud exception standard of *Bremen Zapata Of-Shore Co.*, 407 U.S. 1, 10 (1972) (requiring the assertion of facts that the forum selection clause was itself a product of fraud or coercion)). As the apparent non-Californina resident drafter, Cypress cannot, as ether a matter of logic or law, claim that the provision was a product of fraud or coercion by any Axion Defendant. The mandatory nature of the forum selection clause drafted by Cypress is patent and should be enforced via dismissal.[19]

### C. Dismissal for Insufficient Service of Process Is Proper as Plaintiff Failed to Comply with California's Statutory Service Requirements.

On a FED.R.CIV.P. 12(b)(5) insufficiency of service of process challenge, plaintiff bears the burden of showing that service was valid under, *Bell v. Agents for International Monetary Fund*, 1995 WL 783672, *2(E.D. Cal. 1995).[20], and proof *inter alia* of "the facts requisite to an effective service," *Dill v. Berquist Construction Co., Inc.* 24 Cal.App.4th 1426, 1440 (1994) (citations omitted). Dismissal for insufficient service of process is permissible. *Id.*, at *4.

Service on foreign corporations may be completed by delivering the summons and complaint to an officer of the corporation. *Bisq'ettes Ceramic Tile, Inc. v. Skinner*, 2000 WL 33375409, *7 (N.D. Cal. 2000) (*citing* Cal. Code Civ. Proc. §416.10). Service on a person out side the state can be made in any manner provided for under the statute or by first-class mail, postage prepaid, requiring a return receipt. Cal. Code Civ. Proc. §415.40. Other than the aforementioned mail service, a corporation outside of California may be served process as follows:

---

(N.D. Cal. 2004) and *Koresko v. Realnetworks, Inc.*, 291 F.Supp.2d 1157, 1160-1161 (E.D. Cal. 2003) (citations omitted).

[19]     *See Spradlin v. Lear Siegler Management Services Co., Inc.,* 926 F.2d 865 (9th Cir. 1991) (affirming district court dismissal of employment termination action and enforcement of mandatory Saudi Arabian forum selection provision).

[20]     *Citing Norlock v. City of Garland*, 768 F.2d 654, 656 (5th Cir. 1985).

**§ 415.20. Leaving copy of summons and complaint at office, dwelling house, usual place of abode or business or usual mailing address; mailing copy**

(a)      In lieu of personal delivery of a copy of the summons and complaint to the person to be served as specified in Section 416.10, 416.20, 416.30, 416.40, or 416.50, a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office or, if no physical address is known, at his or her usual mailing address, other than a United States Postal Service post office box, with the person who is apparently in charge thereof, **and by thereafter mailing a copy of the summons and complaint by first- class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left**. When service is effected by leaving a copy of the summons and complaint at a mailing address, it shall be left with a person at least 18 years of age, who shall be informed of the contents thereof. Service of a summons in this manner is deemed complete on the 10th day after the mailing.

(b)      If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, as specified in Section 416.60, 416.70, 416.80, or 416.90, a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, **and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left**. Service of a summons in this manner is deemed complete on the 10th day after the mailing.

Cal. Code Civ. Proc. §415.20 (emphasis added).

First, no Axion Defendant was ever personally served with process or received a Summons addressed to either Thomas Granville or John L. Petersen, or even to the "John Granville" or "John Peterson" identified in the Complaint. Second, no Axion Defendant was served with a copy of the Summons and Complaint via regular mail as required under the statute. Third, the person attempting to serve process was not attempting to make service on either Individual Defendant, but rather on persons identified as "John Granville" or "John Peterson." Fourth, no service on an officer at Axion's Pennsylvania facility can constitute proper service on Attorney Petersen who is not an Axion employee. Accordingly, the Complaint should be dismissed for insufficient service of process under FED.R.CIV.P. 12(b)(5).

**D.    Dismissal of Second through Fifth Causes of Action Is Warranted Under Rule 12(b)(6).**

**1.    The Burden of Proof on a FED.R.CIV.P. 12(b)(6) Motion.**

As a sister court in this district has recently noted:

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 12(b)(6)."The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n,* 720 F.2d 578, 581 (9th Cir.1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a).

In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material fact as true and construe(s) them in the lights most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombley,* --- U.S. ----, ----, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984)). The factual allegations must be definite enough to "raise a right to relief above the speculative level." *Id.* at 1965. However, a complaint does not need detailed factual allegations to survive dismissal. *Id.* at 1964.Rather, a complaint need only include enough facts to state a claim that is "plausible on its face." *Id.* at 1974. That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief. *Id.* at 1965 (noting that this requirement is consistent with Fed.R.Civ.P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader is entitled to relief").

The Court "may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Gordon v. Impulse Mktg. Group, Inc.,* 375 F.Supp.2d 1040, 1044 (E.D.Wash.2005) (citing *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001)). If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them. *Id.* at 1044. The Court may also consider documents of which it has taken judicial notice pursuant to Rule 201 of the Federal Rules of Evidence. *Mir v. Little Co. of Mary Hosp.,* 844 F.2d 646, 649 (9th Cir.1988). . . .

*Inter-Mark USA, Inc. v. Intuit, Inc.*, 2008 WL 552482 *5-*6 (N.D. Cal. Feb. 27, 2008).[21] Where a court concludes that the factual allegations in a plaintiff's complaint, even if true, do not state grounds for relief, then dismissal is warranted. *See Bell v. Hood*, 327 U.S. 678 (1946).

A district court need not accept as true any legal conclusions, deductions or opinions alleged in or inferred from the allegations of the pleading that is the subject of the motion. *In re Foxhollow Technologies, Inc. v. Securities Litigation*, 2008 WL 2220600 *12 (N.D. Cal. May 27, 2008). Moreover:

> A plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." . . . Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." . . . A motion to dismiss should be granted if the complaint fails to proffer enough facts to state a claim to relief that is plausible on its face. . . .
>
> Where a complaint includes allegations of fraud, however, Federal Rule of Civil Procedure 9(b) requires that falsity be pled with more specificity, including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." . . . "[A]llegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." . . . In addition, the plaintiff must do more than simply allege the neutral facts necessary to identify the transaction; he must also explain why the disputed statement was untrue or misleading at the time it was made. . . .

*Id.* (citations omitted).

### 2.    The Breach of the Implied Covenant of Good Faith and Fair Dealing Claim Should Be Dismissed.

To state a claim for breach of an implied covenant of good faith and fair dealing (the "implied covenant"), the specific contractual obligation from which the implied covenant arose must be alleged. *Inter-Mark USA,* 2008 WL 552482 *6.[22] The failure to so identify the particular provision at issue constitutes "a bare legal assertion, supported by no factual allegations." *Id.*

---

[21]    *See also Barrier Specialty Roofing & Coatings, Inc. v. ICI Paints North America, Inc.*, 2008 WL 1994947 *2 (E.D. Cal. May 6, 2008) (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (Rule 12(b)(6) proper when "plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

(dismissing the implied covenant claim and rejecting the representative class plaintiff's reliance and reference to the entirety of the software license agreement in dispute). The implied covenant does not exist independent of its contractual underpinnings and "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Patriot Scientific Corp. v. Korodi*, 504 F.Supp.2d 952, 964 (S.D. Cal. 2007) (citation omitted). No breach of the implied covenant can properly exist where the "same factual allegations form the basis of" an alleged implied duty of good faith and fair dealing claim as supports the assertion of another claim for breach of contract. *Celestial Mechanix, Inc. v. Susquehanna Radio Corp.*, 2005 WL 4715213 *9 (C.D. Cal. Apr. 28, 2005).[23]

Here, Cypress states that "Defendant expressly and impliedly agreed to compensate Plaintiff" (Complaint at 6, ¶19) and improperly attempts to assert a claim for breach of the implied covenant separate from that of its breach of contract action. In its breach of implied covenant claim, Cypress alleges that Axion "failed and refused to compensate Plaintiff for the reasonable value of said services" (Complaint at 6, ¶25) while in its breach of contract claim it alleges that Axion breached the agreement "by refusing to compensate Plaintiff for his services" (Complaint at 4, ¶16). Put simply, Cypress is attempting to assert both claims in pursuit of the same relief on exactly the same factual grounds. Thus, the breach of implied covenant claim is duplicative of the breach of contract claim and should be dismissed.

3.    **The Quantum Meruit Claim Should Be Dismissed.**

Under California law, quantum meruit is "an equitable remedy implied by the law under which a plaintiff who has rendered services benefitting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." *Precision*

---

22    *Citing Love v. The Mail on Sunday*, 2006 WL 4046180 *7 (C.D. Cal. Aug. 2006).
23    *Citing Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal.App.3d 1371, 1395, 272 Cal.Rptr. 387 (1990) ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief

*Pay Phones v. Qwest Communications Corp.*, 210 F.Supp.2d 1106, 1111-1112 (N.D. Cal. 2002) (citations omitted). To state a quantum meruit claim, a plaintiff must assert facts to establish that (1) the plaintiff rendered services to the defendant's benefit; and (2) the defendant would be unjustly enriched if the plaintiff was not compensated. *Id*. at 1112 (citations omitted). "Where there is an express contract stating the commission or fee structure, quantum meruit does not apply, regardless of whether or not the salesperson was a procuring cause." *Schuman v. Ikon Office Solutions, Inc.*, 232 Fed.Appx. 659, 2007 WL 1314522 (9th Cir. 2007) (citations omitted). Here, Cypress asserts a breach of express contract action and Complaint Exhibit A contains express fee provisions. Accordingly, the quantum meruit claim should be dismissed.

### 4.    The Fraud Claim Should Be Dismissed Per Rules 9(b) and 12(b)(6).

Cypress's common law fraud claim must be dismissed for failure to plead with particularity the necessary elements of fraud required by FED. R. CIV. P. 9(b). To assert a fraud claim, a plaintiff must plead facts demonstrating that there was (1) a misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of falsity ("scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Barrier Specialty Roofing & Coatings, Inc. v. ICI Paints North America*, 2008 WL 1994947 (E.D. Cal. May 6, 2008).[24] The allegedly fraudulent statement must "ordinarily be an affirmation of past or existing facts to be an actionable fraud claim; predictions as to future events are deemed opinions, and not actionable by fraud." *Tektronix*, 100 F.Supp.2d at 1093 (granting dismissal of non-actionable fraud claims constituting puffery arising out of various oral representations by company personnel and officers, including one-on-one meetings where company president was accused of repeating same allegedly fraudulent statements, relating to "high priority"

---

already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.").

[24]    *Citing City Solutions, Inc. v. Clear Channel Communications, Inc.*, 365 F.3d 835, 839 (9th Cir. 2004)) and *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F.Supp.2d 1086, 1093 (C.D. Cal. 1999).

development that was to be pursued "full tilt" and that certain technology as superior to that of a competitor).[25] The statements "must also ordinarily be a specific factual assertion; generalized statements are usually not actionable as fraud." *Id.*(citations omitted).

Although not titled as such, Cypress appears to be attempting to assert a claim for promissory fraud (a cognizable action under California law when a party enters into an agreement without intending to be bound by its terms). With respect to pleading promissory fraud claims under Rule 9(b), a sister court of this district has stated:

> Plaintiffs allege the tort of promissory fraud, which is cognizable when a party enters into an agreement without intending to be bound by its terms. . . . A plaintiff can prove fraudulent intent by circumstantial evidence and a trier of fact may infer such intent given the circumstances surrounding contract formation. . . . However, promissory fraud is not exempted from the strictures of Rule 9(b), and a plaintiff is required to plead "facts from which the Court can infer that the allegedly fraudulent statements were actually false when made." . . . Although intent can be averred generally under Rule 9(b), a plaintiff must point to *facts* which show that defendant harbored an intention not to be bound by terms of the contract at formation. Plaintiffs' complaint simply states that "defendant OZ had no intention to be bound by the terms as agreed in the aforesaid agreements." (**Compl.**¶ 16.) Plaintiffs have failed to plead fraud with specificity as required by Rule 9(b), and therefore, defendant's motion to dismiss is granted without prejudice. If plaintiffs elect to replead, they must allege specific facts from which a trier of fact could infer that defendant did not intend to be bound by the terms of the agreements when made.

*Hsu v. Oz Optics Ltd.*, 211 F.R.D. 615. 620 (N.D. Cal. 2002) (citations omitted).

Cypress claims that it was fraudulently induced to enter into Complaint Exhibit A based on Axion's and Granville's alleged, ill-described fraudulent statement (attributed to Granville) that "Axion would honestly and fairly abide by its Agreement with Plaintiff." Complaint at 6, ¶29 and at 7. This statement is alleged to evidence that "neither Defendants Axion or (sic) Granville intended to honor the Agreement" at the time that the purported statement was made. Complaint at 6, ¶29 and at 7, ¶30, respectively. It is obvious that Cypress, like the plaintiff in *Hsu*, has simply failed to "point to *facts* which show" that Axion and/or Granville harbored an

---

[25]    *See also Apollo Capital Fund, LLC v. Roth Capital Partners*, LLC, 158 Cal. App.4th 226, 243, 70 Cal. Rptr.3d 199, 213 (Cal. App. 2 Dist., 2007) and *Shamsian v. Atlantic Richfield Co.*,

intention not to be bound by terms of the contract Cypress now claims it was induced to enter due to promissory fraud. Put another way, if allegations constitute fraud then any generic breach of contract can constitute fraud and that simply is not, because it cannot, be the law. *Richardson v. Reliance Nat'l Indem. Co.,* 2000 WL 284211 *5 (N.D. Cal. 2000) (rejecting a similar argument and concluding such an argument would "effectively eviscerate the effect of Rule 9(b) in every case of promissory fraud" and that under such a theory, every breach of contract would support a claim of fraud "so long as the plaintiff adds to his complaint a general allegation that the defendant never intended to keep her promise.").

Fraud claims, inclusive of a promissory fraud, must "specify such facts as the times, dates, places, and benefits received, and other details of the alleged fraudulent activity." *Tektronix*, 100 F.Supp.2d at 1094 (citations omitted).[26] Allegations such as "'[d]uring the course of discussions in 1986 and 1987' and 'in or about May through December 1987' do not make the grade." *Korodi*, 504 F.Supp.2d at 965. The individual making the alleged representation and its content must be identified. *Id*. Moreover, a plaintiff "must set forth what is false or misleading about a statement, and why it is false." *Id*. All of this is needed "so that the defend[ant] (sic) can prepare an adequate answer to the allegations." *Tektronix*, at 1095 (citation omitted).

At best, the alleged misrepresentation constitutes conclusory speculation as to Axion's and Granville's "intent" and are not misstatements of past or present facts. At worst, the allegedly fraudulent statement amounts to nothing more than puffery, which is not actionable either as fraud or a contract breach. The statement attributed to Granville—that "Axion would honestly and fairly abide by its Agreement with Plaintiff"—is merely a statement about future events which, by definition, neither he nor Axion could have known to be false when made.

---

107 Cal.App.4th 967, 983, 132 Cal.Rptr.2d 635, 647 (Cal. App. 2 Dist., 2003).
[26]     *See also Patriot Scientific Corp. v. Korodi*, 504 F.Supp.2d 952, 965 (S.D. Cal. 2007) (granting dismissal of fraud count identifying corporate entity and its principal as the makers of the alleged misrepresentation, but failing to identify the place where allege misrepresentation was made, deemed insufficient pleading of the "identity of the parties to the misrepresentation").

Cypress's allegations abjectly fail to set forth the circumstances constituting fraud, *e.g.*, "pointing to inconsistent contemporaneous statements or information . . . which were made by or available to the defendants" or identifying "circumstantial evidence to explain how and why the statements were misleading when made." *Richardson,* 2000 WL 284211, at \*5 (citing examples of facts needed to establish the falsity of the alleged misrepresentation at the time it was made).

Plaintiff's fraud allegations simply fail to identify the "who, what, where and when" of the alleged fraud with the required particularity and otherwise fail to state the manner in which Plaintiff could have and did reasonably rely on such alleged misrepresentations. For example, in addition to failing to identify the where and the when of the alleged fraudulent statement, Cypress fails to identify whether the statement was made in documents or orally, to whom it was made, and the manner in which the statement purportedly mislead Plaintiff, or what any defendant gained or obtained as a result of the alleged fraudulent statement. As the *Korodi* case confirms, even Cypress's allegations that purport to "identify" Granville and Axion Power, Inc. as the makers of the alleged misrepresentation fail to "sufficiently plead the identity of the parties to the misrepresentations." *Korodi*, 504 F.Supp.2d at 965. Accordingly, the promissory fraud claim should be dismissed pursuant to FED.R.CIV.P. 9(b) and 12(b)(6).

### 5.     The Professional Negligence Claim Should Be Dismissed.

The purported professional negligence claim against Attorney Petersen claims that he acted as Cypress's attorney because he allegedly (1) "solicited Plaintiff's services on behalf of Defendant Axion" (Complaint at 8, ¶36); (2) "disclosed that he was an attorney" (*id*.); and (3) vaguely "represented to Plaintiff that he would ensure that Plaintiff's interests were protected in the subject transaction with Defendant Axion" (*id*.). Cypress also claims that unbeknownst to it, Attorney Petersen was also simultaneously representing Cypress and Axion in the same financial consultancy transaction and that he failed to advise of the conflict and otherwise provided sub-standard legal advice in failing to caution that if he [Attorney Petersen] fully performed "any and

all of his duties and obligations . . . that Defendant Axion may refuse to compensate Plaintiff for his services." Complaint at 8, ¶¶37 and 38.

No professional negligence claim is stated because no facts are stated to establish that any attorney-client relationship was ever formed between Cypress and Attorney Petersen. The claim is also barred by the economic loss doctrine as it merely closely parallels Cypress's alleged breach of contract claim. *Lincoln General Ins. Co. v. Access Claims Administrators, Inc.*, 2007 WL 2492436 *8 (E.D. Cal. Aug. 20, 2007) (requiring harm beyond a broken contractual promise and stating that "Under California law, purely economic losses due to disappointed expectations do not constitute cognizable injury.") (citation omitted).

"[A]n attorney's duty to his or her client depends on the existence of an attorney-client relationship. If that relationship does not exist, the fiduciary duty to a client does not arise." *Fox v. Pollack,* 181 Cal.App.2d 954, 959 (1986) (citations omitted). Furthermore:

> In determining whether an attorney-client relationship has been established, several guiding principles are applicable. "It is elementary that the *relationship* between a client and his retained (or noncourt-appointed) counsel arises from a contract, whether written or oral, implied or expressed." . . . An attorney-client relationship can be formed though no retainer is signed or no fees are paid. . . . "'When a party seeking legal advice consults an attorney at law and secures that advice, the relation of attorney and client is established prima facie.' The absence of an agreement with respect to the fee to be charged does not prevent the relationship from arising." Contractual formality is not required.

*Gulf Ins. Co. v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone,* 79 Cal.App.4th 114, 126, 93 Cal.Rptr.2d 534, 542 (Cal.App. 2 Dist., 2000) (citations omitted).

An attorney's fiduciary obligations of loyalty and confidentiality do not begin until "attorney-client discussions proceed beyond initial or peripheral contacts." *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.,* 20 Cal.4th 1135, 1148 (1999). An attorney-client relationship ordinarily is created by an express or implied mutual agreement that the attorney will render legal services for the client. *Fox, supra. See* 1 Mallen & Smith, Legal Malpractice (4th ed. 1996) at 568-572, § 8.3.

Under California law, a contract is implied-in-fact when its existence and terms are manifested by the parties' conduct. Cal. Civ. Code, §1621. Although the question of whether the parties' conduct evidences an implied-in-fact contract is a question of fact for the trier of fact, it is a question of law where the facts are undisputed and support only one conclusion. *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 677, 682, 254 Cal.Rptr. 211, 765 P.2d 373 (1988); *Del E. Webb Corp. v. Structural Materials Co.*, 123 Cal.App.3d 593, 611, 176 Cal.Rptr. 824 (1981); and *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal.App.4th 1359, 1386-87, 88 Cal.Rptr.2d 802 (1999).

Even if, for purposes of deciding this motion, the allegations of the Complaint are taken as true, neither Cypress's pleading allegations nor the totality of the circumstances support the existence of any attorney-client relationship sufficient to support a claim for professional negligence against Attorney Petersen. Nothing in the Complaint is an allegation that Cypress ever (1) sought legal advice from Attorney Petersen, (2) consulted with Attorney Petersen to secure legal advice, or (3) secured legal advice from Attorney Petersen. Cypress has failed to plead its *prima facie* burden. Cypress does not allege that at the time that it was negotiating the disputed agreement, it believed or understood that it had an attorney-client relationship with Attorney Petersen or that he was then expressly or impliedly agreeing to act as its attorney.

As pled by Cypress:

- Cypress admits that Attorney Petersen "solicited Plaintiff's services on behalf of Defendant Axion" (Complaint at 8, ¶36). It is notable that Attorney Petersen is not alleged to have solicited his legal services to Cypress and Cypress is not alleged to have sought legal services from Attorney Petersen.

- Attorney Petersen "disclosed that he was an attorney" (*id.*). Stating that one is an attorney is a statement of a present fact, not indicia that Attorney Petersen and Cypress were in an express or implied contractual relationship for the provision of legal services to Cypress. In fact, the totality of the asserted factual circumstances suggest the contrary as it is clear that Attorney Petersen who, on behalf of Axion, is alleged to have contacted and solicited Cypress in an effort to procure Cypress's financial consultancy services for Axion. Thus, Cypress knew that Petersen was representing the interests of another, irrespective of whether it denies knowing that Attorney Petersen was representing Axion as its attorney.

Cypress's allegations in this regard are facially inconsistent as Cypress clearly knew Attorney Petersen was representing Axion in some capacity, even if *arguendo* it had no knowledge of whether Attorney Petersen was representing Axion in the capacity of a lawyer. To the extent that Attorney Petersen was Axion's counsel in the transaction, his alleged disclosure of his attorney status to Cypress makes sense, especially if Cypress was not then represented by counsel in those communications or the underlying transaction.

- Attorney Petersen "represented to Plaintiff that he would ensure that Plaintiff's interests were protected in the subject transaction with Defendant Axion" (*id.*). Apart from being a vague statement at best, this allegation does not provide any indicia of the existence of any attorney-client relationship. First, Cypress does not allege that it ever needed any legal representation. Second, Cypress does not allege that Attorney Petersen ever prepared any agreement for Cypress's benefit in any transaction involving Axion. Third, Complaint Exhibit A on its face appears to be a letter agreement prepared and signed by Cypress's principal Ricardo I. Ramirez—not Attorney Petersen. Fourth, Cypress does not allege that Attorney Petersen prepared Complaint Exhibit A for Cypress, that Cypress ever requested that Attorney Petersen prepare Complaint Exhibit A or any other written agreement for any transaction involving Axion, nor does it allege that Cypress ever requested that Attorney Petersen review and comment on any agreement which it was considering entering into with Axion. Fifth, Cypress's negligence claim is barred by the economic loss doctrine as it does not identify any harm beyond that of a broken contractual promise.

Nothing in Cypress's description can be understood to reflect typical circumstances of the existence of an attorney-client relationship, *e.g.*, where (1) Attorney Petersen previously represented Cypress over any a lengthy period of time or in several matters, or occurred without an express agreement;[27] (2) Attorney Petersen had personal contact with Cypress in the course of allegedly representing it, *e.g.*, a description of the quality, frequency and nature of communications alleged to have occurred between them;[28] (3) Cypress had no independent counsel and needed to retain an attorney;[29] (4) Cypress sought legal advice from Attorney Petersen or that Attorney Petersen actually provided legal advice, *e.g.*, Cypress does not allege that Attorney Petersen drafted the Complaint Exhibit A or otherwise rendered legal advice to

---

[27]    *See Kane, Kane & Kritzer, Inc. v. Altagen,* 107 Cal.App.3d 36, 40-42, 165 Cal.Rptr. 534 (1980).

[28]    *See Johnson,* 38 Cal.App.4th 463, 477, 45 Cal.Rptr.2d 312 (1995); *Responsible Citizens,* 16 Cal.App.4th 1717, 1733, 20 Cal.Rptr.2d 756 (1993).

[29]    *See Johnson,* at pp. 476-477.

Cypress with respect to it;[30] (5) Cypress ever disclosed confidential information to Attorney Petersen concerning the financial consultancy agreement in dispute;[31] or (6) Cypress paid any fees or other consideration to Attorney Petersen in connection with any alleged legal services to be provided by Petersen.[32] The simple fact is that the Complaint allegations, whether considered individually or in their totality, do not support the existence of any attorney-client relationship sufficient to support any alleged professional negligence claim.

IV.    **CONCLUSION**

The Axion Defendants request that the Court grant its Motion to Dismiss Plaintiff's Complaint in its favor and against plaintiff, Cypress Avenue Partners LLC in the form of Order attached hereto, including, but not limited to, an award of all costs of suit, including reasonable attorney's fees and such other and further relief as the Court deems just and proper.

FELLHEIMER & EICHEN LLP

Alan S. Fellheimer
1800 John F. Kennedy Boulevard, Suite 1400
Philadelphia, PA 19103
(215) 253-6634

Attorneys for Defendants,
Axion Power International, Inc.,
Thomas Granville and
John L. Petersen, Esquire

Dated: June 30, 2008

---

30    *See Beery v. State Bar*, 43 Cal.3d 802, 811, 239 Cal.Rptr. 121, 739 P.2d 1289 (1987); *Fox* 181 Cal.App.3d at 959.
31    *See Responsible Citizens,* 16 Cal.App.4th at 1733.
32    *See Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc.*, 69 Cal.App.4th 1399, 1403, 82 Cal.Rptr.2d 326 (1999) and *Fox,* 181 Cal.App.3d at 959.

%AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of _____

Cypress Avenue Partners, LLC

**SUMMONS IN A CIVIL ACTION**

V.

Axion Power International, Inc.; John Granville;
John Peterson; and Does 1-50, inclusive

CV 08     2374

CASE NUMBER:

MEJ

TO: (Name and address of Defendant)

Axion Power International, Inc.
c/o Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

James B. Betts, Esq.
Betts & Wright
7108 North Fresno Street, Suite 460
Fresno, CA 93720
(559) 438-8500

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

RICHARD W. WIEKING

MAY   8 2008

CLERK

DATE

(By) DEPUTY CLERK

MARY ANN BUCKLEY

%AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                Date                  *Signature of Server*

                                  _____
                                    *Address of Server*

[1] As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

1   **BETTS & WRIGHT, A Professional Corporation**
    Attorneys at Law
2   P.O. Box 28550
    Fresno, California 93729-8550
3   Telephone: (559) 438-8500
    Facsimile: (559) 438-6969
4

5   James B. Betts (State Bar #110222)
    Joseph D. Rubin (State Bar #149920)

6   Attorneys for Plaintiff RICARDO RAMIREZ

7

8

9              **UNITED STATES DISTRICT COURT**
           **NORTHERN DISTRICT OF CALIFORNIA**
10               **SAN FRANCISCO DIVISION**

11

12   CYPRESS AVENUE PARTNERS LLC     )    Case No.
                              )
13        Plaintiff,             )
                              )    **COMPLAINT FOR DAMAGES**
14       v.                    )
                              )
15   AXION POWER INTERNATIONAL, INC.;  )
    JOHN GRANVILLE; JOHN PETERSON;   )
16   and DOES 1-50, inclusive,         )
                              )
17        Defendants.           )
                              )
18   _____

19   **JURISDICTION AND VENUE**

20       1.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(2),

21   in that complete diversity exists between Plaintiff and Defendants in this case.

22   Plaintiff Cypress Ave Partners LLC is a limited liability company qualified to do

23   business in the State of California. Defendant Axion Power, Inc., is a corporation

24   with its principal place of business in Delaware; Defendant John Granville is a

25   resident of Pennsylvania and Defendant John Petersen is a licensed attorney

26   practicing in Switzerland.

      2.     The amount in dispute exceeds $900,000.
27

28       3.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(a) in that

  Plaintiff does business in this judicial district and a substantial part of the events

**FILE BY FAX**

1  giving rise to this claim occurred, and the agreement that is subject of this claim

2  was entered into, in this judicial district.

3

4  **THE PARTIES**

5      4.    Plaintiff Cypress Avenue Partners is a Nevada limited liability company,

6  which at all times herein relevant was doing business, and did business, in

7  California.

8      5.    Plaintiff is informed and believes, and thereon alleges, that Defendant

9  Axion Power, Inc., is a corporation with its principal place of business in Delaware,

10  which at all times herein relevant engaged Plaintiff in connection with business

11  activities undertaken in California.

12      6.    Plaintiff is informed and believes, and thereon alleges, that at all times

13  herein that Defendant John Granville was an individual who served as the Chief

14  Executive Officer of Axion Power, Inc.

15      7.    Plaintiff is informed and believes, and thereon alleges, that at all times

16  herein relevant that Defendant John Peterson was an individual who was licensed

17  as an attorney and who provided professional advice to Plaintiff regarding the

18  business activities at issue in this case.

19      8.    The Defendants herein named as Does 1-50, inclusive, are currently

20  unknown to Plaintiff, who sues said Defendants by such fictitious names. Plaintiff

21  will seek leave to amend this Complaint to allege the true names and capacities of

22  said Defendants when the same have been ascertained.

23      9.    Plaintiff is informed and believes and therein alleges that at all times

24  herein mentioned, Defendants, and each of them, proximately caused and

25  contributed to, by agency, joint venture or otherwise, the happenings, events,

26  fraudulent acts or other unlawful acts or circumstances hereinafter alleged.

27      10.    Plaintiff is informed and believes and thereon alleges that the

28  Defendants, and each of them, were at all times herein mentioned the agents,

Complaint for Damages

1   servants and employees or representatives of the remaining Defendants, and each

2   of them, and at all times herein mentioned were acting within the course, scope

3   and purpose of said agency and employment, and with the knowledge and consent

4   of the remaining Defendants.

5

6   **NATURE OF CASE**

7        11.    On or about October 5, 2006, Plaintiff and Defendant Axion Power

8   International, Inc., ("Axion") entered into a written agreement for consulting

9   services ("Agreement"), a copy of which is attached as Exhibit A.  The Agreement

10  provided, generally, that Plaintiff would work on behalf of Defendant Axion to

11  assist with Defendant Axion's fund-raising efforts.  As a direct result of Plaintiff's

12  efforts, Defendant Axion was recently able to secure approximately $18 million in

13  financing ("the Financing").  Plaintiff is owed fees earned under the terms of the

14  Agreement as well as the other consideration promised to Plaintiff, as follows:

15            A.    Section 3(i) of the Agreement provides for the issuance of a

16  warrant to Plaintiff upon the execution of the Agreement, in the amount of

17  200,000 shares.  Despite repeated assurances by Defendant John Peterson that

18  this warrant had been issued, Plaintiff was never provided with the warrant.

19            B.    Section 3(ii) of the Agreement provides that upon the closing of

20  a financing transaction with a funding source introduced by Plaintiff, Defendant

21  Axion will pay Plaintiff $50,000.00.  Despite the fact that a financing transaction

22  closed on or about January 15, 2007, Defendant Axion has failed or refused to pay

23  Plaintiff.

24            C.    Paragraph 3(iii) of the Agreement requires Defendant Axion to

25  pay Plaintiff 5% of the proceeds from any equity financing raised or resulting from

26  Plaintiff's effort.  Despite the fact that Plaintiff is owed $900,000, Defendant under

27  this provision, Axion has failed or refused to pay Plaintiff.

28

- 3 -

1    12.    In public filings submitted by Defendant Axion regarding the Financing,

2  Defendant Axion has represented that:

3       "Certain Fees. No brokerage or finder's fees or commissions are or
        will be payable by the Company to any broker, financial advisor or
4       consultant, finder, placement agent, investment banker, bank or other
        Person with respect to the transactions contemplated by this
5       Agreement except to Merriman Curhan Ford & Co. (the "Placement
        Agent"). The Investor shall have no obligation with respect to any
6       fees or with respect to any claims (other than such fees or
        commissions owed by the Investor pursuant to written agreements
7       executed by the Investor which fees or commissions shall be the sole
        responsibility of the Investor) made by or on behalf of the Placement
8       Agent or any other Persons for fees of a type contemplated in this
        Section that may be due in connection with the Transactions
9       contemplated by this Agreement".

10  Section 3.1(s) of the Securities Purchase Agreement between Axion and the

11  Quercus Trust ("Financing Agreement")

12

13                        **FIRST CAUSE OF ACTION**

14              **(Breach Of Contract as to Defendant Axion Power, Inc.)**

15    13.    Plaintiff realleges Paragraphs 1 through 12, above, and incorporates

16  those paragraphs by this reference.

17    14.    On or about October 5, 2006, Plaintiff entered into the Agreement

18  with Defendant Axion for consulting services, which were provided in substantial

19  part in San Francisco, California.

20    15.    Plaintiff has performed all the conditions, covenants, duties,

21  responsibilities and promises required by it to be performed in connection with the

22  Agreement.

23    16.    Defendant Axion has breached the parties' Agreement by refusing to

24  compensate Plaintiff for his services.

25    17.    As a result of Defendant Axion's breach, Plaintiff has been damaged in

26  an amount to be proven at trial, and has incurred attorney's fees in amounts in

27  excess of the jurisdictional requirement of this Court.

28

## SECOND CAUSE OF ACTION

**(Breach of the Implied Covenant of Good
Faith and Fair Dealing as to Defendant Axion Power, Inc.)**

18.    Plaintiff repeats and realleges every allegation contained in Paragraphs 1 through 12 and 14 through 17, above, of this Complaint, as though set forth in full.

19.    In consideration for Plaintiff's performance under the Agreement, Defendant expressly and impliedly agreed to compensate Plaintiff accordingly and to deal fairly with Plaintiff.

20.    In addition to Defendant's obligation to pay Plaintiff, Defendant was required to abide by the covenant of good faith and fair dealing implied by law in the relationship between Plaintiff and Defendant. The covenant of good faith and fair dealing required each party to refrain from taking any action which would deprive the other party of the benefits of the agreement or cause undue hardships or harm to the other party.

21.    On or about January 15, 2008, Plaintiff was denied payment by Defendant without any justifiable cause or reason. The denial of payment was undertaken without probable cause or a good faith belief that good cause for the delay in payment in fact existed. Moreover, Defendant's conduct was an action extraneous to the Agreement and a violation of law and public policy and was undertaken with the intent to frustrate Plaintiff's enjoyment of its contract rights.

22.    As a direct and proximate result of Defendant's breach, Plaintiff has sustained and will suffer economic losses in an amount to be proven at trial.

////
////
////
////
////

- 5 -

## THIRD CAUSE OF ACTION

### (Common Count – Quantum Meriut; Value of Services Provided as to Defendant Axion Power, Inc.)

23.    Plaintiff repeats and realleges every allegation contained in Paragraphs 1 through 12, 14 through 17, and 19 through 22, above, of this Complaint, as though set forth in full.

24.    At all times herein relevant, Plaintiff provided Defendant Axion consulting services, which, among other things, generated approximately $18 million in available financing.  Plaintiff's efforts provided a material benefit to Defendant Axion.

25.    Despite the fact that Plaintiff was induced to provide said services at Defendant Axion's request, and that said services provided a material financial benefit, Defendant Axion has failed and refused to compensate Plaintiff for the reasonable value of said services.

26.    As a result of Defendant's refusal to fairly compensate Plaintiff, Plaintiff has been damaged in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### (Fraud – as to Defendants Axion Power, Inc., Thomas Granville)

27.    Plaintiff repeats and realleges every allegation contained in Paragraphs 1 through 12, 14 through 17, 19 through 22, and 24 through 26, above, and incorporates those Paragraphs by this reference.

28.    In undertaking the acts alleged herein, Defendant Thomas Granville acted as the agent, employee and representative of Defendant Axion Power, Inc., and actively participated in the conduct described herein.

29.    At all times herein relevant, Defendant Granville represented, in his capacity as Axion's President, that Defendant Axion would honestly and fairly abide

- 6 -

1  by its Agreement with Plaintiff. Defendants made those representations for the

2  express purpose of inducing Plaintiff to fully perform the Agreement.

3       30.   In making the representations herein alleged, Defendants intended to,

4  and did, induce Plaintiff to fully perform all duties required of Plaintiff under the

5  Agreement. However, at the time Defendant Granville made his representations,

6  neither Defendants Axion or Granville intended to honor the Agreement. Rather, at

7  all times herein relevant, Defendants Granville and Axion intended to, and did,

8  induce Plaintiff to fully perform under the Agreement, without any intent to

9  compensate Plaintiff for his work.

10       31.   At the time Defendants made the representations herein alleged,

11  Defendants knew that Plaintiff was relying upon Defendants to conduct themselves

12  appropriately in the management and operation of Axion Power, Inc. Plaintiff's

13  reliance upon Defendants was reasonable.

14       32.   As a direct and proximate result of Defendants fraud, Plaintiff has

15  incurred damages in an amount to be proven at trial.

16       33.   Defendants' conduct as herein alleged was intentional, malicious,

17  oppressive and undertaken in conscience disregard of Plaintiff's rights, or with a

18  reckless disregard of the likelihood of causing Plaintiff damage, justifying an award

19  of punitive damages.

20

21              **FIFTH CAUSE OF ACTION**

22       **(Professional Negligence – as to Defendant John Peterson)**

23       34.   Plaintiff repeats and realleges every allegation contained in Paragraphs

24  1 through 12, 14 through 17, 19 through 22, and 24 through 26, and 28 through

25  33, above, and incorporates those Paragraphs by this reference.

26       35.   Plaintiff is informed and believes, and thereon alleges, that Defendant

27  Peterson is an attorney at law, that served on Defendant Axion's Board of Directors

28  until January 15, 2007.

                          - 7 -                    Complaint for Damages

36.   Defendant Peterson was the individual who initially solicited Plaintiff's services on behalf of Defendant Axion, and induced Plaintiff to enter into the Agreement.  In the course of discussing the terms of the Agreement with Plaintiff, Defendant Peterson disclosed that he was an attorney, and represented to Plaintiff that he would ensure that Plaintiff's interests were protected in the subject transaction with Defendant Axion.

37.   Unbeknownst to Plaintiff at the time the Agreement was entered into, Defendant Peterson was representing both Plaintiff and Defendant Axion.  Despite an open and patent conflict of interest, Defendant Peterson did not disclose the existence of such a conflict to Plaintiff, or obtain Plaintiff's written consent to such conflict.

38.   At all times herein relevant, Defendant Peterson provided legal advice to Plaintiff which fell below the applicable standard of care.  Specifically, Defendant Peterson did not caution Plaintiff that if he fully performed any and all duties and obligations to be performed on Plaintiff's part under the Agreement, that Defendant Axion may refuse to compensate Plaintiff for his services.  Moreover, Defendant Peterson failed to include within the Agreement appropriate remedies to protect Plaintiff's interests in the event of Defendant's Axion breach of contract.  Rather, Defendant Peterson represented and warranted to Plaintiff that he was familiar with Defendant Axion's business practices, and that Plaintiff did not have to be concerned that Defendant Axion would not honor the Agreement.  As such, the legal advice provided by Defendant Peterson to Plaintiff, and upon which Plaintiff relied to its detriment, fell below the appropriate legal standard of care.

39.   As a direct and proximate result of Defendant Peterson's professional negligence, Plaintiff has been harmed in an amount to be proven at trial.

////

////

////

- 8 -

WHEREFORE, Plaintiff prays for judgment as follows:

1.    For compensatory damages in an amount according to proof at trial;

2.    For prejudgment interest in an amount according to proof at trial;

3.    For punitive damages;

4.    For attorney's fees;

5.    For costs of suit herein; and

6.    For such other and further relief as this Court may deem appropriate.

**JURY TRIAL DEMANDED**

Pursuant to Federal Rules of Civil Procedure, Plaintiff demands a jury trial for all issues so triable.


Dated:    May 8, 2008              BETTS & WRIGHT

                                   By _____
                                              James B. Betts
                                   Attorneys for Plaintiff
                                   RICARDO RAMIREZ

- 9 -

Complaint for Damages

JUN-12-2008  09:14        BETTS WRIGHT                              559 438 6959    P.02

# EXHIBIT A

JUN-12-2008  09:14        BETTS WRIGHT                                    559 438 6959    P.03

10/09/2006  12:06    7168536128                                              PAGE  01/05
10/08/2006 11:33 FAX 9305810795              GALLAGHER
                                             TO TERMITE                       Ø002



October 5, 2006

Thomas Granville
Axion Power International Inc.
100 Caster Avenue
Woodbridge, Ontario
L4L 5Y9 Canada

Gentlemen:

   This letter sets forth an agreement as to the terms on which Axion Power International, Inc. (the "Company") would retain Cypress Avenue Partners, LLC. ("Cypress") as its financial advisor in connection with strategic planning, financings (the "Financings") that are pursued by the Company during the term of this agreement (defined below). The Financings are presently proposed to be up to $35 million. The Company is seeking a $10 million private financing to provide funding for capital projects and an additional $15 to $25 million in public financing to complete demonstration testing with prospective customers, expand production facilities, expand marketing efforts and finance the Company's general working capital requirements. The Financings may include equity or convertible debt financing (an "Equity Financing") or a non-convertible debt financing (a "Debt Financing"). Additional definitions applicable to this letter are set forth below.

   With respect to the foregoing, Cypress and the Company agree as follows:

   1.    Cypress will provide the Company advisory services in connection with the Financings and the Strategic Alliances. In that connection Cypress will assist the Company in the preparation of information documentation as to the Financings and the Strategic Alliances, including a financing request to be submitted on a best efforts basis to Funding Sources or Intermediaries (defined below).    The Company shall provide Cypress all information, financial or otherwise, requested by Cypress for producing such information documentation. Cypress will prepare a valuation analysis valuing the business of Company. Cypress will assist and consult with the Company in its preparation of a business plan, including five years of financial projections, an industry analysis applicable to the appropriate industry, and other appropriate information documentation in connection with the Financings and the Strategic Alliances.

JUN-12-2008  09:14          BETTS WRIGHT                          559 438 6959    P.04

10/09/2006  12:06    7168536128                GALLAGHER                    PAGE  02/05
      10/06/2006 11:34 FAX 5305810785          TC TERMITE                   @003

Cypress will act as a finder on a best efforts basis for potential parties to fund the Financings ("Funding Sources") and intermediaries through which the Financings would be funded.  As a finder Cypress would introduce the Company to candidates for Funding Sources and Intermediaries, and the Company would negotiate the terms of the Financings with such candidates.  Cypress will notify the Company in writing as to the identity of any person that is a potential Funding Source or Intermediary to which Cypress has introduced the Company.  Each such person is referred to herein as a "Registered Funding Source" or "Registered Intermediary," respectively.    Cypress makes no promises to the Company as to whether or not his introductions will result in the closing of a Financing.  Within 3 days of receipt of any Cypress candidates, the Company will either accept or reject such candidate.    Acceptance by the Company of a Cypress candidate is an acknowledgment by the Company that such candidate was previously unknown to them and that no other financial intermediary working with the Company has identified such candidate for the Company.

The Company will conduct all negotiations, establish all terms and conditions, and furnish all disclosure materials to the Funding Sources, which disclosure materials the Company represents to Cypress shall be materially accurate and not misleading.  In connection with a Transaction, the Finder will not: (a) be involved in any negotiations with the Buyers; and (b) make any recommendations regarding the Securities.

2.    The term of Cypress hereunder (the "term of this agreement") shall extend from the date the Company accepts this letter through 6 months thereafter and any period of time after such 6-month period during which a Financing is being negotiated with a Registered Funding Source or a Registered Intermediary.  Cypress's appointment hereunder shall be non-exclusive and the Company expressly reserves the right to engage other finders, brokerage firms and intermediaries to assist the Company in its efforts to obtain the Financings during the term of this agreement.

3.    Cypress's compensation for its services rendered hereunder shall be as set forth below.  The Company shall have the right in its discretion to accept or reject any Financing presented to the Company by a Registered Funding Source or a Registered Intermediary.

(i)    Upon execution of this Agreement, the Company shall issue Cypress a warrant to purchase 200,000 shares of the Company's common stock at an exercise price of $3 per share.  The warrant shall include such terms and conditions, including cashless exercise rights, piggy-back and demand registration rights and full-ratchet anti-dilution protection, as are typical in transaction of the type contemplated by this Agreement

JUN-12-2008  09:14        BETTS WRIGHT                                    559 438 6959    P.05

10/09/2008  12:06    7168536128                                                    PAGE  03/05
    10/06/2006 11:35 FAX 6305810795              GALLAGHER                          @004
                                                 TO TERMITE

(ii)    Upon the first closing of an Equity Financing or Debt Financing of at least $2 million with a Registered Funding Source or through the efforts of a Registered Intermediary introduced by Cypress, the Company shall pay Cypress a fee of $50,000, which may be offset against the contingent compensation specified in subparagraph (iii) below.

(iii)    If during the term of this agreement or within one year thereafter an Equity or Debt Financing is completed with a Registered Funding Source or through a Registered Intermediary the closing of such Financing, the Company will pay Cypress a cash fee of 5% of any equity plus 2% of any debt.

(iv)    In the event that Cypress has contracted or made arrangements with another person or entity regarding any financing candidates (a "Sub Intermediary"), then Cypress will be responsible for making any agreed upon payment to such sub-intermediary and Cypress will indemnify and hold harmless the Company from any claims from such contracted Sub-Intermediary.

(v)    If, after the end of the period specified in paragraph 2, another paid finder, broker or consultant negotiates a transaction between the Company and a Registered Funding Source or Intermediary that declined a transaction with the Company when Cyprus made the introduction, then the compensation specified in subparagraph (iii) will be divided between Cypress and such other finder, broker or consultant in such ratios as Cypress and such other party may agree. In the event that Cypress and such other party are unable to reach a mutually acceptable agreement, then Cypress agrees that the funding source or and the company shall have the right to allocate the compensation among the parties who claim an interest therein.

4.    The Company will reimburse Cypress upon submission of statements for Cypress's reasonable out-of-pocket expenses in connection with its rendering advisory services hereunder.  As a condition to reimbursement of expense items totaling in excess of $250, Cypress shall obtain approval from the Company prior to incurring any such particular expense item.

5.    As used in this letter, the following terms shall have the meanings set forth below.  Defined terms herein may be used in the singular or plural or other word forms as the context requires.

"Affiliate" shall mean, with respect to any person, any other person directly or indirectly controlling, controlled by, or under common control with, such person. A person shall be deemed to control another person if such person possesses, directly or indirectly, the power to direct or cause the direction of the management and policies of such other person, whether through the ownership of voting securities, by contract or otherwise.

JUN-12-2008  09:14          BETTS WRIGHT                                    559 438 6959    P.06

10/09/2008  12:06    7168536129                    GALLAGHER                    PAGE  04/05
10/08/2008 11:28 FAX 5305610795              TC TERMITE                      ⓘ005

"Company" shall include any affiliate of the Company, its successors or assigns.

"Financing" shall include any financing or other transaction pursued by the Company during the term of this agreement, including any strategic alliance or joint venture that is comparable to a financing, irrespective of structure or amount, and shall include any stage or installment of any such financing or other transaction.

"Person" shall mean any individual, or any partnership, joint venture, firm, corporation, association, trust or other enterprise.

"Registered Funding Source" shall include any affiliate of a Registered Funding Source.

"Registered Intermediary" shall include any affiliate of a Registered Intermediary.

6.    As further consideration for this engagement, Company agrees to (a) indemnify and hold harmless Cypress and his affiliates, and their respective officers, directors, employees, agents, contractors and representatives (Cypress and each such entity or person being referred to as an "Indemnified Person"), from and against any and all losses, claims, demands, damages or liabilities of any kind arising out of or in connection with the services provided by Cypress hereunder, and (b) reimburse each Indemnified Person for all reasonable costs and expenses (including reasonable fees and disbursements of counsel) incurred by such Indemnified Person in connection with investigating, preparing or defending any investigative, administrative, judicial or regulatory action or proceeding relating to or arising out of the services contemplated by this letter agreement, as such costs and expenses are incurred or paid; except in either case to the extent such losses, claims, demands, damages, liabilities, costs or expenses are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of Cypress. Company also agrees that no Indemnified Person shall have any liability to Company or any of its security holders or creditors arising out of or in connection with the services to be provided under this letter agreement, except to the extent any such liability is finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of such Indemnified Person..

7.    Under no circumstances shall Cypress be liable to Company with respect to any matter contemplated by this letter agreement for indirect, incidental, consequential, special or punitive damages (even if Company has been advised of the possibility of such damages), and in no event shall Cypress' liability arising out of or relating to this Agreement exceed the aggregate amount of fees actually received by Cypress from Company in connection with the

JUN-12-2008  09:15          BETTS WRIGHT

559 438 6959    P.07

10/09/2006  12:06     7169536128          GALLAGHER          PAGE  05/05
  10/06/2006 11:57 FAX 5305810795          TC TERMITE          ☒006

services contemplated hereunder. Except as expressly set forth in this letter agreement, Cypress makes no representations or warranties whatsoever, either express or implied.

8.   This agreement shall be governed by the laws of the State of California. Any dispute between the parties hereto arising out of this agreement shall be resolved by binding arbitration in Sacramento, California pursuant to the rules of the American Arbitration Association.

If the foregoing sets forth the basis on which the Company would engage Cypress to perform advisory services as described above, please execute this letter in the space provided below for that purpose and return a signed copy (or a copy or facsimile thereof) to the undersigned, whereupon this letter shall constitute a binding agreement between the Company and Cypress as of the date of acceptance thereof.

Very truly yours,

Ricardo I. Ramirez
Cypress Avenue Partners, LLC

Accepted and agreed
to this ___9th___ day of
October 2006.

Axion Power International, Inc.

By: _____
    Thomas Granville, Chief Executive Officer

**FELLHEIMER & EICHEN, LLP**
Alan S. Fellheimer
1800 John F. Kennedy Blvd., Suite 1400
Philadelphia, PA 19103
(215) 253-6630

Attorneys for Defendants
AXION POWER INTERNATIONAL, INC.,
Thomas Granville and
John L. Petersen, Esquire

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

CYPRESS AVENUE PARTNERS LLC,

Plaintiff,

v.

AXION POWER INTERNATIONAL,
INC.;
JOHN GRANVILLE;
JOHN PETERSON; and
DOES 1-50, inclusive,

Defendants.

Case No.: 08-002374 MEJ

**AFFIDAVIT OF EDWARD R. BUIEL, Ph.D.
IN SUPPORT OF THE AXION
DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED.R.CIV.P. 12(b)(2),
12(b)(3), 12(b)(5) and 12(b)(6)**

I, Edward R. Buiel, Ph.D., being older than the age of eighteen (18) and being

sworn according to law, hereby depose and say as follows:

1.      I am the Vice President and Chief Technical Officer ("CTO") of Axion

Power International, Inc. (herein "Axion"), a defendant in the above-captioned action,

and have the authority to make and submit this affidavit on its behalf in support of the

Motion to Dismiss filed by defendants, Axion, Thomas Granville and John L. Petersen,

Esquire (collectively the "Axion Defendants") in the above-captioned action.

2.      I maintain my usual place of business, regular office, and business mailing

address at Axion's facility located at 3601 Clover Lane, New Castle, Pennsylvania

16105.

3.      Axion is duly incorporated under the laws of the State of Delaware with a research and development operating subsidiary Axion Power Battery Manufacturing, Inc., a Pennsylvania corporation, in New Castle, Pennsylvania, just outside of Pittsburgh.

4.      Axion develops advanced batteries and an energy storage product based on its patented lead carbon battery ($PbC^{TM}$) technology.

5.      Axion also manufactures and distributes storage batteries in several states, but not in California where it has no distributors or salespersons. All batteries are manufactured and shipped from Axion's New Castle, Pennsylvania facility.

6.      I do not know or know of any person by the name of John Granville or John Peterson.

7.      I am familiar with and know of a Thomas Granville.

8.      Thomas Granville is Axion's Chief Executive Officer ("CEO") and also a member of its Board of Directors. Prior to accepting the CEO position in April 2005, Mr. Granville served as the Chairman of Axion's Board of Directors from January 2004 until April 2005, when he accepted the CEO position.

9.      To the best of my knowledge, information and belief, Thomas Granville maintains his usual place of business, regular office, and business mailing address at Axion's facility in New Castle, Pennsylvania 16105.

10.      Thomas Granville is the only "Granville" with whom I am familiar at Axion.

11.      Although I do not know a John Peterson, I am familiar and do know of a John L. Petersen.

12.   The John Petersen I know is no longer an officer or director of Axion and is not an employee of Axion.

13.   To the best of my knowledge, information and belief, John Petersen is an attorney with the law firm of FEFER PETERSEN & CIE with offices in Switzerland.

14.   Mr. Petersen and his firm have been retained by Axion as outside special corporate counsel since January 2007 through to the present.

15.   In 2006, Mr. Petersen and his firm were retained by Axion as outside general corporate counsel.

16.   John Petersen does not maintain a usual place of business, regular office or business mailing address at Axion's New Castle, Pennsylvania facility nor anywhere else in the United States, but rather maintains his usual place of business, regular office, and business mailing address in Switzerland.

17.   On June 9, 2008, a white male, dressed in a track suit, with brown hair and appeared to be in his mid-forties (the "Visitor") walked in the front door of the Axion New Castle office facility an asked to speak with "John Granville or John Peterson."

18.   I introduced myself and  informed the Visitor that I did not know a John Granville, but that I knew a John Petersen who lived in Switzerland.

19.   The Visitor tried to hand me a set of papers in bundles clipped together and I refused as I was not John Granville nor John Petersen.

20.   I told the Visitor that I didn't know a John Granville and that John Petersen lived and worked in Switzerland.

21.   I told the Visitor that I would not receive papers for someone who lived in Switzerland and someone I did not know.

3

22.    The Visitor then told me that he could "just drop the papers on the floor, " which he did and left.

23.    Axion maintains its sole office and business facility and principal place of business at 3602 Clover Lane, New Castle, PA 116105.

24.    Axion does not operate, own or otherwise retain any interest whatsoever in any regular and established place of business outside the Commonwealth of Pennsylvania.

25.    Axion does not have an office, a regular and established place of business, or any other facilities in the State of California.

26.    Axion does not conduct business in the State of California.

27.    Axion has not applied for a charter nor is it licensed to conduct business in the State of California.

28.    Axion does not maintain a registered agent in the State of California.

29.    Axion does not have any affiliates, subsidiaries, agents, or employees within the State of California.

30.    Axion does not own any personal or real property in the State of California.

31.    Axion does not have any bank accounts in the State of California.

32.    Axion does not direct advertising nor does it otherwise advertise in the State of California.

33.    Axion was not served with a copy of the Summons and Complaint in the above-captioned action within the State of California nor by any form of mail.

34.    Accordingly, it is my understanding that Axion is neither subject to general nor specific jurisdiction of any court located in the State of California with respect to the above-captioned action.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this _25th_ day of June 2008.

_____
Edward R. Buiel, Ph.D.

Sworn to and subscribed before me
This _____ day of ____ 2008.

> COMMONWEALTH OF PENNSYLVANIA
> Notarial Seal
> Brian L. Turk, Notary Public
> Nashannock Twp., Lawrence County
> My Commission Expires June 7, 2011
> Member, Pennsylvania Association of Notaries

_____
Notary Public
My commission expires:

5

**FELLHEIMER & EICHEN, LLP**
Alan S. Fellheimer
1800 John F. Kennedy Blvd., Suite 1400
Philadelphia, PA 19103
(215) 253-6630

Attorneys for Defendants
AXION POWER INTERNATIONAL, INC.,
Thomas Granville and
John L. Petersen, Esquire

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CYPRESS AVENUE PARTNERS LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>AXION POWER INTERNATIONAL,<br>INC.;<br>JOHN GRANVILLE;<br>JOHN PETERSON; and<br>DOES 1-50, inclusive, )<br><br>Defendants. ) | Case No.: 08-002374 MEJ<br><br>**AFFIDAVIT OF THOMAS GRANVILLE IN SUPPORT OF THE AXION DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(2), 12(b)(3), 12(b)(5) and 12(b)(6)** |

I, Thomas Granville, being older than the age of eighteen (18) and being sworn according to law, hereby depose and say as follows:

1. I am the Chief Executive Officer ("CEO") of Axion Power International, Inc. (herein "Axion").

2. Both I and Axion are defendants in the above-captioned action, and have the authority to make and submit this affidavit on my own and Axion's behalf in support of the Motion to Dismiss filed by defendants, Axion, Thomas Granville and John L. Petersen, Esquire (collectively the "Axion Defendants") in the above-captioned action.

3.     I maintain my usual place of business, regular office, and business mailing address at Axion's facility located at 3601 Clover Lane, New Castle, Pennsylvania 16105.

4.     Axion is duly incorporated under the laws of the State of Delaware with a research and development operating subsidiary, Axion Power Battery Manufacturing, Inc., a Pennsylvania corporation, in New Castle, Pennsylvania, just outside of Pittsburgh.

5.     Axion develops advanced batteries and an energy storage product based on its patented lead carbon battery ($PbC^{TM}$) technology.

6.     Axion also manufactures and distributes storage batteries in several states, but not in California where it has no distributors or salespersons. All batteries are manufactured and shipped from Axion's New Castle, Pennsylvania facility.

7.     I do not know or know of any person by the name of John Granville or John Peterson.

8.     In addition to being Axion's CEO, I am also a member of its Board of Directors. Prior to accepting the CEO position in April 2005, I served as the Chairman of Axion's Board of Directors from January 2004 until April 2005, when I accepted the CEO position.

9.     I am the only "Granville" at Axion.

10.     Although I do not know a John Peterson, I am familiar and do know of a John L. Petersen.

11.     The John Petersen I know is no longer an officer or director of Axion and is not an employee of Axion.

2

12.     To the best of my knowledge, information and belief, John Petersen is an attorney with the law firm of FEFER PETERSEN & CIE with offices in Switzerland.

13.     Mr. Petersen and his firm have been retained by Axion as outside special corporate counsel from time to time from January 2007 until the present.

14.     In 2006, Mr. Petersen and his firm were retained by Axion as outside general corporate counsel.

15.     John Petersen does not maintain a usual place of business, regular office or business mailing address at Axion's New Castle, Pennsylvania facility nor anywhere else in the United States, but rather maintains his usual place of business, regular office, and business mailing address in Switzerland.

16.     I have reviewed the Complaint filed by plaintiff, Cypress Avenue Partners LLC ("Cypress") in the above-captioned action.

17.     To the best of my knowledge, information and belief, no in-person meeting with Cypress or its principal, Ricardo Ramirez or any Cypress representative ever occurred with me or any Axion employee, agent or representative at any time before the letter dated October 5, 2006 attached to the Complaint as Exhibit A was signed by me in my capacity as President of Axion on October 9, 2006.

18.     My contacts with plaintiff, Cypress or Mr. Ramirez were limited to telephone conversations placed to and received from Mr. Ramirez's NV telephone number (775) 691-9335 and electronic mail transmissions from my Axion email address at tgranville@axionpower.com to Mr. Ramirez's email addresses at rickr43@earthlink.net and rick@nextel.blackberry.net. Even the document attached to the Complaint in the above-captioned action as Exhibit A was signed by me in Buffalo, New

`

3

York and, to the best I can recall I believe was returned to Cypress by Mr. Petersen via email from Switzerland.

19.     During the period of October 2006 through January 2008, Mr. Ramirez and I exchanged a number of telephone calls between Axion's New Castle, Pennsylvania office, my mobile cellular telephone, and his Nevada telephone number at (775) 691-9335.

20.     I did not first meet Mr. Ramirez in person until February 2007. Axion invited Mr. Ramirez to attend an industry awards ceremony in Los Angeles, California at which Axion was an award recipient. Mr. Ramirez attended the award ceremony as Axion's guest and Axion reimbursed Cypress for expenses associated with his attendance.

21.     In a telephone call prior to my meeting Mr. Ramirez in Los Angeles, I do recall Mr. Ramirez offering to meet me the next time I was in Reno, Nevada saying he would have to come over, "it's not that far."

22.     Four pages of invoicing submitted to Axion and received from Cypress during the November 2007 through January 2008 period contains a remitting address of "9900 Wilbur May Prky, #705, Reno, NV 89521."

23.     An August 2007 invoice submitted to Axion and received from Cypress lists the Nevada telephone number of "775 691 9335."

24.     Although Axion may have made remitted expense reimbursement payment to Cypress for up to approximately four (4) invoices to an address at "1875 John Scott Trail, P.O. Box 8089, Tahoe City, California 96145" at Cypress's express request for April, August, September and October 2007, it is believed that this address is a mere

post office mail drop near Mr. Ramirez's residence in the Lake Tahoe, Nevada area (a distance of approximately 16 miles). To the limited extent Axion did make any expense reimbursement payments to the post office box in Tahoe City, California, other Axion personnel than myself would have made those payments in the ordinary course of their duties as an Axion employee or representative.

      25.     Axion maintains its sole office and business facility and principal place of business at 3601 Clover Lane, New Castle, PA 16105.

      26.     Neither Axion nor I operates, owns or otherwise retains any interest whatsoever in any regular and established place of business outside the Commonwealth of Pennsylvania.

      27.     Axion does not have an office, a regular and established place of business, or any other facilities in the State of California.

      28.     Neither Axion nor I conduct business in the State of California.

      29.     Neither Axion nor I have applied for a charter nor are either of us licensed to conduct business in the State of California.

      30.     Neither Axion nor I maintain a registered agent in the State of California.

      31.     Neither Axion nor I have any affiliates, subsidiaries, agents, or employees within the State of California.

      32.     Neither Axion nor I owns any personal or real property in the State of California.

      33.     Neither Axion nor I have any bank accounts in the State of California.

      34.     Neither Axion nor I direct advertising nor do either of us otherwise advertise in the State of California.

35.     Axion was not served with a copy of the Summons and Complaint in the above-captioned action within the State of California nor by any form of mail.

36.     I was not served with a copy of the Summons and Complaint in the above-captioned action within the State of California or by any form of mail.

37.     I have never been personally served with a copy of the Summons and Complaint via hand delivery.

38.     Accordingly, it is my understanding that neither Axion nor I is subject to general or specific jurisdiction of any court located in the State of California with respect to the above-captioned action.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this $30$ day of June 2008.

Thomas Granville

Sworn to and subscribed before me
This 30th day of June 2008

Notary Public
My commission expires: 6/7/11

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Kelly S. Gubish, Notary Public
Neshannock Twp., Lawrence County
My Commission Expires June 7, 2011
Member, Pennsylvania Association of Notaries

7

**FELLHEIMER & EICHEN, LLP**
Alan S. Fellheimer
1800 John F. Kennedy Blvd., Suite 1400
Philadelphia, PA 19103
(215) 253-6630

Attorneys for Defendants
AXION POWER INTERNATIONAL, INC.,
Thomas Granville and
John L. Petersen, Esquire

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CYPRESS AVENUE PARTNERS LLC, ) | Case No.: 08-002374 MEJ |
| ) | |
| Plaintiff, ) | **AFFIDAVIT OF JOHN L. PETERSEN,** |
| ) | **ESQUIRE IN SUPPORT OF THE AXION** |
| v. ) | **DEFENDANTS' MOTION TO DISMISS** |
| ) | **PURSUANT TO FED.R.CIV.P. 12(b)(2),** |
| AXION POWER INTERNATIONAL, ) | **12(b)(3), 12(b)(5) and 12(b)(6)** |
| INC.; ) | |
| JOHN GRANVILLE; ) | |
| JOHN PETERSON; and ) | |
| DOES 1-50, inclusive, ) | |
| ) | |
| Defendants. ) | |
| ) | |

I, John L. Petersen, Esquire, being older than the age of eighteen (18) and being

sworn according to law, hereby depose and say as follows:

1.      I am an attorney at law licensed in the State of Texas, a resident and

domiciliary of Switzerland, and a partner of the law firm of FEFER PETERSEN & CIE, a

"société en nom collectif" organized under Articles 522 et. seq. of the Swiss Federal

Code of Obligations, which maintains its principal office and sole place of business

located at Le Château de Barberêche, Switzerland 1783 Barberêche.

2.      I and my firm have been retained by Axion Power International, Inc.

("Axion") as outside special corporate counsel since January 2007 through to the present.

3.      From 2004 through 2006, I and my firm were retained by Axion as outside general corporate counsel and in connection therewith I served as a member of Axion's board of directors until January 2007.

4.      I, along with Axion, am a defendant in the above-captioned action and do have the authority to make submit this affidavit on my and Axion's behalf in support of the Motion to Dismiss filed by defendants, Axion, Thomas Granville and myself (collectively the "Axion Defendants") in the above-captioned action.

5.      Thomas Granville is Axion's current Chief Executive Officer ("CEO").

6.      I maintain my usual place of business, regular office, and business mailing address at my law firm's offices in Switzerland.

7.      I reside and maintain my home of residence in Switzerland, and do not own or rent any real estate other than my residence in Switzerland.

8.      Axion is duly incorporated under the laws of the State of Delaware with a research and development operating subsidiary, Axion Power Battery Manufacturing, Inc., a Pennsylvania corporation, in New Castle, Pennsylvania, just outside of Pittsburgh.

9.      Axion develops advanced batteries and an energy storage product based on its patented lead carbon battery (PbC$^{TM}$) technology.

10.     Axion also manufactures conventional lead-acid batteries and distributes those batteries in several states, but not in California where it has no distributors or salespersons. All batteries are manufactured and shipped from Axion's New Castle, Pennsylvania facility.

11.     I do not know or know of any person by the name of John Granville or John Peterson.

12. To the best of my knowledge, information and belief, Thomas Granville is the only "Granville" at Axion.

13. I am no longer a director of Axion and except for my role as special legal counsel, am not an employee of Axion.

14. I have reviewed the Complaint filed by plaintiff, Cypress Avenue Partners LLC ("Cypress") in the above-captioned action.

15. To the best of my knowledge, information and belief, no in person meeting with Cypress or its principal, Ricardo Ramirez or any Cypress representative ever occurred with me or any Axion employee, agent or representative at any time before the letter dated October 5, 2006 attached to the Complaint as Exhibit A was signed by Thomas Granville in his capacity as President for Axion on October 9, 2008.

16. I have known Ricardo Ramirez by telephone since Spring 1996, but did not meet him in person until February 2007.

17. In a telephone conversation with Mr. Ramirez during the summer of 2006, he informed me that he had moved to the Lake Tahoe, Nevada area from California years before "for tax purposes."

18. To the best of my knowledge, information and belief, Mr. Ramirez does a lot of work from his home in the Lake Tahoe, Nevada area and this was the case throughout the period of October 2006 through May 8, 2008 when the Complaint was filed in the above-captioned action.

19. I did not first meet Mr. Ramirez in person until February 2007, when Axion invited him to attend an industry awards ceremony in Los Angeles, California at

which Axion was an award recipient. Mr. Ramirez attended the award ceremony as invited.

20.    Prior to our initial in-person meeting all of my contacts with plaintiff, Cypress or its principal, Ricardo Ramirez relating to the subject matter of the Complaint in the above-captioned action were limited to telephone calls that I placed to or received from Mr. Ramirez's Nevada telephone number at (775) 691-9335 and exchanges of e-mail and other electronic transmissions that I sent to and received from Mr. Ramirez's email addresses at rickr43@earthlink.net and rick43@nextel.blackberry.net. This is how Mr. Ramirez and I communicated with each other since our February 2007 in-person meeting as well.

21.    I do not maintain a usual place of business, regular office or business mailing address at Axion's facility in New Castle, Pennsylvania nor anywhere else in the United States, but rather I maintain my sole usual place of business, regular office, and business mailing address in Switzerland.

22.    I do not operate, own or otherwise retain any interest whatsoever in any regular and established place of business outside of Switzerland, excluding ownership positions of less than 10% in one Arizona corporation and three Texas corporations.

23.    I do not have an office, a regular and established place of business, or any other facilities in the State of California.

24.    I have visited California twice in the last 10 years for a total of approximately 3 days.

25.    I do not conduct business in the State of California.

26. I have neither applied for a license to practice law or applied for a charter to business in California nor am I authorized to practice law or conduct business in the State of California.

27. I do not maintain a registered agent in the State of California.

28. I do not have any affiliates, subsidiaries, agents, or employees within the State of California.

29. Axion does not own any personal or real property in the State of California.

30. I do not have any bank accounts in the State of California.

31. I do not direct advertising into nor do I otherwise advertise in the State of California.

32. I was not served with a copy of the Summons and Complaint in the above-captioned action within the State of California or by any form of mail nor was I personally served with process via hand delivery or in Switzerland.

33. Accordingly, it is my understanding that I am not subject to general nor specific jurisdiction of any court located in the State of California with respect to the above-captioned action.

I declare under penalty of perjury under the laws of the United States of America that that the foregoing is true and correct. Executed on this 30 day of June 2008.

_____

John L. Petersen, Esquire

Entity Details – Secretary of State, Nevada                                    6/26/08 7:53 AM



• HOME  • ABOUT ROSS  • NEWS  • FAQ  • CONTACT US  • SEARCH

Information Center | Election Center | Business Center | Licensing Center | Securities Center | Online Services
My Data Reports | Business Entity Search | Fee Schedule (Data Reports) | Login (Data Reports)

# CYPRESS AVE PARTNERS, LLC

| New Search | Printer Friendly | Calculate List Fees |

## Business Entity Information

| | | | |
|---|---|---|---|
| Status: | Active on 3/10/2008 | File Date: | 11/8/2002 |
| Type: | Domestic Limited-Liability Company | Corp Number: | LLC13798-2002 |
| Qualifying State: | NV | List of Officers Due: | 11/30/2008 |
| Managed By: | Managing Members | Expiration Date: | 11/8/2502 |

## Resident Agent Information

| | | | |
|---|---|---|---|
| Name: | INCORP SERVICES, INC. | Address 1: | 375 N. STEPHANIE ST. |
| Address 2: | SUITE 1411 | City: | HENDERSON |
| State: | NV | Zip Code: | 89014-8909 |
| Phone: | | Fax: | |
| Email: | | Mailing Address 1: | |
| Mailing Address 2: | | Mailing City: | |
| Mailing State: | | Mailing Zip Code: | |

View all business entities under this resident agent

## Financial Information

| | | | |
|---|---|---|---|
| No Par Share Count: | 0 | Capital Amount: | $ 0 |

No stock records found for this company

## Officers

☐ Include Inactive Officers

### Managing Member - RICHARDO RAMIREZ

| | | | |
|---|---|---|---|
| Address 1: | 561 KEYSTONE AVE #298 | Address 2: | |
| City: | RENO | State: | NV |
| Zip Code: | 89503 | Country: | |
| Status: | Active | Email: | |

## Actions\Amendments

Click here to view 8 actions\amendments associated with this company

You are currently not logged in

Entity Details – Secretary of State, Nevada



Nevada Secretary of State, Ross Miller.  Copyright 2007.  All rights reserved.

California Business Search                                                                                      6/26/08 7:49 AM



**DISCLAIMER:** The information displayed here is current as of Jun 20, 2008 and is updated weekly. It is not a complete or certified record of the Limited Partnership or Limited Liability Company.

| LP/LLC | | |
|---|---|---|
| CYPRESS AVENUE PARTNERS, LLC | | |
| **Number:** 200812210254 | **Date Filed:** 5/1/2008 | **Status:** active |
| **Jurisdiction:** NEVADA | | |
| Address | | |
| 9900 WILBUR MAY PKWY #705 | | |
| RENO, NV 89521 | | |
| Agent for Service of Process | | |
| TOMER TAL | | |
| 5 SIERRA GATE PLAZA STE 330 | | |
| ROSEVILLE, CA 95678 | | |

Blank fields indicate the information is not contained in the computer file.

If the agent for service of process is a corporation, the address of the agent may be requested by ordering a status report. Fees and instructions for ordering a status report are included on the Business Entities Records Order Form.

California Business Search

**FELLHEIMER & EICHEN, LLP**
Alan S. Fellheimer
1800 John F. Kennedy Blvd., Suite 1400
Philadelphia, PA 19103
(215) 253-6630

Attorneys for Defendants
AXION POWER INTERNATIONAL, INC.,
Thomas Granville and
John L. Petersen, Esquire

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CYPRESS AVENUE PARTNERS LLC,  ) | Case No.:  08-002374 MEJ |
| Plaintiff,  ) | **CERTIFICATE OF SERVICE FOR NOTICE OF THE AXION DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(2), 12(b)(3), 12(b)(5) and 12(b)(6); AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE AXION DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(2), 12(b)(3), 12(b)(5) and 12(b)(6)** |
| v.  ) | |
| AXION POWER INTERNATIONAL, INC.; JOHN GRANVILLE; JOHN PETERSON; and DOES 1-50, inclusive,  ) | |
| Defendants.  ) | **Date: August 7, 2008 Time: 10:00 A.M. Ctrm: Courtroom B, 15th Floor or 450 Golden Gate Avenue Judge: The Honorable Maria-Elena James** |

## CERTIFICATE OF SERVICE

I, Alan S. Fellheimer, Esquire, of the law firm of FELLHEIMER & EICHEN, LLP,

counsel to defendants, Axion Power International, Inc., Thomas Granville and John L.

Petersen, Esquire hereby certify that on June 30, 2008, I caused a copy of the Axion

Defendants' Motion to Dismiss Pursuant to FED.R.CIV.P. 12(B)(2), 12(B)(3), 12(B)(5)

and 12(B)(6); and Memorandum of Points and Authorities in Support of the Axion

Defendants' Motion to Dismiss Pursuant to FED.R.CIV.P. 12(b)(2), 12(b)(3), 12(b)(5) and

12(b)(6) with exhibits, affidavits and proposed order, to be filed electronically and is

available for viewing and downloading from the ECF system. Same was also electronically served on the following counsel for the plaintiff on June 30, 2008:

> James B. Betts
> Joseph D. Rubin
> **BETTS & WRIGHT, A PROFESSIONAL CORPORATION**
> P.O. Box 28550
> Fresno, CA 93729-8550

Dated: <u>June 30, 2008</u>                    /s/ Alan S. Fellheimer
                                                Alan S. Fellheimer
                                                Counsel for the Axion Defendants

**FELLHEIMER & EICHEN, LLP**
Alan S. Fellheimer
1800 John F. Kennedy Blvd., Suite 1400
Philadelphia, PA 19103
(215) 253-6630

Attorneys for Defendants
AXION POWER INTERNATIONAL, INC.,
Thomas Granville and
John L. Petersen, Esquire

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CYPRESS AVENUE PARTNERS LLC, ) | Case No.: 08-002374 MEJ |
| ) | |
| Plaintiff, ) | **ORDER GRANTING THE AXION** |
| ) | **DEFENDANTS' MOTION TO DISMISS** |
| v. ) | **PURSUANT TO FED.R.CIV.P. 12(b)(2),** |
| ) | **12(b)(3), 12(b)(5) and 12(b)(6)** |
| AXION POWER INTERNATIONAL, ) | |
| INC.; ) | **Date: August 7, 2008** |
| JOHN GRANVILLE; ) | **Time: 10:00 A.M.** |
| JOHN PETERSON; and ) | **Ctrm: Courtroom B, 15th Floor or 450 Golden** |
| DOES 1-50, inclusive, ) | **Gate Avenue** |
| ) | **Judge: The Honorable Maria-Elena James** |
| Defendants. ) | |

## ORDER GRANTING THE MOTION TO DISMISS PURSUANT TO
## FED.R.CIV.P. 12(b)(2), 12(b)(3), 12(b)(5) and 12(b)(6) FILED BY THE
## AXION DEFENDANTS

**AND NOW**, this _____ day of _____ , 2008, upon consideration of the

Motion to Dismiss Pursuant to FED.R.CIV.P. 12(b)(2), 12(b)(3), 12(b)(5) and 12(b)(6)

("Motion") filed by defendants, Axion Power International, Inc., Thomas Granville, and John L.

Petersen, Esquire (all collectively the "Axion Defendants"), all opposition thereto and argument

of counsel, if any, it is hereby **ORDERED** and **DECREED** that the Motion is **GRANTED** and

that Plaintiff's Complaint is **DISMISSED** with prejudice. Plaintiff is **ORDERED** to pay to the

Axion Defendants' reasonable attorney's fees and costs related to this action. The Axion

Defendants are **ORDERED** to file with the Court and serve Plaintiff with a copy of a

certification of attorney's fees and costs within fourteen (14) days of the date of this Order.

Thereafter, Plaintiff shall have ten (10) days to file any objection to the certification.

**BY THE COURT:**

_____
United States District Judge