1  **BETTS & WRIGHT, A Professional Corporation**
   Attorneys at Law
2  P.O. Box 28550
   Fresno, California 93729-8550
3  Telephone: (559) 438-8500
   Facsimile:  (559) 438-6959
4
   James B. Betts (State Bar #110222)
5  Joseph D. Rubin (State Bar #149920)
6  Attorneys for Plaintiff CYPRESS AVENUE PARTNERS LLC
7
8
9              UNITED STATES DISTRICT COURT
           NORTHERN DISTRICT OF CALIFORNIA
10              SAN FRANCISCO DIVISION
11
12  CYPRESS AVENUE PARTNERS LLC    )    Case No. 08-002374 MEJ
                                   )
13           Plaintiff,            )
                                   )    **MEMORANDUM OF POINTS AND**
14       v.                        )    **AUTHORITIES IN OPPOSITION TO**
                                   )    **MOTION TO DISMISS**
15  AXION POWER INTERNATIONAL, INC.;  )
    JOHN GRANVILLE; JOHN PETERSON;    )    Date:   August 7, 2008
16  and DOES 1-50, inclusive,      )    Time:   10:00 am
                                   )    Ctrm:   B, 15th Floor
17           Defendants.           )            450 Golden Gate Ave.
    _____ )    Judge:  The Honorable Maria-Elena
18                                             James
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

II.    BACKGROUND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

III.   DEFENDANTS HAVE PURPOSELY AVAILED THEMSELVES OF THE
       PRIVILEGE OF CONDUCTING BUSINESS IN CALIFORNIA . . . . . . . . . . .    5

       A. Axion Power . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

       B.  Granville and Peterson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

IV.    VENUE IS APPROPRIATE WITHIN THIS JUDICIAL DISTRICT. . . . . . . . . . . 10

V.     SERVICE OF PLAINTIFF'S COMPLAINT . . . . . . . . . . . . . . . . . . . . . . .12

VI.    DEFENDANTS' DISMISSAL MOTION UNDER RULE 12(b)(6) SHOULD BE
       DENIED IN ITS ENTIRETY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

       A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

       B.    Plaintiff Has Properly Alleged a Claim for Breach of the Implied
             Covenant.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

       C.    Quantum Meruit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

       D.    Fraud  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

       E.    Professional Negligence . . . . . . . . . . . . . . . . . . . . . . . . . 18

VII.   REQUEST FOR LEAVE TO AMEND . . . . . . . . . . . . . . . . . . . . . . . . . 18

VIII.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

i

## **TABLE OF AUTHORITIES**

**Authorities**

_Balistreri v Pacific Police Department_ . . . . . . . . . . . . . . . . . . . . . . . . . . . .13
    (9th Cir. 1990) 901 F.2d 696, 699

_Bancroft & Masters, Inc. v. Augusta Nat'l, Inc_. . . . . . . . . . . . . . . . . . . . 6
    (9th Cir. 2000) 223 F.3d 1082, 1086.

_Burger King Corp. v Rudzewicz_, . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    471 US 462, 472 N.14 (1985)

_Careau & Co. v Security Pacific Business Credit, Inc._ . . . . . . . . . . . . 15
    (1990) 22 Cal.App.3d 1371

_Celestial Mechanix v Susquehanna Radio Corp.,_ . . . . . . . . . . . . . . . . 15
    (C.D. Cal. 2005) 2005 W.L. 471, 5213

_Commercial Lighting Products, Inc. v United States Dist. Ct._
    (9th Cir.1976 ) 537 F.2d 1078,1079. . . . . . . . . . . . . . . . . . . . . . 10

_Conley v Gibson_ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13
    (1957) 355 U. S. 41, 45-46

_Cottman Transmission Systems, Inc. v Martino_ . . . . . . . . . . . . . . . . .11
    (3d. Cir 1994) 36 .3d 291, 294

_Diaz v Gates_ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14
    (9th Cir. 2004) 380 F.3d 480,482.

_Doe v Unocal_ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6
    (9th Cir. 2001) 248 F.3d 915, 922.

_Fireman's Fund Insurance Company v Interstate Fire & Casualty Co.,_ . . . . . . . . 7
    (9th Cir. 1996) 103 F.3d 888, 893-894

 _Gilligan v Jamco Develo. Corp._ . . . . . . . . . . . . . . . . . . . . . . .. . . 14
    (9th Cir. 1997) 108 F.3d, 246, 249.

_Hall v City of Santa Barbara_ . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    (9th Cir. 1986) 833 F.2d 1270, 1274

_Harris Rutsky & Co., Ins. Servis v. Bell & Clements, Ltd._ . . . . . . . . . . . . . . . . 6
    (9th Cir. 2003) 328 F.3d 1122, 1128-29.

_Hishon v King & Spaulding_ . . . . . . . . . . . . . . . . . . . . . . . . . .13, 14
    (1984) 467 U.S. 69, 73

_Hospital Bldg. Co. v Rex Hospital Trustees_ . . . . . . . . . . . . . . . .. . . . . . ..13
    (1976) 425 U. S. 738,740

*Hedging Concepts v First Alliance Mortgage Co.* . . . . . . . . . . . . . . . . . . . . . 16
    (1996) 41 Cal.App. 4th 1410

*International Shoe v. Washington,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... 5
    326 U. S. 310, 316 (1945)

*Jenkins Brick Co. v Bremer* . . . . . . . . . . . . . . . . . . . . . . . . . . . ..10, 11
    (11th Cir. 2003) 321 F.3d 1366, 1372

*Jenkins v McKeithern* . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    (1969) 395 U. S. 411, 421

*Montclair Electronics, Inc. v Electra/Midland Corp.* . . . . . . . . . . . . . . .. . . . 12
    (S.D. NY 1971) 326 F.Supp. 839, 842

*Percoraro v Sky Ranch for Boys, Inc.* . . . . . . . . . . . . . . . . . . . . . 10
    (8th Cir.2003) 340 F.3d 558, 563

*Rio Properties, Inc. v Rio Int'l Interlink* . . . . . . . . . . . . . . . . . . . 13
    (9th Cir.2002) 284 F.3d 1007, 1018

*Roberts v Ball, Hunt, Hart, Brown & Baerwitz* . . . . . . . . . . . . . . . . . . . . . .18
    (1976) 57 Cal.App. 3d 104, 109.

*Robertson v Dean Witter Reynolds, Inc.* . . . . . . . . . . . . . . . . . . . . .13
    (9th Cir. 1985) 749 F.2d, 530, 533-34

*Robertson Helicopter Co. v Dana Corporation*,. . . . . . . . . . . . . . . . . . . . . .19
    (2004) 34 Cal.4th 979, 389-390.

*Schwarzenegger v Fred Martin Motor Co.* . . . . . . . . . . . . . . . . . . . . . . . .6, 7
    (9th Cir. 2004) 374 F.3d, 797, 802

*Schuman v Ikon Office Solutions, Inc.* . . . . . . . . . . . . . . . . . . . . . 16
    (9th Cir. 2007), 232 Fed.Appx. 659

*Shute v. Carnival Cruise Lines, Inc.* . . . . . . . . . . . . . . . . . . . . . . . .5
    (9th Cir. 1990) 897 F.2d 377, 830

*Swierkiewicz v Sorema N.S.* . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    (2002) 534 U.S. 506, 514

*Tarmann v State Farm Mutual* . . . . . . . . . . . . . . . . . . . . . . . . . . . .18
    (1991) 2 Cal.App.4th 153,158.

*Uffner v La ReUinon Francaise S. A.* . . . . . . . . . . . . . . . . . . . . . . 11
    (1st Cir. 2001) 244 F.3d 38,42.

*//*

**Statutes**

Federal Rules of Civil Procedure,  Rule 12(b)(5) . . . . . . . . . . . . . . . . . . . . . . .  12

Federal Rules of Civil Procedure, Rule12(b)(6) . . . . . . . . . . . . . . . . . . . . . .  13

Federal Rules of Procedure  Rule 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . .  14

28 UCS §1391(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

Rules of Civil Procedure, Rule 4(m) . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

**Publications**

Federal Practice and Procedure §1356, at 294-96. . . . . . . . . . . . . . . . . . . .  14
    5A Charles Alan Wright & Arthur R. Miller,

Judicial Council of California, Civil Jury Instructions, . . . . . . . . . . . . . . . . . .. 15
        ("CACI") (June 2008 Edition) §325

1 Witkin, Summary of California Law, . . . . . . . . . . . . . . . . . . . . . . . . . . .16
        (9th Ed. 1987) Contract ¶104

CACI ¶400 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

CACI ¶600 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

//

1  **BETTS & WRIGHT, A Professional Corporation**
   Attorneys at Law
2  P.O. Box 28550
   Fresno, California 93729-8550
3  Telephone: (559) 438-8500
   Facsimile:  (559) 438-6959

4
   James B. Betts (State Bar #110222)
5  Joseph D. Rubin (State Bar #149920)

6  Attorneys for Plaintiff CYPRESS AVENUE PARTNERS LLC

7

8

9                     UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
10                       SAN FRANCISCO DIVISION

11

12  CYPRESS AVENUE PARTNERS LLC        )     Case No. 08-002374 MEJ
                                       )
13          Plaintiff,                 )
                                       )     **MEMORANDUM OF POINTS AND**
14      v.                             )     **AUTHORITIES IN OPPOSITION TO**
                                       )     **MOTION TO DISMISS**
15  AXION POWER INTERNATIONAL, INC.;   )
    JOHN GRANVILLE; JOHN PETERSON;     )     Date:   August 7, 2008
16  and DOES 1-50, inclusive,          )     Time:   10:00 am
                                       )     Ctrm:   B, 15th Floor
17          Defendants.                )               450 Golden Gate Ave.
    _____)     Judge:  The Honorable Maria-Elena
18                                                   James

19  I.     **PRELIMINARY STATEMENT**

20          In early 2007, Plaintiff Cypress Avenue Partners was contacted, John

21  Petersen, a former attorney for the sole manager of Cypress, to enlist its aid in

22  providing financial consulting services to Defendant Axion Power International, Inc.

23  Specifically, at that time, Axion Power was essentially illiquid, and sought Plaintiff's

24  assistance in attempting to secure potential financing.  Following a series of face-

25  to-face meetings in California between Plaintiff and Axion Power's officers and

26  Board of Directors, Plaintiff relied upon its attorney to protect its interests in the

27  negotiation of the parties' ensuing written contract.

28          After Plaintiff fully performed his contract, and successfully introduced Axion

    Power to an investment source which provided an infusion of $18,000,000.00 in

1   equity financing, Axion repudiated Plaintiff's contract and flatly refused to provide

2   Plaintiff any consideration whatsoever for eighteen (18) months of work.  This is

3   true despite the fact that Defendants have repeatedly acknowledged that Plaintiff

4   is, at the very least, entitled to receive a warrant to purchase 200,000 shares of

5   corporate stock and a significant cash fee.  Despite Axion's open acknowledgment

6   of its obligation to Plaintiff, it has steadfastly refused to perform.  Further, Axion

7   specifically failed to publically disclose the existence of its agreement with Plaintiff,

8   despite its legal obligation to do so.

9       By the instant motion, Defendants seek dismissal of Plaintiff's complaint on

10  multiple grounds, including lack of jurisdiction, improper venue, lack of service, and

11  failure to state claims for relief.  In each instance, Defendants' contentions are

12  unsupported, and Defendants' motion should be denied in its entirety.

13

14  **II.    <u>BACKGROUND FACTS</u>**

15

16      Plaintiff Cypress Avenue Partners is a limited liability company which was

17  formed in the State of Nevada, and which is qualified to do business in the State of

18  California.  In early 2007, Plaintiff  was contacted by John Petersen, who was an

19  attorney at law that had previously represented Plaintiff's principal, Rick Ramirez, in

20  legal matters.  From the parties' work together, Mr. Petersen knew that Mr.

21  Ramirez was a consultant who specialized in assisting troubled businesses.  Mr.

22  Petersen explained that he was on the Board of Directors of Axion Power

23  International, Inc., which was experiencing financial difficulties, and needed

24  Plaintiff's services to assist in turning around the performance of the company and

25  ultimately making the company attractive to investors or strategic purchasers.

26  (Declaration of Ricardo I. Ramirez, ¶2)

27      In their initial and ensuing conversations, Mr. Petersen was successful in

28  soliciting Plaintiff's agreement to provide consulting services on behalf of Axion

1    Power, and acted as Plaintiff's attorney in negotiating Plaintiff's consulting

2    agreement with Axion Power. Succinctly stated, Plaintiff would not have agreed to

3    do business with Axion in the absence of Mr. Petersen's repeated assurance that

4    Plaintiff's interests would be protected. (Dec. of Ramirez, ¶2, Exhibit A).[1]

5        Plaintiff's written contract with Axion Power was executed by the

6    corporation's Chief Executive Officer, Thomas Granville.  In that agreement, Axion

7    Power acknowledged that the contract would be governed by the laws of the State

8    of California and that any dispute between the parties would be resolved by binding

9    arbitration in Sacramento, California. (Dec of Ramirez, ¶3, Exhibit A ).

10       Throughout the relevant time period, Plaintiff operated under the belief that

11   Mr. Petersen was representing Plaintiff's  interests in negotiating the parties'

12   contract.  In e-mail correspondence received from Mr. Petersen dated November

13   19, 2007 , he confirmed his negotiation of Plaintiff's written agreement.  (Dec. of

14   Ramirez, ¶4, Exhibit B).

15       From the date of Mr. Petersen's initial phone call, Plaintiff worked closely

16   with numerous representatives of Axion Power in an effort to reposition the

17   company from what was perceived to be a "tired pink sheet" company to a

18   dynamic "green technology" energy company.  Additionally, Plaintiff was actively

19   engaged for over eighteen (18) months in exploring relationships with potential

20   financing sources as well as strategic partners who may have an interest in the

21   company's battery technology or battery production facilities.  (Dec. of Ramirez,

22   ¶5).

23       In or about February, 2007, numerous representatives of Axion Power,

24   including the Board of Directors, Chief Executive Officer Thomas Granville and legal

25   counsel, John Petersen (who at that time was also Chairman of the Board) traveled

26

27       [1]All citations to exhibits in these Points and Authorities refer to the concurrently filed Declaration of

28   Ricardo I. Ramirez.

1  to Los Angeles to receive a technology award from Frost & Sullivan.  Plaintiff

2  utilized this opportunity to arrange a meeting in Los Angeles, California on or about

3  February 7, 2007 between Axion's principals, Mr. Ramirez,  and Craig Sultan, of

4  Merriman Curhan Ford & Co. ("Merriman") an Investment Banking firm, to explore

5  potential financing options.  The next day, on or about February 8, 2007, Plaintiff

6  arranged a similar meeting in Newport Beach, California with B. Riley, a Southern

7  California based investment banking firm, Mr. Ramirez, and numerous Axion

8  representatives, including Thomas Granville, Ed Buiel and John Petersen. (Dec. of

9  Ramirez, ¶¶7 - 8).

10       Thereafter, Plaintiff worked with Axion in all facets of its attempt to secure

11  financing, including working with the company on such matters as the restatement

12  of the company's financials for the years 2003-2006, and developing a growth

13  strategy for the company.  These effort led to the negotiation of a written

14  agreement between Axion Power and  Merriman.  (Exhibit C).  Pursuant to that

15  agreement, Axion Power, once again, agreed to be bound by California law, and

16  specifically agreed to arbitrate any disputes under their agreement in San Francisco,

17  California.  (Dec. of Ramirez, ¶¶9 - 11, Exhibit C).

18       Following Axion Power's retention of Merriman, Plaintiff remained extremely

19  active in facilitating the procurement of financing through alternative funding

20  sources.  Throughout this time period, the majority of Plaintiff's work was

21  performed in San Francisco, California, where Merriman is located.  This work

22  included discussions with potential lenders and investors which led to the

23  successful procurement of $18,000,000.00 in equity funding from The Quercas

24  Trust of Newport Beach, which is located in Southern California.  Axion's

25  agreement with The Quercas Trust was announced on Axion's own web-page.

26  (Dec. of Ramirez, ¶12, Exhibit D)

27       Under the written contract between Cypress and Axion Power, Axion agreed,

28  among other things, to issue Cypress a warrant to purchase 200,000 shares of

4

1   common stock and to pay Cypress a fee of $50,000.00 upon the first closing of a

2   financing agreement.  (Exhibit A, Paragraph 3(ii)).  Plaintiff received e-mail

3   correspondence dated January 9, 2008 from John Petersen  representing that

4   Thomas  Granville and Axion had agreed to issue the promised warrant and pay,

5   upon closing, the cash fee. (Exhibit E).  Similarly, correspondence was also received

6   by Plaintiff's legal counsel from Axion Power which purported to transmit the

7   promised warrant, and promising to pay the cash fee.  (Exhibit F).  Unfortunately,

8   the promised warrant was not delivered and the cash fee was not paid.  Further

9   correspondence was directed to Axion requesting the warrant and the payment of

10  the undisputed cash fee.  (Exhibit G).   However, neither Axion Power nor its legal

11  counsel ever responded to this letter, and the promised warrant and cash fee have

12  never been received.  Thus, this litigation ensues.  (Dec. of Ramirez, ¶15).

13

14  III.   **DEFENDANTS HAVE PURPOSELY AVAILED THEMSELVES OF THE**
        **PRIVILEGE OF CONDUCTING BUSINESS IN CALIFORNIA.**
15

16       In a diversity action, U. S. District Court for the Northern District of California

17  may exercise personal jurisdiction over a non-resident defendant if jurisdiction is

18  proper under California's long-arm statute, and if that exercise of jurisdiction accords

19  with Federal Constitutional due process principals.  *Shute v. Carnival Cruise Lines,*

20  *Inc.* (9th Cir. 1990) 897 F.2d 377, 830.  California's long-arm statute authorizes the

21  Court to exercise personal jurisdiction over a non-resident defendant on any basis

22  not inconsistent with the California or Federal Constitutions.  Code of Civil

23  Procedure §410.10.  The statutory and constitutional requirements therefore merge

24  into a single due process test.  *Shute, supra* 897 F2d at 380.

25       Due process requires that a defendant have "minimum contacts" with the

26  forum state so that the exercise of jurisdiction does not offend traditional notions of

27  fair play and substantial justice.  *Shute, supra* 897 F2d at 380 citing *International*

28  *Shoe v. Washington*, 326 U. S. 310, 316 (1945).  However, the nature and quality

1  of contacts necessary to support jurisdiction depends on the type of jurisdiction

2  asserted.  *Id.*

3      When a defendant moves to dismiss for lack of personal jurisdiction, the

4  Plaintiff bears the burden of demonstrating that the Court has jurisdiction over the

5  defendant.  *Harris Rutsky & Co., Ins. Servis v. Bell & Clements, Ltd.* (9th Cir. 2003)

6  328 F.3d 1122, 1128-29.  However, this demonstration requires that the Plaintiff

7  "make only a prima facie showing of jurisdictional facts to withstand the motion to

8  dismiss."  *Doe v Unocal* (9th Cir. 2001) 248 F.3d 915, 922.  Moreover, for the

9  purpose of this determination, the Court resolves all disputed facts in the favor of

10  the Plaintiff.  *Id.*

11      The Ninth Circuit employs a three-part test to analyze whether a party's

12  "minimum contacts" meet the Supreme Court's directive.  This "minimum contact"

13  test is satisfied when:

14      (1)    The defendant has performed some act or consummated some
               transaction within the forum or otherwise purposely availed
15             himself of the privileges of conducting activities in the forum;

16      (2)    The claim arises out of or results from the defendants form-
               related activity; and,
17
        (3)     The exercise of jurisdiction is reasonable."
18

19  (*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.* (9th Cir. 2000) 223 F.3d 1082,

20  1086.

21      Under the first prong of the "minimum contact" test, Plaintiff possesses the

22  burden of establishing that the Defendant "has performed some act or consummated

23  some transaction within the forum or otherwise purposely availed itself of the

24  privileges of conducting activities in the forum."  *Bancroft, supra*, 223 F.3d at

25  1086.  This inquiry has been refined to ask whether the defendant has either: (1)

26  purposely availed itself of the privilege of conducting activities in the forum; or (2)

27  purposely directed activities towards the forum.  *Schwarzenegger v Fred Martin*

28  *Motor Co.* (9th Cir. 2004) 374 F.3d, 797, 802.  Evidence of availment is typically

1   action taking place in the forum that invokes the benefits and protections of the

2   laws of the forum. *Schwarzenegger, supra* at 803.  Evidence of direction generally

3   consists of action taking place outside of the forum that is directed at the forum.

4   *Id.*

5            A.  Axion Power

6            As to Defendant Axion Power, the Court need look no further than the

7   parties' contract, which includes both a choice of law provision and an agreement to

8   venue arbitration of any dispute in California.  Specifically, the parties' disputed

9   contract provides:

10            "(8)     This agreement shall be governed by the laws of
              the State of California.  Any dispute between the parties
11            hereto arising out of this agreement shall be resolved by
              binding arbitration in Sacramento, California pursuant to
12            the rules of the American Arbitration Association."

13   (Exhibit A to Plaintiff's complaint and the concurrently filed Declaration of Ramirez.)

14            Consequently, it is patent that Axion consented to personal jurisdiction

15   in California by agreeing that the parties' contract is governed by California law.

16   *Fireman's Fund Insurance Company v Interstate Fire & Casualty Co.*, (9th Cir. 1996)

17   103 F.3d 888, 893-894.  In addition, Axion Power, consented specifically to

18   arbitrate any dispute in California.   By its consent, Axion Power has waived its right

19   to object to personal jurisdiction in this state.  *Fireman's Fund Insurance Company v.*

20   *Interstate Fire & Casualty Co.*, *supra*,103 F.3d at 893, citing to *Burger King Corp. v*

21   *Rudzewicz*, 471 US 462, 472 N.14 (1985).

22            Moreover, Axion's consent to personal jurisdiction in California was not

23   unique to its contract with Plaintiff.  In point of fact, in the performance of Plaintiff's

24   services under its written contract with Axion, Plaintiff introduced Axion to the

25   investment firm of Merriman Curhan Ford & Co. located in San Francisco, California.

26   In the resulting written contract between Merriman and Axion, Axion specifically

27   agreed that:

28            (1)     Its written contract with Merriman would be construed under the

7

1            laws of the State of California;

2      (2)   Merriman's contract would be performed entirely within the

3            State of California; and,

4      (3)   Any dispute arising under the parties written agreement would

5            be determined through binding arbitration in the City and County

6            of San Francisco.  (Exhibit C, ¶15).

7            Finally, Defendants' motion includes significant misstatements of fact

8   concerning Axion's contacts with California.  Specifically, Defendants' opposition

9   asserts that "[t]he Axion Defendants have not visited California or otherwise

10  committed any act in California related to [the] disputed agreement that would lead

11  to in personam jurisdiction."  (Opposition p.9: 16-19).  In reality, Axion's Board of

12  Directors and several officers traveled to California in February, 2007, to receive the

13  Frost & Sullivan Technology Innovation Award.  During Axion's time in California,

14  Plaintiff was solicited to, and did, schedule and attend numerous meetings with

15  Axion's officers and directors and potential investors to explore the potential of

16  obtaining investment capital.  These meetings in California were exclusively related

17  to Plaintiff's attempt to secure Axion's much needed financing, and are at the heart

18  of Plaintiff's case.  (Dec. of Ramirez, ¶¶7 - 10).

19          Subsequent to execution of Plaintiff's contract, Plaintiff worked

20  diligently for an extended period of time to explore financing opportunities, to

21  complete Axion's retention of Merriman in San Francisco, and to secure the infusion

22  of investment equity through The Quercas Trust of Newport Beach, which is located

23  in Southern California.  In fact, during Axion's negotiations with The Quercas Trust,

24  Axion dispatched corporate representatives to travel to San Francisco to complete

25  the due diligence aspect of that transaction.

26          B.  Granville and Peterson

27          As to the individual defendants, both Granville and Peterson undertook

28  activities both inside and outside of California which were intended to, and did,

                                        8

1  personally direct activities towards this State.  As outlined in detail above, both

2  Granville and Petersen personally attended meetings in California in February, 2007

3  to meet with the Plaintiff, and to attend meetings scheduled by Plaintiff to

4  investigate sources of potential funding for Axion.

5          Over the course of the ensuing eighteen (18) months, Plaintiff regularly

6  communicated with both Granville and Petersen concerning: 1)  Plaintiff's written

7  contract;  2) Merriman's written contract;  3) restating Axion's financials for the

8  years 2003 - 2006; 4) developing a growth strategy for Axion; 5) shareholder

9  lawsuits, 6) SEC Compliance issues; 7) the creation of the Private Placement

10  Memorandum;  8) investigating possible sources of equity funding; 9) completion of

11  the successful procurement of $18,000,000.00 in equity funding from The Quercas

12  Trust of Newport Beach;  and 11) completion of the due diligence requirements of

13  that transaction in San Francisco.  In each instance, the individual Defendants

14  intended to, and did, conduct themselves in a manner which purposefully directed

15  activity towards California. (Dec. of Ramirez, ¶¶10 - 12).  Granville and Petersen's

16  efforts were successful in achieving Axion's funding objectives, through the

17  procurement of equity capital in California. (Dec. of Ramirez, ¶14).

18          Moreover, Defendant Petersen undertook an even higher level of

19  contact within California by contacting Plaintiff in this State, by negotiating a

20  contract on Plaintiff's behalf which was to be performed in this State and enforced

21  pursuant to California law, and routinely communicated with Plaintiff in California

22  regarding the ongoing efforts to secure alternative financing. (Dec. of Ramirez, ¶13).

23  Defendant's Petersen's provision of legal services, and ongoing and regular

24  communication with Plaintiff in California to complete negotiations of both the

25  Merriman contract and the equity investment of The Quercas Trust, reflects a

26  significant additional activities which were purposefully directed at California.

27          Consequently, each of the Defendants had significant interactions with

28  the State of California to negotiate Plaintiff's contract, Merriman's contract, and to

9

1  obtain $18,000,000.00 equity investment received from The Quercas Trust of

2  Newport Beach.  In the course of those negotiations, each Defendant had regular

3  contact with the Plaintiff, who was diligently working to perform his contract in San

4  Francisco, along with the Merriman firm and The Quercas Trust.  Consistent with

5  these facts, Axion's contracts with both Plaintiff and Merriman specifically provided

6  for enforcement of the contracts under California law, and for a venue of disputes in

7  both Sacramento (Plaintiff) and San Francisco (Merriman).

8          As a result, Axion has purposefully availed itself of the privileges of

9  conducting activities in California and the individual defendants have purposefully

10  directed significant activities into this State.  In light of the fact that Plaintiff's

11  claims arise out of the parties' collective efforts to secure $18,000,000.00 in

12  funding from sources within California, the exercise of jurisdiction by this Court is

13  reasonable.

14

15  **IV.    VENUE IS APPROPRIATE WITHIN THIS JUDICIAL DISTRICT.**

16          Where Federal subject matter jurisdiction is based upon diversity of

17  citizenship, venue is proper in a judicial district in which a "substantial party of the

18  events or omissions" on which the claim is based occurred.  28 UCS §1391(a).  In

19  determining whether venue is proper under §1391(a), only those events and

20  omissions that directly give rise to the claim are relevant.  *Jenkins Brick Co. v*

21  *Bremer* (11th Cir. 2003) 321 F.3d 1366, 1372.  Federal law does not require that a

22  majority of the events or omissions occur in the district where suit is filed, nor that

23  the events there predominate.  It is sufficient that a "substantial part" occurred

24  there.  *Jenkins Brick Co.*, *supra*, 321 F.3d at 1371, *Percoraro v Sky Ranch for Boys,*

25  *Inc.* (8th Cir.2003) 340 F.3d 558, 563.

26          As with venue questions generally, what constitutes a "substantial part" of

27  the events or omissions involved is a question of Federal law.  *Commercial Lighting*

28  *Products, Inc. v United States Dist. Ct.* (9th Cir.1976 ) 537 F.2d 1078,1079.  The

1  "substantiality" requirement is intended to preserve the element of fairness so that a

2  defendant is not haled into a remote district having no real relationship to the

3  dispute. *Cottman Transmission Systems, Inc. v Martino* (3d. Cir 1994) 36 .3d 291,

4  294. In determining where a "substantial part" of the events or omissions occurred,

5  most Courts look not to a single triggering event prompting the action but the entire

6  sequence of events underlying the claim. *Uffner v La ReUinon Francaise S. A.* (1st

7  Cir. 2001) 244 F.3d 38,42.

8      With the above policy in mind ,any of the following factors may be relevant in

9  determining where a "substantial part" of the events or omissions occurred:

10     (1)    In tort actions, where the parties acted or the injuries occurred;

11     (2)    In contract actions, where the negotiations took place, where the

12            contract was signed, where performance or breach occurred;

13     III.   The place where the parties acted or were engaged in business.

14  *Jenkins Brick Co.* supra, 321 F.3d at 1371.

15     In the instant case, Plaintiff elected a venue in the San Francisco division of

16  the Northern District of California because the majority of Plaintiff's work to perform

17  the subject contract occurred in San Francisco, California. Specifically, Plaintiff

18  successfully introduced Axion Power to the investment firm of Merriman Curhan

19  Ford & Co., which is located in San Francisco, resulting in Axion and Merriman

20  entering into a written agreement which was to be construed under California law,

21  and which was subject to arbitration in San Francisco. As set forth in detail above,

22  performance of Plaintiff's contract largely occurred in San Francisco, California.[2]

23  (Dec. of Ramirez, ¶12). In light of these facts, venue is appropriate in San

24  Francisco.

25

26  _____

27     [2] It is also important to note that San Francisco does not pose a particularly forum for Plaintiff,
    whose principal place of business is in Tahoe City, California. Pursuant to the parties' contract, Plaintiff
    could have chosen to venue this dispute in Sacramento, where Axion agreed to arbitrate any dispute.

28  However, the bulk of Plaintiff's contract was performed in, and the bulk of the individual defendants'
    actions were directed toward, San Francisco, which appeared to be the logical choice for venue.

## V.    SERVICE OF PLAINTIFF'S COMPLAINT

Alternatively, Defendants argue that defects in service justify the dismissal of Plaintiff's complaint pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure.  As discussed below, Plaintiff's service upon Axion's vice president appeared to be well designed to provide notice to Axion, Axion's CEO and Axion's legal counsel and former Chairman of the Board.   Moreover, if any defect in service exists, such defect can be easily resolved.

(1)    Axion Power

As Defendants' motion makes clear, a copy of the Summons and complaint were delivered to Axion's Vice-President and Chief Technical Officer, Edward R. Buiel Power on June 9, 2008.  The Summons and complaint delivered to Mr. Buiel  were delivered on behalf of: 1) Axion Power, Inc.; 2)  Axion's Chief Executive, Thomas Granville, erroneously sued and served herein as John Granville; and, 3)  Axion's Legal Counsel and the former Chairman of the Board, John Petersen.

As to Axion Power, service of process may be effected by delivery to a person of such authority and responsibility as to render likely that he or she will know what to do with the papers received.  Such person is deemed a "managing or general agent" for purposes of Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure. *Montclair Electronics, Inc. v Electra/Midland Corp.* (S.D. NY 1971) 326 F.Supp. 839, 842.  It is patent that service of process on Axion's vice-president and chief technical officer satisfy the requirements for service of Axion.

(2)    Individual Defendants

Defendants argue that the summons and complaint were not personally handed to Defendants Granville and Petersen, which is true.  To avoid any ambiguity, Plaintiff has renewed its attempts at personal service upon Defendants Granville and Petersen.  Plaintiff has also sent the Summons and complaint, by certified mail, to Thomas Granville (John Granville) at the Axion business office

12

1   identified in Mr. Buiel's declaration, and to John Petersen through his law firm in

2   Switzerland.  Additionally, to the extent that Defendants resist service at their place

3   of work, on July 15, 2008, Plaintiff served written discovery on Axion to obtain

4   Granville and Petersen's home addresses.

5           To the extent that Defendants resist service or this discovery, Plaintiff

6   respectfully requests that the Court provide an opportunity under Rule 4(m) of the

7   Rules of Civil Procedure for purposes of completing service on these individuals.

8   Alternatively, Plaintiff requests that this Court authorize service of process upon

9   John Granville by e-mail at the corporate offices of Axion Power, and upon John

10  Petersen by e-mail at his law firm in Switzerland.  See *Rio Properties, Inc. v Rio Int'l*

11  *Interlink* (9th Cir.2002) 284 F.3d 1007, 1018.

12

13  **VI.   DEFENDANTS' DISMISSAL MOTION UNDER RULE 12(b)(6) SHOULD BE**
       **DENIED IN ITS ENTIRETY.**

14

15          A.     Standard of Review

16          A complaint may be dismissed under Rule12(b)(6) of the Federal Rules of

17  Civil Procedure if it appears beyond doubt that the plaintiff can prove no set of facts

18  in support of the claim that would entitled him to relief.  *Hishon v King & Spaulding*

19  (1984) 467 U.S. 69, 73(citing *Conley v Gibson* (1957) 355 U. S. 41, 45-46; *Balistreri*

20  *v Pacific Police Department* (9th Cir. 1990) 901 F.2d 696, 699.  A Rule 12(b)(6)

21  dismissal can be based on the failure to allege a cognizable legal theory or the failure

22  to allege sufficient facts under a cognizable legal theory.  *Robertson v Dean Witter*

23  *Reynolds, Inc.* (9th Cir. 1985) 749 F.2d, 530, 533-34.  In considering a motion to

24  dismiss, the court must accept as true the allegations of the complaint in question,

25  *Hospital Bldg. Co. v Rex Hospital Trustees* (1976) 425 U. S. 738,740, construe the

26  pleading in the light most favorable to the party opposing the motion, and resolve all

27  doubts in the pleader's favor.  *Jenkins v McKeithern* (1969) 395 U. S. 411, 421.

28          A Rule 12(b)(6) motion to dismiss for failure to state a claim is disfavored,

1   see _Hall v City of Santa Barbara_ (9th Cir. 1986) 833 F.2d 1270, 1274, and may be

2   granted only in extraordinary circumstances, see _Gilligan v Jamco Develo. Corp._ (9th Cir.

3   1997) 108 F.3d, 246, 249. Essentially, a motion to dismiss for failure to state a claim

4   tests plaintiff's compliance with the liberal requirements of Rule 8(a)(2) of the Federal

5   Rules of Procedure. See 5A Charles Alan Wright & Arthur R. Miller, Federal Practice

6   and Procedure §1356, at 294-96. The burden imposed by Rule 8(a)(2) is a minimal

7   one. Rule 8(a)(2) requires parties seeking relief in Federal Court by way of complaint

8   to include "a short and plain statement of the claim showing that the pleader is entitled

9   to relief." Rule 8(a)(2). When evaluating a complaint for failure to state a claim, the

10  question is not whether the facts stated in the complaint, if proven, would entitle the

11  plaintiff to any relief. Instead, the question is whether there is any set of "facts that

12  could be proved consistent with the allegations of the complaint" that would entitle

13  plaintiff to some relief. _Swierkiewicz v Sorema N.S._ (2002) 534 U.S. 506, 514;

14  _Hishon v King & Spalding_ (1984) 467 U.S. 69, 73; _Diaz v Gates_ (9th Cir. 2004) 380

15  F.3d 480,482.

16      B.    Plaintiff Has Properly Alleged a Claim for Breach of the Implied Covenant.

17          Defendants attack Plaintiff's breach of implied covenant claim on two

18  grounds: first, Defendants assert that the specific contractual obligation from which

19  the implied covenant arose must be alleged; and second, Defendants assert that no

20  breach of the implied covenant can exist where the same factual allegations form the

21  basis of a claim for breach of contract. Defendants arguments are unsupported on both

22  grounds.

23          First, Plaintiff's allegations regarding "the specific contractual obligations"

24  could not be more clearly alleged. Not only does Plaintiff's claim for breach of the

25  implied covenant incorporate its allegations of breach of contract (for which no

26  deficiency has been asserted), but Plaintiff has specifically attached a copy of the

27  disputed contract as Exhibit A to it's complaint. Thus Plaintiff has identified the

28  specific contractual obligations from which the implied covenant arose, and has

14

1   specifically asserted Defendants' breach of the implied covenant.

2          Second, to establish a claim for breach of the implied covenant, Plaintiff

3   must plead and prove the following:

4                 (a)    that the parties entered into a contract;

5                 (b)    that plaintiff performed all, or substantially all, of the obligations to

6                 be performed on its part;

7                 (c)    that the conditions required for defendants' performance occurred;

8                 (d)    that defendants unfairly interfered with plaintiff's right to receive the

9                 intended benefits of the contract; and,

10                (e)    that plaintiff was harmed.

11  See Judicial Council of California, Civil Jury Instructions, ("CACI") (June 2008 Edition)

12  §325.

13         Defendants cite to *Celestial Mechanix v Susquehanna Radio Corp.*, (C.D.

14  Cal. 2005) 2005 W.L. 471, 5213, for the proposition that no breach of implied

15  covenant can be stated where the "same factual allegations form the basis of a claim

16  for breach of contract.  Defendants' assertion is easily disposed of.

17         In *Celestial Mechanix*, the Court cited to and relied upon *Careau & Co. v*

18  *Security Pacific Business Credit, Inc.* (1990) 22 Cal.App.3d 1371, for the proposition

19  that the mere allegations of a breach of contract claim does not a establish a claim for

20  breach of the implied covenant.  In fact, the *Careau* court held that:

21                 "'Thus, allegations which assert such a claim must show
                   that the conduct of the defendant, whether or not it also
22                 constitutes a breach of a consensual contract term,
                   demonstrates a failure or refusal to discharge contractual
23                 responsibilities, prompted not by an honest mistake, bad
                   judgment or negligence, but rather by a conscience and
24                 deliberate act, which unfairly frustrates the agreed common
                   purposes and disappoints the reasonable expectations of the
25                 other party thereby depriving that party of the benefits of the
                   agreement.  Just what conduct will meet these criteria must
26                 be determined on a case by case basis . . .'" *Careau & Co.*,
                   *supra*, 22 Cal.App 3d at 1395.
27

28         In the instant case, Plaintiff has specifically alleged that:

15

> "21.   On or about January 15, 2008, Plaintiff was denied payment by Defendant without any justifiable cause or reason.   The denial of payment was undertaken without probable cause or a good faith belief that good cause for the delay in payment in fact existed.   Moreover, Defendant's conduct was an action extraneous to the Agreement and a violation of law and public policy and was undertaken with the intent to frustrate Plaintiff's enjoyment of its contract rights." (Plaintiff's Complaint, Exhibit A, ¶21)

Thus, Plaintiff has not relied merely upon the allegations of its breach of contract claim in order to state a cause of action for breach of the implied covenant, and has alleged all of the elements necessary to satisfy its pleading obligations.

     C.    <u>Quantum Meruit</u>

     Defendants argue that Plaintiff's quantum meruit claim should be dismissed because Plaintiff's complaint also states a claim for express contract. In support of its position, Defendants cite to, and rely upon *Schuman v Ikon Office Solutions, Inc.* 232 Fed.Appx. 659 (9th Cir. 2007).

     In *Schuman*, the Ninth Circuit cited to *Hedging Concepts v First Alliance Mortgage Co.* (1996) 41 Cal.App. 4th 1410 for the proposition that where there is an enforceable express contract which sets forth the disputed commission or fee structure, quantum meruit does not apply.  In asserting this argument, Defendants conveniently ignore the fact that the *Hedging Concepts* opinion was predicated upon a factual finding by the trial court that the parties had formed an actual, not an implied, contract.  Thus, *Hedging Concepts* dealt with the ultimate factual finding rendered by a trial court, not a party's ability to plead alternative theories of recovery in their complaint.

     In point of fact, *Hedging Concepts* specifically observed that in situations where a Court did not find the formation of an  enforceable contract, the Court could, in certain circumstances, find an implied contract to pay the reasonable value of beneficial services rendered with a mistaken belief that a contract had been formed. See *Hedging Concepts v First Alliance Mortgage Co.*, *supra*, 41 Cal.App.4th at 1419, citing to 1 Witkin, <u>Summary of California Law,</u> (9th Ed. 1987) Contract ¶104 <u>et seq.</u>

1          In the instant case, Plaintiff is entitled to allege alternative theories of

2    recovery.  This is especially true where, as here, Axion Power denies the enforceability

3    of Plaintiff's contract.  Although Plaintiff may not be entitled to recover a judgment on

4    both express and implied contract theories, this case is merely at the pleading stage.

5          D.    Fraud

6          Defendants argue for the extraordinary remedy of dismissal because

7    Plaintiff's fraud allegations lack specificity.

8          In its complaint, Plaintiff specifically allege that :

9    (a)    Defendant Granville, acting as Axion's president, represented that

10         Axion would honestly and fairly abide by its agreement with

11         Plaintiff (Complaint ¶29)

12   (b)    Defendants' representations were made for the express purpose of

13         inducing Plaintiff to fully perform his contract. (Complaint ¶29)

14   (c)    In making the representations, Defendants intended to, and did,

15         induce Plaintiff to fully perform all duties required under the

16         agreement.  (Complaint ¶30).

17   (d)    At the time Defendant Granville made his representations, neither

18         Axion nor Granville intended to honor the agreement. (Complaint

19         ¶30).

20   (e)    At the time the representations were made, Defendants Granville

21         and Axion intended to, and did, induce Plaintiff to fully perform

22         under his contract without any intention to compensate Plaintiff.

23         (Complaint ¶30).

24   (f)    At the time Granville and Axion made the representations, they

25         knew that Plaintiff was reasonably relying on the Defendants' to

26         conduct themselves fairly. (Complaint ¶31).

27   (g)    As a direct and proximate result of Defendants' misrepresentations,

28         Plaintiff incurred damage. (Complaint ¶32).

17

1    Although a party asserting a cause of action for fraud is required to plead

2 with specificity, that requirement is relaxed "when the allegations indicate that `the

3 defendant must necessarily possess full information concerning the facts of the

4 controversy.'(*citation omitted)*" and "when the facts lie more in the knowledge of the

5 opposite party." *Tarmann v State Farm Mutual* (1991) 2 Cal.App.4th 153,158.  In the

6 instant case, because the misrepresentations were made by Axion's CEO, the precise

7 facts of the transaction are within Axion and Granville's knowledge, and these

8 Defendants have the ability to properly investigate their own conduct, or the conduct

9 of Axion employees.  More importantly, the allegations are patently sufficient "to allow

10 defendants to understand fully the nature and of the charge made."  *Roberts v Ball,*

11 *Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App. 3d 104, 109.

12    Under these facts, Plaintiff has pled the nature of the asserted

13 misrepresentation with sufficient specificity for Defendants to understand the nature

14 of the charge made, and to defend itself in this litigation.  Additional details regarding

15 the facts and circumstances of the alleged misrepresentation are matters of discovery,

16 not pleadings

17    E.    Professional Negligence

18    The essential factual elements of a claim for legal malpractice in California

19 are:

20       (1)    that defendant was negligent;

21       (2)    that plaintiff was harmed; and

22       (3)    that defendant's negligence was a substantial factor in causing

23       plaintiff's harm.

24 CACI ¶¶400, 600.

25    Plaintiff's complaint alleges a claim for professional negligence against

26 defendant Petersen and avers that:

27       (a)    Defendant is an attorney at law who induced Plaintiff to enter into

28       a contract with Axion and represented to Plaintiff, in the course of

18

discussing the terms of Plaintiff's contract, that he would ensure that Plaintiff's interests were protected in the subject transaction. (Complaint ¶¶ 35,36.)

(b)  Unbeknownst to Plaintiff, at the time he entered his contract, Defendant Petersen represented both parties to the contract. (Complaint ¶ 37)

(c)  Despite a patent conflict of interest, Defendant Petersen never disclosed the conflict or obtained Plaintiff's written consent (Complaint ¶ 37)

(d)  Defendant Petersen provided legal advice to counsel which fell below the standard of care. (Complaint ¶38)

(e)  As a proximate result of Defendant Petersen's professional negligence, Plaintiff was harmed in an amount to be proven at trial. (Complaint ¶39)

Moreover, in opposing the instant motion, Plaintiff has attached an e-mail received from Defendant Petersen on November 19, 2007, which states, inter alia, as follows:

"'I had no trouble negotiating your initial agreement a year ago while I was Chairman of Axion's Board and their lead counsel for almost everything. As this point I have no authority from a corporate perspective and while they listen to my advice, I really feel uncomfortable wearing a negotiating hat for either you or Axion, particularly know that we're off into territory that wasn't contemplated by the original agreement.'" (Exhibit B to Declaration of Ricardo Ramirez)

Under these facts, Plaintiff has adequately alleged a claim for professional negligence. [3]

---

[3]  Defendants motion offers a passing reference to the economic loss rule.  The economic loss rule principally arises out of product defect actions, and requires a purchaser to recover in contract for purely economic loss for disappointed expectations, unless the purchaser can demonstrate harm above and beyond a broken contractual promise. Succinctly stated, the economic loss rule does not apply in the instant case, as Defendant Petersen's acts and/or omissions constitute an independent tort which is separate and distinct from Axion's asserted breach of contract (e.g failing to include within the agreement appropriate remedies to protect Plaintiff's interest in the event of Defendant Axion's breach).  In light of the fact that Defendant Petersen's conduct is alleged as an independent tort, the economic loss rules does not apply. *Robertson Helicopter Co. v Dana Corporation*, (2004) 34 Cal.4th 979, 389-390.

1   VII.    <u>REQUEST FOR LEAVE TO AMEND</u>

2         To the extent that the Court finds any deficiencies in any aspect of Plaintiff's

3   complaint, Plaintiff respectfully requests leave to amend its complaint.

4

5   VIII.   <u>CONCLUSION</u>

6         For the foregoing reasons, Defendants' Motion to Dismiss should be denied in

7   all respects.

8

9   Dated:    July 21, 2008              BETTS & WRIGHT

10

11                                    By   /s/
                                         James B. Betts
12                                       Attorneys for Plaintiff
                                         CYPRESS AVENUE PARTNERS LLC
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28