**FELLHEIMER & EICHEN, LLP**
Alan S. Fellheimer
1800 John F. Kennedy Blvd., Suite 1400
Philadelphia, PA 19103
(215) 253-6630

Attorneys for Defendants
AXION POWER INTERNATIONAL, INC.,
Thomas Granville and
John L. Petersen, Esquire

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | | |
|---|---|---|
| CYPRESS AVENUE PARTNERS LLC, | ) | Case No.: 08-002374 MEJ |
| | ) | |
| Plaintiff, | ) | **REPLY MEMORANDUM OF POINTS AND** |
| | ) | **AUTHORITIES IN SUPPORT OF THE** |
| v. | ) | **AXION DEFENDANTS' MOTION TO** |
| | ) | **DISMISS PURSUANT TO FED.R.CIV.P.** |
| AXION POWER INTERNATIONAL, | ) | **12(b)(2), 12(b)(3), 12(b)(5) and 12(b)(6)** |
| INC.; | ) | |
| JOHN GRANVILLE; | ) | **Date:  August 14, 2008** |
| JOHN PETERSON; and | ) | **Time:  10:00 A.M.** |
| DOES 1-50, inclusive, | ) | **Ctrm:  Courtroom B, 15th Floor, 450 Golden** |
| | ) | **Gate Avenue** |
| Defendants. | ) | **Judge:  The Honorable Maria-Elena James** |
| | ) | |
| | ) | |
| | ) | |

TO:    PLAINTIFF CYPRESS AVENUE PARTNERS LLC ("Plaintiff") AND ITS
        ATTORNEY OF RECORD

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants, Axion Power International, Inc. ("Axion"), Thomas Granville ("Granville")

and John L. Petersen, Esquire ("Attorney Petersen") (collectively herein referred to as the

"Axion Defendants" while Granville and Attorney Petersen are collectively referred to as the

"Individual Defendants"), through their below-signed counsel, file this Reply Memorandum of

Points and Authorities in support of their Motion to Dismiss Pursuant to FED.R.CIV.P. 12(b)(2),

i

12(b)(3), 12(b)(5) and 12(b)(6)[1] ("Motion") and move this Court to dismiss the above-captioned action by plaintiff, Cypress Avenue Partners LLC ("Plaintiff" or "Cypress") for lack of personal jurisdiction, improper venue, insufficiency of service of process, and failure to state a claim upon which relief can be granted, respectively. In further support thereof, the Axion Defendants state:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

[1]    Per FED.R.CIV.P. 10(c), the Axion Defendants incorporate herein by reference their Notice of Motion and Motion and any and all affidavits and exhibits attached hereto.

# TABLE OF CONTENTS

I.     **LEGAL ARGUMENT** ................................................................. 1

   A.  **There Is No General Jurisdiction Over the Individual Defendants.** ............................ 1

   B.  **There Is No Specific Jurisdiction Over the Individual Defendants.** ............................ 2

   C.  **Venue in This Court Is Improper as Plaintiff Breached the Agreement by Improperly Attempting to Enforce in This Court Rather Than Abide by the Agreement's Binding Arbitration Clause.** ....................................................... 4

   D.  **Defendants' Motion to Dismiss Properly States Claims Upon Which Relief Can Be Granted.** ....................................................................................... 5

     1.  **Plaintiff Failed to Plead Fraud with Specificity and Improperly Attempts to Shift the Burden to Defendants to Assert its Case.** ............................................. 5

     2.  **Plaintiff Does Not Alleged Facts to Support Any Claim That Attorney Petersen Acted as Plaintiff's Attorney and Therefore Plaintiff's Professional Negligence Claim Must Be Dismissed.** ....................................................... 6

   E.  **Amendment of the Complaint Should Be Required If the Case Is Not Dismissed in Its Entirety and Jurisdiction Is Exercised Over Any Axion Defendant.** ................... 8

II.    **CONCLUSION** ........................................................................ 9

iii

# TABLE OF AUTHORITIES

**Cases**

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985) .......................................................................... 2

*Costa v. Keppel Singmarine*, 2003 WL 24242419 (C.D. Ca. Apr. 24, 2003)............................. 1-2

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ............................................................ 5

*Mihlon v. Superior Court*, 169 Cal.App.3d 703 (2d Dist. 1985) .................................................. 3

*Patriot Scientific Corp. v. Korodi*, 504 F.Supp.2d 952 (S.D. Cal. 2007) ..................................... 5

*Sinatra v. National Enquirer*, 854 F.2d 1191 (9th Cir. 1988) ...................................................... 2

*Tarmann v. State Farm Mutual*, 2 Cal.App.4th 153 (1991) ..................................................... 6-7

*World-Wide Volkswagon v. Woodson*, 444 U.S. 286 (1980)........................................................ 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    LEGAL ARGUMENT

### A.    There Is No General Jurisdiction Over the Individual Defendants.

The case of *Costa v. Keppel Singmarine Dockyard PTE, Ltd.*, 2003 WL 24242419 (C.D. Cal. Apr. 24, 2003), is helpful in understanding the practical application and limits of general jurisdiction in evaluating whether a party's contacts with the forum are sufficiently "substantial" or "continuous and systematic" and in that case the court said:

> Costa asserts that the court may exercise general jurisdiction over KSD because it has conducted substantial, systematic and continuous activities in California. Costa relies, in this regard, on evidence that KSD has solicited work and entered into contracts worth millions of dollars with vessels owners or managers located in California, evidence concerning the August 1999 visit of Fok, Ng and Lee, and evidence regarding the United States ties of other Keppel Corporation entities.

> Even resolving all conflicts in the evidence in favor of Costa and Vilter, the court cannot find that KSD has engaged in substantial, systematic and continuous activities in California. First, KSD is not licensed to do business in California, it has not designated an agent for service of process in the state, it does not pay taxes or maintain bank accounts here, or it does not own property or have employees or agents domiciled in California. Evidence regarding the residence in Placentia/Anaheim indicates that it is not owned by KSD; loose statements by Fok and Lee regarding offices in Anaheim do not refute or contradict this fact. Between 1995 and 2000, KSD secured five contracts for ship repair and/or jumboization work from California residents. It bid on four others. While admittedly each of the contracts generated millions of dollars in revenue for KSD, and together they appear to represent a not significant percentage of KSD's business, this alone is not sufficient to support a finding of general jurisdiction.

*Costa v. Keppel Singmarine*, 2003 WL 24242419 at *9 (footnotes omitted). The *Costa* court rejected the assertion of general jurisdiction stating:

> As noted earlier, the totality of a defendant's contacts with the state must be assessed in determining whether the exercise of general jurisdiction is appropriate. Here, the evidence reflects a single visit to the state by KSD representatives to solicit business, the receipt by some potential customers of sales brochures over an eight- to ten-year period, and some telephone and mail solicitation from KSD's home office in Singapore. This activity, which may have contributed to generating 11-12% of KSD's revenue over a five-year period, is not sufficient to permit the exercise of general

1

jurisdiction, particularly given evidence that the contracts were consummated outside the state and all work performed pursuant to the contracts was done in Singapore.

*Costa v. Keppel Singmarine*, 2003 WL 24242419 at *11.

Nothing in Plaintiff's motion response supports the existence of general jurisdiction as against any Individual Defendant, especially since neither of them entered into any agreement or binding arbitration provision. If anything, the totality of what Plaintiff believes supports its general jurisdiction argument falls far short of that stated in the *Costa* case.

**B.    There Is No Specific Jurisdiction Over the Individual Defendants.**

Nothing in Plaintiff's response in opposition to the Motion to Dismiss supports the existence of specific jurisdiction as to any Individual Defendant. Mr. Ramirez's Declaration is replete with alleged facts regarding what he allegedly did in California pursuant to the agreement between him and Axion. Even if considered true for purpose of determining the Motion to Dismiss, this purported evidence is irrelevant as purposeful availment analysis requires the court to analyze whether "the defendant's contacts with the forum are attributable to his own action or are solely the actions of the plaintiff." *Costa v. Keppel Singmarine*, 2003 WL 24242419 at *11 (*citing Sinatra v. National Enquirer*, 854 F.2d 1191, 1195 (9th Cir. 1988)). In a contract action, the court is only to consider the parties prior negotiations and contemplated future consequences, the terms of the contract and the parties' actual course of dealing. *Costa*, 2003 WL 24242419 at *14 (*citing Burger King v. Rudzewicz*, 471 U.S. 462, 479-80 (1985)).[2]

Specific personal jurisdiction is established upon a showing that a party purposefully availed itself of the privilege of conducting activities within the forum state such that the defendant should reasonable anticipate being haled into court there in the event of a dispute regarding the forum related activities. *World-Wide Volkswagon v. Woodson*, 444 U.S. 286, 297

---

[2]    As the Merriman Curhan Ford & Co. ("Merriman") contract to which Plaintiff refers is separate from that in dispute and at issue here, it and any facts relating to the parties to that agreement are irrelevant and inadmissible

(1980). The Individual Defendants are two out-of-state individuals who at all times acted in their capacity as representatives of Defendant Axion and did not purposefully avail themselves as individuals of the State of California. Accordingly, the Individual Defendants are protected by the fiduciary shield doctrine. *Mihlon v. Superior Court*, 169 Cal.App.3d 703 (2d Dist. 1985) (under the fiduciary shield doctrine, a person acting as a corporate fiduciary does not subject himself or herself to jurisdiction).

In this case, the agreement at issue was not entered into in California. In fact, it was not negotiated in California as the Affidavits submitted by Granville and Attorney Petersen confirm that all telephone contact with Plaintiff's principal was via a Nevada telephone number and documentation was forwarded via email with a Nevada LLC maintaining a Nevada address for mailing. The only evidence of Plaintiff's presence in California is that of a mere post office box.[3]

The most interesting thing about Mr. Ramirez's Declaration is that not what it says, but what it does not say. First, even the simplest of verifiable information is omitted from Mr. Ramirez's Declaration as he fails to identify any details of Plaintiff's operations, *e.g.*, the extent of its Reno, NV operations, location, number of personnel and that of any California office it infers exists, but does not elaborate about. Second, despite claiming to be a Tahoe City, CA resident, Mr. Ramirez fails to identify a verifiable address of residence. Third, Mr. Ramirez does not dispute Attorney Petersen's Affidavit testimony confirming that Mr. Ramirez told him that he lived in the Tahoe City, NV area for tax reasons. Fourth, Mr. Ramirez does not state facts as to how Granville or Attorney Petersen allegedly contacted him in California, *e.g.*, from and to what locales and utilizing what telephone numbers and telephones (not to mention identifying what and how the other party might know about any such "facts"). Fifth, Mr. Ramirez does not

_____

for consideration as to any specific jurisdiction analysis relating to that agreement in dispute and therefore cannot properly be considered by this Court and should thus be ignored.

[3] The March 28, 2008 email attached as part of Exhibit B to Mr. Ramirez's declaration confirms that mail to Cypress is to be directed to a Reno, Nevada address and that the extent of Cypress's presence in CA, if at all, is merely a post office box.

dispute the Individual Defendants' affidavit submissions regarding their contacting him via his Nevada telephone numbers or that he specifically told Attorney Petersen that he resided in Nevada. Sixth, Mr. Ramirez fails to state the circumstances of his alleged presence in California and how, if at all, the Individual Defendants participated in any telephone, email or correspondence communication with him would know that Mr. Ramirez was then in California or that they might be submitting to jurisdiction in California by participating in such communication (remember, even the letter agreement at issue fails to identify any California address for Plaintiff). Put simply, the omissions of the Ramirez Declaration are deafeningly supportive of a lack of specific jurisdiction against any Individual Defendant in this case.

> **C.    Venue in This Court Is Improper as Plaintiff Breached the Agreement by Improperly Attempting to Enforce in This Court Rather Than Abide by the Agreement's Binding Arbitration Clause.**

As stated in the Motion to Dismiss, Plaintiff and Axion agreed that any and all disputes arising out of the Agreement would be resolved by binding arbitration. *See* Exhibit A to Plaintiff's Complaint. The language of the arbitration clause in the agreement is clear:

> Any dispute between the parties hereto arising out of this agreement shall be resolved by binding arbitration in Sacramento, California pursuant to the rules of the American Arbitration Association.

*See* Exhibit A to Plaintiff's Complaint.

In a hypocritical attempt to enforce the alleged agreement between Axion and Plaintiff, Plaintiff breached the very agreement it now seeks to enforce by completely ignoring the document's binding arbitration provision to which it agreed. Plaintiff is misguidedly attempting to judicially enforce the agreement in this Court without participating at all in binding arbitration. The agreed-upon forum selection clause renders both this action and this venue as improper and Plaintiff cannot have it both ways.

The binding arbitration clause is a forum selection clause mandating that the dispute be arbitrated—and not litigated. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13 (1972).

Accordingly, this matter should be dismissed from this Court and Plaintiff left to submit its claim against Axion to binding arbitration if it believes it is so entitled to do. Unlike Axion, the Individual Defendants were not parties to the agreement and did not consent to either the binding arbitration provision or personal jurisdiction in their individual capacities. Accordingly, it offends the notions of fair play and substantial justice to hale all of the Axion Defendants into federal court in California when only a valid and enforceable arbitration clause applicable to Axion exists and is being ignored by the only other party to that agreement, namely Plaintiff.

**D.    Defendants' Motion to Dismiss Properly States Claims Upon Which Relief Can Be Granted.**

1.    **Plaintiff Failed to Plead Fraud with Specificity and Improperly Attempts to Shift the Burden to Defendants to Assert its Case.**

Plaintiff's Fourth Cause of Action for fraud should be dismissed for failure to state a claim upon which relief can be granted because Plaintiff fails to plead facts to support such a claim with the required specificity. *See Patriot Scientific Corp. v. Korodi*, 504 F.Supp.2d 952, 965 (S.D. Cal. 2007) (fraud claims must specify such facts as the times, dates, places, and benefits received, and other details of the alleged fraudulent activity).

Plaintiff's entire fraud argument and reliance upon *Tarmann v. State Farm Mutual*, 2 Cal.App.4th 153, 158 (1991), is effectively an admission by it that it simply does not presently have the facts to support its fraud claim in this case. Plaintiff's argument is nothing more than a poorly veiled attempt to conduct a fishing expedition for facts it currently does not have. There simply is nothing in the "a" through "g" bullet pointed summary of complaint allegations cited in Plaintiff's Brief (*see* p. 17) to suggest in the least bit that Plaintiff possesses no knowledge, or that Axion is in possession of "facts of the transaction" relating to "Axion and Granville's knowledge", such that any arguable exception to Rule 9's specificity in pleading fraud requirements exists. To the contrary, Plaintiff's arguments make clear that it admits that it simply

does not currently possess facts to support a fraud claim. Thus, Plaintiff is attempting to do no more than conduct a fishing expedition at the Court's and Axion and Granville's expense.

Plaintiff contends that the requirement to plead fraud with specificity is relaxed because "the facts lie more in the knowledge of the opposite party." *See* Plaintiff's Brief at 18 (*citing Tarmann*, *supra*.). In *Tarmann*, however, the Plaintiff did not know the names of those individuals acting on behalf of her insurance carrier who made misrepresentations about repairs that would be made to her car after an automobile accident. *Id.* at 156-7. In this case, Plaintiff has no such difficulty in identifying with whom it dealt at Axion, namely Granville, rather, Plaintiff admits to lacking facts of the alleged misrepresentations. *See* Plaintiff's Brief at 18. Irrespective of Plaintiff's arguments, it is simply misguided in is reliance on the *Tarmann* case as the court in that case refused to relax the specificity requirement with respect to information for which the defendant possesses full information concerning the facts in controversy as the *Tarmann* court sustained the demurrer and determined that the insurance carrier was in a better  position than the plaintiff to know who made the allegedly false representations to the plaintiff.  *Id*. at 158. Rather than be supportive of Plaintiff's position, the *Tarmann* decision is in fact supportive of the Axion Defendants' argument in favor of dismissing the fraud claim as the *Tarmann* court did hold that "[t]he requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they speak, what they said or wrote, and when it was said or written." *Id.* at 157. Thus, the fraud claim should be dismissed and Plaintiff's fishing expedition precluded.

2. **Plaintiff Does Not Alleged Facts to Support Any Claim That Attorney Petersen Acted as Plaintiff's Attorney and Therefore Plaintiff's Professional Negligence Claim Must Be Dismissed.**

The Fifth Cause of Action for professional negligence against Attorney Petersen should be dismissed for failure to state a claim upon which relief can be granted as Plaintiff fails to

assert any facts to demonstrate that Attorney Petersen acted as its counsel in connection with this transaction.

Plaintiff broadly contends that Attorney Petersen developed an attorney-client relationship with Plaintiff and failed to disclose that he represented both Plaintiff and Axion, but fails to state facts to support this legal conclusion. Plaintiff further contends that it was harmed by Attorney Petersen's alleged failure to disclose this conflict, yet Plaintiff clearly states facts setting forth the broad extent of Plaintiff's knowledge of Attorney Petersen's then in-house counsel and officer positions with Axion and initial entrée to Plaintiff in an effort to engage Plaintiff *for Plaintiff's services*. Plaintiff does not set forth a single fact to demonstrate that Plaintiff was seeking to engage Attorney Petersen to provide legal services or that Attorney Petersen otherwise agreed to provide such services to Plaintiff.

Plaintiff mischaracterizes its relationship with Attorney Petersen. Attorney Petersen never represented Plaintiff in connection with respect to the agreement in dispute. No attorney-client relationship was ever initiated—either express or implied. Petersen, acting in his capacity as an attorney and officer of Axion, merely engaged in negotiations for financing and communicated with Plaintiff. This simply does not amount to the creation of an attorney-client relationship.

Without proffering any admissible evidence, Plaintiff contends that an attorney-client relationship existed between Plaintiff and Attorney Petersen. As the standard for the establishment of an attorney-client relationship was addressed in the Motion to Dismiss, it will not be repeated here. Suffice it to say, however, that Plaintiff is a sophisticated business entity well aware of the legal system, yet it is Plaintiff which is now claiming that it detrimentally relied on mere business talk of "protecting Plaintiff's interests" and negotiations of which at most amounted to puffery during the deal making process. Plaintiff has not demonstrated fact of the existence of an attorney-client relationship between itself and Attorney Petersen, nor has it demonstrated that it sought legal advice from Attorney Petersen – because they do not exist. At

best, Plaintiff improperly attempts to interject the contents of a November 19, 2007 email

(Plaintiff's Brief Exhibit B) to oppose a motion to dismiss for, *inter alia*, failure to plead

sufficient facts in its Complaint. On its face, that email is taken out of context.[4] Even the facts

which Plaintiff acknowledges confirm that Attorney Petersen was acting on Axion's behalf at the

time that the agreement in dispute was negotiated. Moreover, the email was written more than a

year after the agreement which Plaintiff claims Attorney Petersen negotiated on Plaintiff's

behalf. What Plaintiff is attempting to do is utilize this email in a post hoc rationalization to

concoct the existence of an attorney-client relationship that never existed under factual

circumstances – ludicris circumstances, *i.e.*, Attorney Petersen seeks out Plaitniff's principal to

engage Plaintiff to do work for Axion and somehow in the process commits to act as Plaintiff's

attorney in negotiating the deal with Axion. Logic dictates that if Attorney Petersen really were

acting as Plaintiff's attorney in negotiating the disputed agreement, then Plaintiff would have

asserted facts of the representation at that time—in the October 2006 period. Accordingly,

Plaintiff's Fourth Cause of Action, for professional negligence against Petersen, must fail for

failure to state a claim upon which relief can be granted and should be dismissed.

> **E.    Amendment of the Complaint Should Be Required If the Case Is Not Dismissed in Its Entirety and Jurisdiction Is Exercised Over Any Axion Defendant.**

At the end of Plaintiff's Opposition to Defendants' Motion to Dismiss, Plaintiff

summarily requested leave to amend its Complaint despite recognizing that, among other things,

the original complaint contains identification errors and does not identify the assertion of any

claims in the alternative. Plaintiff's arguments and intensions to take corrective service of

process measures are nothing more than *post hoc* changes that will not obviate the need for

amending the complaint as to these facial errors. In the unlikely event that this Court does not

---

[4]    Although Attorney Petersen disputes Plaintiff's characterization of the email and will defend himself vigorously if this case is not dismissed as to him, the email is not a document that was attached to the complaint nor

dismiss Plaintiff's Complaint in its entirety and that jurisdiction is exercised over any Axion Defendant, Plaintiff should be required to first file and serve an amended complaint and summons on any Individual Defendants before the matter be permitted to proceed in any form.

## II.    CONCLUSION

The Axion Defendants request that the Court grant its Motion to Dismiss Plaintiff's Complaint in its favor and against plaintiff, Cypress Avenue Partners LLC in the form of Order submitted, including, but not limited to, an award of all costs of suit, including reasonable attorney's fees and such other and further relief as the Court deems just and proper.

FELLHEIMER & EICHEN LLP


/s/ Alan S. Fellheimer
Alan S. Fellheimer
1800 John F. Kennedy Boulevard, Suite 1400
Philadelphia, PA  19103
(215) 253-6634

Attorneys for Defendants,
Axion Power International, Inc.,
Thomas Granville and
John L. Petersen, Esquire

Dated: July 31, 2008

can be considered in deciding the pending Motion to Dismiss. Accordingly, no detailed discussion of the email will be provided in support of the pending motion.

9

**Fellheimer & Eichen, LLP**
Alan S. Fellheimer
1800 John F. Kennedy Blvd., Suite 1400
Philadelphia, PA 19103
(215) 253-6630

Attorneys for Defendants
Axion Power International, Inc.,
Thomas Granville and
John L. Petersen, Esquire

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| CYPRESS AVENUE PARTNERS LLC, ) | Case No.:  08-002374 MEJ |
| ) | |
| Plaintiff, ) | **SUPPLEMENTAL AFFIDAVIT OF JOHN L.** |
| ) | **PETERSEN, ESQUIRE IN SUPPORT OF** |
| v. ) | **THE AXION DEFENDANTS' MOTION TO** |
| ) | **DISMISS PURSUANT TO Fed.R.Civ.P.** |
| AXION POWER INTERNATIONAL, ) | **12(b)(2), 12(b)(3), 12(b)(5) and 12(b)(6)** |
| INC.; ) | |
| JOHN GRANVILLE; ) | |
| JOHN PETERSON; and ) | |
| DOES 1-50, inclusive, ) | |
| ) | |
| Defendants. ) | |
| ) | |

     I, John L. Petersen, Esquire, being older than the age of eighteen (18) and being

sworn according to law, hereby depose and say as follows:

     1.     I am an attorney at law licensed in the State of Texas, a resident and

domiciliary of Switzerland, and a partner of the law firm of Fefer Petersen & Cie, a

"société en nom collectif" organized under Articles 522 et. seq. of the Swiss Federal

Code of Obligations, which maintains its principal office and sole place of business

located at le Château de Barberêche, Switzerland 1783 Barberêche.

     2.     I and my firm have been retained by Axion Power International, Inc.

("Axion") as outside special corporate counsel.

3.      I, along with Axion, am a defendant in the above-captioned action and do have the authority to make submit this affidavit on my and Axion's behalf in support of the Motion to Dismiss filed by defendants, Axion, Thomas Granville and myself (collectively the "Axion Defendants") in the above-captioned action.

4.      Thomas Granville is Axion's current Chief Executive Officer ("CEO").

5.      I have read the Declaration of Ricardo I. Ramirez in Opposition to (sic) Motion to Dismiss filed by plaintiff, Cypress Avenue Partners LLC ("Plaintiff" or "Cypress").

6.      While Axion engaged Mr. Ramirez in October 2006 after a series of telephone and e-mail communications between Mr. Ramirez and me, I did not meet Mr. Ramirez in person until February 2007, when Axion invited Mr. Ramirez to attend an industry awards ceremony in Los Angeles, California at which Axion was an award recipient. Mr. Ramirez attended the award ceremony as invited, as did I, Mr. Granville Mr. Walker Wainwright and Dr. Edward Buiel. The electronic file for the proposed agreement that Mr. Ramirez submitted to me as a starting point for our detailed negotiations of the Axion - Cypress agreement includes embedded "document properties" that indicate the author of the original was "RUMBERGERT," a system reference to Todd Rumberger Esq., a partner in Greenburg Traurig LLP who Mr. Ramirez subsequently introduced to me as his lawyer.

7.      While Axion engaged Mr. Ramirez in October 2006 after a series of telephone and e-mail communications between Mr. Ramirez and me, I did not meet Mr. Ramirez in person until February 2007, when Axion invited Mr. Ramirez to attend an

industry awards ceremony in Los Angeles, California at which Axion was an award recipient. Mr. Ramirez attended the award ceremony as invited, as did I, Mr. Granville Mr. Walker Wainwright and Dr. Edward Buiel.

8.    Mr. Ramirez's declaration distorts the circumstances of Axion's first meeting with him to suggest that Axion was in dire financial condition and the meeting with him was convened for the purpose of discussing and preparing for an imminent financing transaction. *See* Ramirez Declaration at ¶7-8.

9.    First, Axion only sent four representatives to the awards ceremony. Thomas Granville attended as CEO and a director; Walker Wainwright attended as a director; Edward Buiel attended as Chief Technology Officer and I attended as legal counsel and a former director. Since Axion had six other directors who did not attend the ceremony and have never met Mr. Ramirez, the suggestion that he met with Axion's board of directors is misleading.

10.    Second, while Axion had recently resolved substantive litigation against a bankrupt company that claimed certain rights to its technology under the terms of a prior license, Axion was not the debtor in that bankruptcy proceeding. To the contrary, Axion raised substantial equity during the fourth quarter of 2006 without the assistance of Mr. Ramirez and it had $4.5 million in assets and over $2 million in cash in February 2007.

11.    Third, Axion invited Mr. Ramirez to attend the Frost & Sullivan awards ceremony for the sole purpose of giving him a chance to meet me, Mr. Granville and Dr. Buiel in person and learn about Axion's strengths, weaknesses, capabilities, technology and business strategies directly from Mr. Granville and Dr. Buiel. Axion did not expect that substantive business issues would be discussed, negotiated or resolved during the

initial meeting with Mr. Ramirez and its expectations proved to be correct because no substantive business issues were in fact discussed, negotiated or resolved.

12.     Fourth, the collateral three meetings Mr. Ramirez arranged to coincide with the awards ceremony were preliminary introductory meetings, not substantive business meetings. Two of the meetings occurred in the lobby of the Disneyland Hotel and the third occurred at the office of B. Riley & Co. The sole purpose of the meetings was to give Axion and the other participants an opportunity to make an introductory presentation and open channels for future communications if both parties concluded that a future business relationship would be desirable. No agreements or substantive business relationships resulted from any of these introductory meetings.

13.     Fifth, Axion did not meet with any representatives of Merriman Curhan Ford during the trip to Southern California in February 2007. Rather, it met with Craig Sultan, an investment banker who had previously worked for Merriman Curhan Ford and had recently left Merriman to join the German merchant banking firm of ThomasLloyd.

14.     Sixth, when the meetings were held, Axion was not in a position to engage an investment banking or PR firm because it was involved in a substantive restatement of its historical financial information and until complete current audited financial statements were available, substantive discussions with investment banking and PR firms would be premature.

15.     Mr. Ramirez's vague, self-serving allegations that I was somehow acting as Cypress' lawyer despite the fact that I (a) first approached him as a director of Axion; (b) solicited his services for Axion within the course scope of my duties as a director of Axion; and (c) negotiated a written agreement for his

services within the course and scope of my duties as legal counsel for Axion; are

legal conclusions based on bald, unverified and highly implausible allegations

that do not refute the facts set forth in my prior Affidavit nor, in my view, support

personal jurisdiction over me.

16.    Mr. Ramirez does not dispute the facts set forth in my prior Affidavit that

(a) he told me his physical residence was located in the State of Nevada; (b) he told me

his principal place of business was a home office located in his residence; (c) all of my

contacts with him were directed to a Nevada cellular telephone number; and (d) unless he

specifically told me that he was away from his residence, which happened from time to

time, I reasonably believed I was speaking to Mr. Ramirez in Nevada.

17.    While I spoke with Mr. Ramirez frequently between October 2006 and

January 2008, I deny that I contacted him 2 to 3 times a day or 2 to 4 days a week about

Axion, particularly since Mr. Ramirez failed to identify the time period he is referring to.

All of my telephone communications with Mr. Ramirez were directed to or originated

from his Nevada telephone number. While we had many conversations about Axion, we

also had many conversations about his efforts to locate a suitable target for Stirling

Acquisition Corporation, a publicly held blank check company that I control and Mr.

Ramirez specifically refers to in his January 14, 2008 e-mail to me (Exhibit G).

Moreover, he fails to state the circumstances of his alleged presence in California and

how I could have known that he was in California during a particular call or why his

fortuitous physical presence in California during a particular call should subject me to the

personal jurisdiction of the California courts. Also noteworthy is the fact that the Nevada

telephone number I identified plainly appears on the March 28, 2008 email attached as

5

part of Exhibit B to Mr. Ramirez's declaration. Moreover, that same email also confirms that mail to Cypress is to be directed to a Reno, Nevada address. All of the foregoing indicates to me that the extent of Cypress's presence in California, if any, is merely a post office box.

I declare under penalty of perjury under the laws of the United States of America that that the foregoing is true and correct. Executed on this 31st day of July 2008.


_____
John L. Petersen, Esquire

**Fellheimer & Eichen, LLP**
Alan S. Fellheimer
1800 John F. Kennedy Blvd., Suite 1400
Philadelphia, PA 19103
(215) 253-6630

Attorneys for Defendants
**Axion Power International, Inc.**,
Thomas Granville and
John L. Petersen, Esquire

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CYPRESS AVENUE PARTNERS LLC, ) | Case No.:  08-002374 MEJ |
| ) | |
| Plaintiff, ) | **SUPPLEMENTAL AFFIDAVIT OF THOMAS** |
| ) | **GRANVILLE IN SUPPORT OF THE AXION** |
| v. ) | **DEFENDANTS' MOTION TO DISMISS** |
| ) | **PURSUANT TO Fed.R.Civ.P. 12(b)(2),** |
| ) | **12(b)(3), 12(b)(5) and 12(b)(6)** |
| AXION POWER INTERNATIONAL, ) | |
| INC.; ) | |
| JOHN GRANVILLE; ) | |
| JOHN PETERSON; and ) | |
| DOES 1-50, inclusive, ) | |
| ) | |
| Defendants. ) | |

I, Thomas Granville, being older than the age of eighteen (18) and being sworn

according to law, hereby depose and say as follows:

1.      I am the Chief Executive Officer ("CEO") of Axion Power International,

Inc. (herein "Axion").

2.      Both I and Axion are defendants in the above-captioned action, and have

the authority to make and submit this affidavit on my own and Axion's behalf in support

of the Motion to Dismiss filed by defendants, Axion, Thomas Granville and John L.

Petersen, Esquire (collectively the "Axion Defendants") in the above-captioned action.

1

3.      I have read the Declaration of Ricardo I. Ramirez in Opposition to (sic) Motion to Dismiss filed by plaintiff, Cypress Avenue Partners LLC ("Plaintiff" or "Cypress").

4.      Many of the alleged "facts" Mr. Ramirez asserts in his declaration relate to the substance of Cypress's claims and are, from my perspective, beyond the scope of that at issue on the Motion to Dismiss to the extent that the alleged "facts" Mr. Ramirez is interjecting do not relate to the limited issue of jurisdiction as raised in the Motion to Dismiss. Suffice it to say that although I dispute many of the facts asserted in Mr. Ramirez's declaration, this Affidavit is submitted to address issues solely related to jurisdiction and is does not address each and every alleged "fact" in dispute.

5.      I first meet Mr. Ramirez in person in February 2007, along with two members of Axion's Board of Directors and John Petersen, when Axion invited him to attend an industry awards ceremony in Los Angeles, California at which Axion was an award recipient. Mr. Ramirez attended the award ceremony as invited.

6.      Mr. Ramirez's declaration overstates the circumstances of this meeting with him in suggesting that it was convened for the purpose of preparing for a planned series of meetings with representatives of Merriman Curhan Ford and Co. ("Merriman") the investment bank of B Riley in Newport Beach, California and with a representative of Pondel-Wilkinson also in Southern California on the day following the awards ceremony. *See* Ramirez Declaration at ¶7-8.

7.      First, the awards ceremony with Mr. Ramirez was social and not one where substantive business issues were negotiated or decided. To the extent that the other

three meetings were discussed at all, it was merely to coordinate how everyone was going to get to the meetings and discuss how to proceed with the introductions.

8.      Second, the meetings with B Riley and Pondel-Wilkinson representatives were not substantive business meetings, nor were they ever meant to be. These meetings were nothing more than preliminary introductory meetings wherein Axion was introducing itself to each entity to describe its lines of business and scope of its business interests and some future plans and in which B Riley and Pondel-Wilkinson representatives likewise explained their business and the ways they each might be able to render products and services of possible benefit to Axion. These informal meetings were held in a seating area in the Disney hotel lobby. No agreements or other business resulted from any of the meetings.

9.      Third, the alleged meeting with Merriman in February 2007 very simply never occurred. Although I, along with Mr. Ramirez and others from Axion, attended a meeting with Craig Sultan on the day following the award ceremony, Mr. Sultan attended the meeting as an employee of the investment bank of Thomas Lloyd—not his previous employer, Merriman. The meeting with Mr. Sultan was precisely that described above in the previous paragraph and likewise did not result in any agreement or other business.

10.     The lack of substantive discussions in these meetings is supported by the fact that Axion was in no position to draw financing attention to itself since Axion's filings were late and it was in the middle of restating several prior year's audited financials. Those audits were not completed until about March 30, 2008. Without those audits, non-equity financiers were highly unlikely to discuss financing with Axion and we at Axion knew this. Furthermore, Axion had completed a preferred stock offering in

3

December, of 2006 which provided it with sufficient capital so that it could await the completion of the audits and then proceed with seeking non-equity financing. Thus, the three meetings referenced above were truly introductory.

11.    I deny planning or participating in any "formal presentation" of the type described by Mr. Ramirez in paragraph no. 10 of his Declaration dated July 21, 2008.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 31 day of ~~June~~ 2008.

_____
Thomas Granville

Sworn to and subscribed before me
This 31 day of ~~June~~ 2008

_____
Notary Public
My commission expires:  6/7/11

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Kelly S. Gubish, Notary Public
Neshannock Twp., Lawrence County
My Commission Expires June 7, 2011
Member, Pennsylvania Association of Notaries

4